# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JUL 21 2025
ARTHUR JOHNSTON
BY_____ DEPUTY

YURI PETRINI,
Plaintiff,

v. Civil Action No. 1:25-cv-00178-LG-RPM

**CITY OF BILOXI, MISSISSIPPI;**
**JERRY CREEL,** in his individual and official capacities;
**JEFF HARBOR,** in his individual and official capacities;
**JENNIFER POLK,** in her individual and official capacities;
**TARA BUSBY,** in her individual and official capacities;
**PETER C. ABIDE,** in his individual and official capacities;
**CURRIE JOHNSON,** in its capacity as City Attorney; and
**JOHN AND JANE DOES 1-10,**
Defendants.

---

# FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND JURY TRIAL DEMAND
**(Filed as of Right Under Fed. R. Civ. P. 15(a)(1))**

## I. INTRODUCTION

This civil-rights action challenges the City of Biloxi's systematic denial of procedural due process. Property owners are entitled to (i) written notice, (ii) a meaningful opportunity to be heard, and (iii) a chance to correct alleged code violations before punitive measures or criminal prosecution. Defendants supplied none of these protections and instead deployed coercive tactics that served their own financial interests.

In compliance with the Court's June 13 2025 order directing exhaustion, Plaintiff resubmitted plans, furnished engineering calculations, secured third-party review, and tendered a written

settlement offer. Defendant Abide then instructed all City personnel to cease communication, issued anonymous threats on City stationery, ordered Sunday surveillance, and dispatched armed police (detailed in Section IV)—culminating in criminal affidavits and an arraignment set for July 25 2025, while still withholding a Certificate of Occupancy for a structure that passed every inspection.

Because Plaintiff is pro se and suffers from narcolepsy and recent eye surgery, he respectfully requests reasonable ADA scheduling and communication accommodations as court deem appropriate.

## II. PARTIES

2.1 Plaintiff Yuri Petrini is a resident of Harrison County, Mississippi. He owns real property at 1606 Beach Boulevard and 929 Division Street in Biloxi, Mississippi, and operates as a licensed contractor.

2.2 Defendant City of Biloxi, Mississippi is a municipality organized under the laws of the State of Mississippi.

2.3 Defendant Jerry Creel is sued in his individual and official capacities. At all relevant times, he served as Building Official, Director of Community Development.

2.4 Defendant Jeff Harbor is sued in his individual and official capacities. At all relevant times, he was employed as a Building Inspector for the City of Biloxi.

2.5 Defendant Jennifer Polk is sued in her individual and official capacities. At all relevant times, she was employed as a plans reviewer in the Building Department of the City of Biloxi.

2.6 Defendant Tara Busby is sued in her individual and official capacities. At all relevant times, she was employed as a Senior Code Enforcement Officer for the City of Biloxi.

2.7 Defendant Peter C. Abide is sued in his individual and official capacities. At all relevant times, he served as City Attorney for the City of Biloxi. Pursuant to Resolution No. 327-17, Abide serves as the "primary contact for all City matters" with "authority to engage, supervise, and direct those other Special Counsel attorneys and law firms under contract to the City."

2.8 Defendant Currie Johnson is a law firm sued in its capacity as City Attorney for the City of Biloxi. Resolution No. 327-17 appointed Currie Johnson & Myers, P.A. as "City Attorney and Director of the Legal Department," though Section 3 explicitly states "Neither Peter C. Abide nor any member of the Currie Johnson Law Firm shall be considered an employee of the City." Subsequent Resolution No. 489-21 continued this appointment.

2.9 All individual Defendants are sued in both individual and official capacities unless otherwise noted.

2.10 Defendants John and Jane Does 1-10 are unknown municipal employees or officials who participated in the constitutional violations alleged herein, whose identities will be ascertained through discovery.

2.11 At all relevant times, all individual Defendants were acting under color of state law.

## III. JURISDICTION AND VENUE

3.1 This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

3.2 This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3.3 This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

3.4 Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in this judicial district and all events giving rise to Plaintiff's claims occurred in this judicial district.

## IV. FACTUAL ALLEGATIONS

---

## STATEMENT OF FACTS

## THE POLK/ROOF INCIDENT (MAY 2024)

1. On May 16, 2024, while contractors removed roof at 929 Division under Plaintiff's "roof replacement" permit: a) Polk ordered stop work without site visit or notice; b) the order failed to comply with IRC R114.2 which mandates "The stop work order shall state the reason for the order and the conditions under which the cited work is authorized to resume"; c) neither requirement was met—no reasons stated, no resumption conditions provided; d) posting inspector admitted "no knowledge" why; e) property remained without roof covering.

2. At the Building Department, Plaintiff asked Polk for the stop work reasons and resumption conditions: a) Polk claimed "permit language not clear" but cited no violation; b) shifted to demanding engineering—Plaintiff informed her an engineer was

4

already engaged and participating at each stage; c) she then pivoted to "50% rule" using area not value; d) when corrected, threatened county assessment or commercial appraisal; e) never provided written reasons or conditions to resume; f) Plaintiff asked for appeal process—Polk provided none; g) Plaintiff left unable to comply with requirements that remained undefined.

3. Following the meeting: a) Jerry Creel unilaterally contacted engineer Terry Moran to ask questions and confirm involvement; b) Terry confirmed he was involved in all stages of the project; c) this verification was never communicated to Plaintiff by the City; d) despite confirming engineering involvement, the City took no action to lift the stop work order; e) Plaintiff tried to reverse this stop work order several times unsuccessfully; f) Plaintiff redesigned the entire building due to City's various and shifting requirements; g) as of July 18, 2025, the roof remains exposed with construction materials exposed to weather; h) property has suffered complete loss of use for over 14 months; i) forced redesign costs included substantial engineering and architectural fees.

---

## THE ADMINISTRATIVE COMMUNICATION DENIAL (JUNE-JULY 2025)

4. On June 13, 2025, this Court's Order directed Plaintiff to exhaust administrative remedies through the Board of Zoning Adjustment regarding the Certificate of Occupancy denial at 1606 Beach Boulevard.

5. Following the Court's Order, Defendants ceased all communication with Plaintiff: a) June 17—Building Department calls disconnected when requesting helpful employees; b) receptionist Christy stated "not allowed to talk to you under orders of City Attorney Peter

Abide"; c) confirmed Notice of Violation required for any appeal but only Jerry Creel can issue; d) Creel would not answer transfer or return calls; e) June 2 letters including appeal never acknowledged; f) July 2—Plaintiff emailed Peter Abide requesting meeting and proposing to cease litigation upon resolution of building department conflicts and public records issues —no response received; g) July 2—Jennifer Polk refused calls, voicemails, and emails; h) July 2—counsel Zachary (under Currie Johnson) would not take calls; i) July 7—calls for Creel disconnected again; j) no City employee permitted to provide basic procedural information; k) Plaintiff contacted defense counsel Zachary to inquire if communications must go through them since Abide wouldn't reply—Zachary wouldn't return calls and directed Plaintiff to voicemail despite being present, message never returned; l) Plaintiff could not access administrative remedies. Abide's directive derives from his authority under Resolution No. 327-17.

---

## THE HARBOR STOP WORK ORDER (DECEMBER 2024 - JANUARY 2025)

6. On December 1, 2024, at 1606 Beach Boulevard: a) Harbor issued stop work order on valid building permit; b) stated "unfamiliar with steel construction"; c) cited no code violations; d) refused to review engineered plans on site; e) refused consulting licensed professionals present; f) no pre-deprivation hearing offered, no notice, no reasons stated or cure conditions as required by IRC R114.2; g) forced contractor dismissal mid-construction; h) majority of deck frame already erected when order issued.

7. Following Harbor's vacation: a) Plaintiff's engineer met inspector Robert on site; b) Robert agreed on requirements; c) Andrew Harwell delivered plans to Building

Department three times in december—rejected for missing page stamps, insufficient copies, then accepted; d) Jerry Creel contacted Terry Moran about project; e) stop work order remained despite accepted plans.

8. January 3, 2025, Harbor interactions witnessed by external parties: a) when Plaintiff mentioned lawyers, Harbor grabbed stop work order; b) ripped it up; c) threw pieces down; d) claimed no order existed; e) witnesses: Andrew Harwell and another licensed contractor; f) after calling office, Harbor learned Creel confirmed everything fine, plans delivered; g) Harbor apologized, authorized work resumption; h) scheduled meeting cancelled as unnecessary; i) work resumed on same deck frame with no plan changes required; j) month delay caused costs and contractor dismissal; k) unnecessary modifications and delays cost Plaintiff substantial sums in additional labor, financing interest during delays, and loss of capital use; l) multiple contractors abandoned project citing City's erratic enforcement.

---

## THE EXCAVATOR SEIZURE (MARCH 2025)

9. On March 28, 2025, at 1606 Beach Boulevard, regarding neighbor's boundary dispute: a) John Doe inspector, same from 929 Division posted stop work order citing "sub-inch encroachment"; b) inspector declined to review survey evidence; c) when Plaintiff mentioned legal action for due process, inspector contacted Jerry Creel; d) Creel sent Tara Busby who also declined to review survey; e) both stated City would proceed despite Plaintiff's assertion this was civil matter outside city jurisdiction.

10. Stop work order placed on Plaintiff's excavator: a) Busby entered equipment; b) affixed order with tape despite permit box 10 ft away; c) no warrant obtained; d) no hearing offered before seizure; e) no opportunity to present evidence; f) order did not state IRC R114.2 required reasons or resumption conditions; g) contractors left site after equipment seized.

11. Plaintiff called Jerry Creel: a) stated this was civil matter between neighbors; b) noted City had not reviewed survey evidence; c) Creel required moving concrete forms to reduce driveway width without checking survey; d) existing corridor was 10 feet; e) excavator released after agreement to move forms; f) seizure lasted hours; g) agreement resulted in driveway reduced from originally permitted width; h) required hiring new crew and moving forms; i) caused multi-week project delay; j) driveway width reduced from approved plans causing lost of land; k) lost favorable construction loan terms due to delays; l) interference damaged relationships with subcontractors who witnessed equipment seizure; m) forced modifications cost additional labor and materials.

---

## THE CO DENIAL (MAY 2025)

12. On May 30, 2025, at 1606 Beach Boulevard, after passing all inspections—electrical, mechanical, plumbing, footing, foundation, nailing, rough-in, and pre-final building: a) Harbor denied Plaintiff's request to accompany during final inspection; b) Harbor stated he would "put in a good word" with Jerry Creel; c) promised answer later that day regarding temporary Certificate of Occupancy; d) stated temporary CO would issue; e) never provided CO or any response; f) no written denial or reasons given; g) property

remains uninsurable without CO; h) as of filing, no CO issued despite passing all inspections; i) denial forced Plaintiff to maintain two households at extreme cost; j) stress from ongoing denials exacerbated Plaintiff's neurological condition requiring increased medical treatment; k) lost use of $1.2 million capital for intended business purposes.

---

## THE SHIFTING EXPLANATIONS & LOST PLANS ADMISSION (JUNE 2025)

13. Following CO denial, City provided shifting explanations at 1606 Beach Boulevard: a) Inspector Don initially claimed one issue; b) Jerry Creel then claimed "no plans were delivered in December (later pivoted to not built as plans when finding out there actually was plans on the record)"; c) on June 27, 2025, Sumire Maeda and insurance auditor Joevy met with Jerry Creel and Jennifer Polk at Building Department; d) Polk admitted she had lost the December stamped plans that they claim was never delivered and could not locate them; e) when shown plans on Sumire's phone, Polk stated "that's what she needs"; f) requested printed copies which Sumire agreed to provide; g) when Sumire attempted to submit a completed Certificate of Occupancy application form (available on City's website), both Polk and Creel denied her, stating "an application is not required" despite the form's existence; h) Creel present throughout Polk's admission; Creel also questioned if Terry Moran was still the engineer for the project i) same day, City Attorney Abide sent letters denying public records requests as "fishing expedition for your federal case"; j) June 30—, next day, after being shown the plans, armed officers delivered stop work order stating "no plans submitted"; k) shifting explanations and several city employees called by Polk came to the conclusion that all of jeff Harbor violations are not supported by code sections and proceeded to mention post hoc, not contained in notice

9

corrections, which were promptly addressed, such as 2 stair risers were more than 4 inches as per IRC; l) insurance auditor witnessed City's contradictory positions firsthand, resulting in coverage denial. City Attorney Abide's control over public records—demonstrated in his November 26, 2024 letter disclosing over $566,000 in annual compensation while attaching an invoice for records production —enabled systematic obstruction of evidence needed to challenge these contradictions, Peter refuses to provide invoices for his services as public records citing "exempt", and wanted to charge over 1000$ as demonstrates to produce records of Mark Seymour, a PE, engineer that of which have several contracts with the city of Biloxi and is a hidden business partner with Peter Abide, where together they own millions of dollars in real estate, on public records requests Abide refuses to address the theme, and no conflict of interest disclaimer was ever provided.

---

## BILOXI ORDINANCE VIOLATIONS - STATEMENT OF FACTS

## ORDINANCE PURPOSE

Article 23-9, Section 1 of Ordinance No. 2293 (January 26, 2016) states: "The provisions of this chapter are intended to encourage the voluntary correction of violations, where possible."

Section 2 requires: "Compliance with all the procedures, standards, and other provisions of this Ordinance is required by all persons owning, developing, managing, using, or occupying land or structures in the city." Jerry Creel as Community Development Director manages land use and development matters in the city.

Section 3(B)(12) states it is a violation to: "Through any act or omission, fail to comply with any other provisions, procedures, or standards as required by this Ordinance."

Section 4 states: "any other person who participates in, assists, directs, creates, or maintains a situation that constitutes a violation of this Ordinance may be held responsible for the violation and subject to the remedies and penalties set forth in this article."

Section 5(A) states: "The Director of Community Development shall have primary responsibility for enforcing the provisions of this Ordinance."

---

## IRC R114.2 & ARTICLE 23-9 STOP WORK ORDER REQUIREMENTS

IRC R114.2 states: "The stop work order shall state the reason for the order and the conditions under which the cited work is authorized to resume."

Article 23-9, Section 5(D)(2) states the Director "shall provide written notice of the violation, by personal service or certified mail, return receipt requested" and such notification shall: "1. Describe the location and nature of the violation; 2. State the actions necessary to abate the violation; and 3. Order that the violation be corrected or an enforcement conference be requested within a specified reasonable time period not to exceed ten business days after receipt of the Notice of Violation."

Jerry Creel's June 30, 2025 letter was addressed "To Whom it May Concern" and did not identify the owner, authorized agent, or person performing work as required.

## ARMED POLICE DELIVERY - VIOLATES IRC R114.2 & ARTICLE 23-9, SECTION 5(D)(2)

The letter cited three reasons for the stop work order:

**REASON 1: OCCUPANCY HEARSAY - NO "NATURE OF VIOLATION"** (1) "It has been reported that you are occupying the house without an approved Certificate of Occupancy," fails to describe the nature of violation as required by Section 5(D)(2) - stating only hearsay report without concluding whether occupancy constitutes a violation;

**REASON 2: DECK - NO SPECIFICS** (2) "The unfinished deck structure was not built according to the engineered drawings," without specifying what aspects differed from approved drawings;

**REASON 3: POOL CLAIM** (3) "The swimming pool is being installed without a permit."

**ICC-ES CERTIFIED POOL - ESR-4370**

The pool is an iGUi Pools Tunis I-C11, ICC-ES Listed ESR-4370, a pre-manufactured fiberglass structure requiring placement, not construction. Defendants received ICC-ES certification by email July 3, 2024, 3:32 PM. ICC-ES certification means the product meets prescriptive building code requirements—pre-approved compliance paths eliminating placement permit requirements, only requiring electrical/plumbing permits. As of July 21, 2025, the pool remains free-standing, unanchored, without plumbing/electrical work. Case No. 23-096-BZA demonstrates City's prior knowledge and variance approval for front yard placement at 1606 Beach Boulevard under Section 23-4-4(B)(4)e3, following all procedures including renderings and board presentations. Electrical/plumbing permits would be acquired after aesthetics placement, as agreed with inspectors during inspections for those trades. The unsecured 1700-lb fiberglass shell 20 ft high poses hurricane danger to Highway 90 traffic, creating liability exposure, defendants were informed of this several times, but insist on piling "violations", the pool remains unsecured, its

12

visible from the right of that what is not "installed", defendants claim continuous violations, despite having initiated court proceedings and conducting surveillances including Sunday's by Jerry Creel himself, where he was filmed for close to 30 minutes around the property after presumably Sunday Church due to his vestments.

## MISSING IRC R114.2 & ARTICLE 23-9 RESUMPTION CONDITIONS

For cessation, letter stated only: "All unpermitted work is to cease immediately" without identifying specific work activities, the city claims the pool is unpermitted, yet, the pool remains unsecured, unanchored, not filled with water, lacking several steps before it could be considered "installed". For resumption conditions, letter stated: "Please call me to discuss a resolution to resume construction". Letter contained no specific conditions for work resumption, providing only phone invitation rather than conditions mandated by both IRC R114.2 and Article 23-9, Section 5(D)(2). This invitation was unavailable as Jerry Creel did not respond to several contact attempts.

---

## CRIMINAL CHARGES WITHOUT REQUIRED NOTICE

Jerry Creel's June 30, 2025 stop work order did not state criminal prosecution as intended course of action. Ten days later, on July 10, 2025, Jerry Creel filed four sworn criminal affidavits in Biloxi Municipal Court against Plaintiff.

## THE FOUR CRIMINAL AFFIDAVITS

**Affidavits (Exhibit A1-A5)** Jerry Creel swore he personally observed Plaintiff at 1606 Beach Boulevard on July 10, 2025 at 10:00

13

## STOP WORK ORDER OMISSIONS

The June 30 stop work order did not: (1) state criminal charges as intended action; (2) serve as warning citation; (3) provide notice of appeal rights; or (4) give any notice that criminal prosecution would follow.

## FALSE STATEMENTS UNDER OATH

Jerry Creel swore in all four affidavits that he personally observed Plaintiff at 1606 Beach Boulevard on July 10, 2025 at 10:00 AM. However, on July 7, 2025, Plaintiff had emailed Creel informing him he was undergoing eye surgery in California. On July 10, 2025, Plaintiff was not performing any work, was not outside at or around 10:00 AM, and did not leave his room until no earlier than 4:00 PM. Jerry Creel's sworn statements that he "personally observed" Plaintiff installing a pool, building a deck, and occupying the residence at 10:00 AM on July 10, 2025 are demonstrably false. The stress of facing criminal prosecution based on fabricated evidence has caused severe health complications including exacerbation of Plaintiff's neurological condition, increased medical expenses, and emotional trauma to Plaintiff and his family.

---

## V. CAUSES OF ACTION

## COUNT I - PROCEDURAL DUE PROCESS (PROPERTY INTERESTS)

### 42 U.S.C. § 1983 - Certificate of Occupancy & Building Permit

8.1 Plaintiff re-alleges and incorporates all preceding paragraphs.

8.2 Plaintiff possesses protected property interests in:

a) Real property at 1606 Beach Boulevard, Biloxi, Mississippi;

b) Certificate of Occupancy for said property, which qualifies as a property interest for procedural due process. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 220 (5th Cir. 2012) ("Privileges, licenses, certificates, and franchises ... qualify as property interests for purposes of procedural due process");

c) Building Permit #2024-1847;

d) His statutory entitlement, under Biloxi Land Development Ordinance § 23-2-4(O)(1)-(2) (adopting the 2021 IRC), to issuance of a Certificate of Occupancy once all Building Code requirements were satisfied and inspections passed. The ordinance incorporates IRC § R110.3's directive that the Building Official "shall issue" a certificate upon finding no violations;

e) His statutory entitlement, alternatively, to a Temporary Certificate of Occupancy under Biloxi LDO § 23-2-4(O)(3) and IRC § R110.4;

f) His right to finance, insure, and realize economic benefit from his properties;

8.3 Source of entitlement creates property right. The mandatory "shall issue" language creates an entitlement distinguishable from discretionary benefits. When a statute uses mandatory language and limits official discretion, it creates a protected property interest.

8.4 Plaintiff's property interest vested May 30, 2025 when: (i) all inspections showed "no code violations," triggering the Building Official's ministerial duty under LDO § 23-2-4(O) and IRC § R110.3; (ii) all Building and Fire Code conditions were met; (iii) Inspector Harbor promised a Temporary CO would issue. Harbor excluded Plaintiff from his own inspection, told Sumire Maeda that Plaintiff "won't shut up and let me do my job," promised the Temporary CO by day's end, then went silent.

8.5 Defendants denied all required process: (a) No CO issued as of July 21, 2025; (b) No written denial with reasons; (c) June 30 stop work order cited only "IRC R114.2" without required reasons or resumption conditions; (d) Despite requesting Notice of Violation on July 17, 2025 (required under § 23-9-5(D)(2) for appeals), none provided; (e) June 17: Christy stated "not allowed to talk to you under orders of City Attorney Peter Abide." July 2: Polk disconnected call and never replied to emails. This prohibition on contact violated due process rights to participate in proceedings affecting property. Once issued, permits cannot be revoked without notice and opportunity to be heard. *Bowlby*, 681 F.3d at 221 (Board's revocation without inviting owner or providing notice violated due process).

8.6 Pretextual denial pattern: May 2024 required industrial sign, withdrawn June 2024. December 2024 required specific painting, withdrawn January 2025. July 11 sent calculations to third party who approved July 20. Filed criminal charges July 10, then requested additional drawings July 25.

8.7 Defendants conducted unprecedented fishing expedition. Without precedent, evidence, or reasonable belief of violations, Defendants submitted engineering calculations to a third-party structural engineer to find grounds for denial. This fishing expedition failed when the third party approved the calculations. When Plaintiff questioned this unprecedented review by email, neither Defendants nor their counsel responded, evidencing consciousness that the review was pretextual.

8.8 Defendants violated their own enforcement ordinances. Article 23-9-1 of the Biloxi Land Development Ordinance states that enforcement provisions are "intended to encourage the voluntary correction of violations, where possible." Instead of encouraging voluntary correction, Defendants: (i) denied all communication attempts; (ii) imposed a communication ban through

16

City Attorney orders; (iii) conducted the fishing expedition described above; (iv) deployed armed police rather than allowing voluntary compliance; and (v) rushed to criminal prosecution without providing any opportunity to cure despite the ordinance's stated purpose.

**Defendants' contradictory positions demonstrate retaliatory intent.** While asserting as their Thirteenth Affirmative Defense that Plaintiff 'failed to mitigate damages,' Defendants ignored Plaintiff's July 2, 2025 settlement offer and filed criminal charges eight days later. The CO denial rendered the property uninsurable during peak hurricane season, with two serious storm threats already weathered while the property sat exposed. On July 17, 2025, Defendant Creel approved hurricane preparedness measures when asked by engineer Terry Moran. Three days later, on Sunday, July 20, 2025 at 1:19 PM, Creel contacted Moran ordering cessation of identical safety measures. When informed that an unsecured 1700-lb fiberglass pool shell posed imminent danger to Highway 90 traffic—with manufacturer specifications warning that cable restraints alone would fail in high winds—Defendants maintained their prohibition despite the public safety risk.

Such arbitrary and selective enforcement establishes absence of any legitimate governmental interest and confirms the Stop-Work Order serves only retaliatory purposes. When government action is 'taken for purposes of retaliation,' it violates fundamental fairness inherent in due process. *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972) (due process protects against 'arbitrary encroachment' on property); *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (due process requires consideration of governmental interest).

8.9 Administrative exhaustion would be futile. Jerry Creel serves as Building Official who denied the CO, Director who would hear appeals, and final policymaker—eliminating neutral review and refuses to communicate while standing by the property for close to 30 minutes

Sunday 12 pm. When the same official decides and reviews, due process is illusory. *Patsy v. Board of Regents*, 457 U.S. 496, 516 (1982) (no exhaustion required for § 1983). City Attorney Abide blocked remedies by assuming unauthorized records custodian duties, denying requests as "fishing expedition" though actual custodian Catherine McMahan confirmed he lacks such authority. Abide ($140+/hour under Resolution No. 327-17) has financial incentive to prolong disputes—compensation detailed in ¶13. His denials created circular impediment: Mississippi mandamus requires verified petition with specific facts (Miss. R. Civ. P. 81(d)), but City blocked inspection records needed for verification. This structure violates *Tumey v. Ohio*, 273 U.S. 510, 532 (1927) (due process requires neutral decisionmaker).

8.10 The denial of process here exceeds the violations in *Jabary v. City of Allen*, 547 F. App'x 600, 604-05 (5th Cir. 2013), where the Fifth Circuit held that revoking a certificate of occupancy without notice or hearing violated procedural due process. There, the city at least communicated its decision. Here, Defendants: (a) passed all inspections with 'no code violations' yet denied the CO; (b) refused to provide any written reasons for denial; (c) imposed a communication ban preventing any opportunity to be heard; (d) blocked access to administrative remedies through staff gag orders; (e) denied public records needed to understand or challenge the decision. Unlike *Jabary*'s simple failure to provide process, Defendants here actively prevented process through coordinated obstruction.

8.11 The City is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Creel's CO denial as final policymaker constitutes municipal policy. City's approval of Abide's unauthorized custodian role represents custom of denying due process. City's pattern requires federal intervention: *Kennedy v. City of Biloxi*, No. 1:15-cv-348-HSO-JCG (S.D. Miss. 2015)— City jailed citizens (Qumotria Kennedy 5 nights, Joseph Anderson 7 nights) without hearings for

inability to pay fines. Despite March 2016 settlement requiring reforms under continuing supervision, City escalated from jailing the poor to deploying armed police against non-violent ADA-protected citizen with documented disabilities and recent eye surgery who received prior stop work orders without incident—showing only federal oversight compels compliance. This deliberate indifference history supports municipal liability under *Monell*, 436 U.S. at 694.

## COUNT II - PROCEDURAL DUE PROCESS ("STIGMA-PLUS" LIBERTY INTEREST)

### 42 U.S.C. § 1983 - Fabricated Criminal Affidavit & Reputational Harm

9.1 Plaintiff re-alleges and incorporates all preceding paragraphs.

9.2 Plaintiff holds protected liberty interests in: a) His professional reputation as a licensed contractor; b) His right to pursue his occupation free from arbitrary government interference; c) His banking and business relationships; d) His freedom from criminal prosecution based on false charges: e) His eligibility for professional licenses; f) His professional relationships with engineers and other project collaborators.

9.3 On July 10, 2025, Creel swore he "personally observed" Plaintiff at 10:00 AM "installing a swimming pool without a permit." Plaintiff's July 7 email informed Creel he was undergoing eye surgery in California. Plaintiff didn't leave his room until 4:00 PM, making Creel's sworn observation impossible.

9.4 The false affidavit caused: (a) Criminal Summons CC-617-19 delivered by armed officers, charging IRC violations R114.2, R112.1, R105.1, arraignment July 25, 2025; (b) Public court records accessible to clients, lenders, licensing authorities; (c) Lost project bids requiring background checks: (d) Bar admission impediments; (e) Federal contract/security clearance disqualification.

9.5 The armed police delivery described in Section IV demonstrated malice—first-ever use of tactical officers for routine code enforcement, occurring 50 minutes after Plaintiff's FBI report. Unlike prior cooperative enforcement, Defendants chose maximum confrontation though IRC allows email, certified mail, or posting. This caused severe trauma to Plaintiff and Sumire Maeda (panic attacks, prolonged anxiety, medical intervention, ongoing fear). Multiple contractors witnessed and refused continuing work, damaging business relationships and causing project abandonment.

9.6 Retaliatory timeline: (i) June 6, 2025: Filed federal lawsuit; (ii) June 30, 2:17 PM: Filed FBI report on death threats; (iii) June 30: Armed police delivery (Section IV); (iv) July 2: Settlement offer ignored; (v) July 10: Eight days later, false affidavit; (vi) July 20 (Sunday): Creel contacts engineer Moran excluding Plaintiff, undermining engineer-client relationship; (vii) Ex parte communications damaged essential professional relationships.

9.7 Abide's unauthorized records denial as "fishing expedition" prevented name-clearing. Despite not being a City employee (¶2.8), he assumed custodian authority, blocking documents needed to defend false charges. His financial incentives (¶13) created conflicts between private interests and public duties. No pre- or post-deprivation hearing provided; communication ban prevented addressing reputational harm.

9.8 The criminal charges based on Defendant Creel's fabricated evidence violate clearly established due process rights. The Fifth Circuit sitting en banc has held that fabricating evidence to support criminal charges violates due process. *Cole v. Carson*, 935 F.3d 444, 448-49 (5th Cir. 2019) (en banc). Every reasonable official knew these rights were clearly established.

9.9 The criminal charges warrant federal intervention despite *Younger v. Harris*, 401 U.S. 37 (1971). Younger abstention does not apply where state proceedings are brought in bad faith or for harassment. *Id.* at 54. Here, Defendant Creel's demonstrably false affidavit—swearing he saw Plaintiff in Mississippi when documentary evidence proves Plaintiff was in California—establishes bad faith. The prosecution serves no legitimate state interest but only to retaliate for Plaintiff's federal lawsuit. Moreover, the complete denial of administrative remedies through the communication ban demonstrates the state proceedings are part of a pattern of harassment. Under these extraordinary circumstances, federal intervention is appropriate. See *Dombrowski v. Pfister*, 380 U.S. 479, 490 (1965) (federal relief appropriate where state prosecution used to discourage protected activity).

9.10 The City is liable under *Monell* as Creel's false affidavit while acting as final policymaker constitutes municipal action. The City's failure to provide any process for challenging false charges represents a policy or custom of denying due process. As detailed in ¶¶ 2.7-2.8 and 8.9, Abide/Currie Johnson acted under color of state law pursuant to their appointment in Resolution 327-17.

9.11 Criminal prosecution from false affidavit continues damaging liberty interests daily. Systematic obstruction created ongoing reputational harm. Defendants poisoned professional relationships through ex parte engineer communications, created contractor distrust from armed confrontation, damaged construction industry standing. False charges stress caused documented health complications requiring ongoing treatment.

**COUNT III - FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS**

**Americans with Disabilities Act, Title II (42 U.S.C. § 12132) & Rehabilitation Act (29 U.S.C. § 794)**

10.1 Plaintiff re-alleges and incorporates all preceding paragraphs.

10.2 Qualified individual. Plaintiff has documented neurological disabilities (narcolepsy) that substantially limit major life activities. These disabilities were known to Defendants through ADA accommodation requests, litigation documents, formal letters, emails, and repeated communications over years of interactions.

10.3 Programs and services. Biloxi's building-permit and occupancy-certificate processes are "services, programs, or activities" of a public entity within Title II. Defendants' code enforcement activities constitute covered programs. Public entities are liable for ADA violations by any employee, and no official policy of discrimination need be shown. *Delano-Pyle v. Victoria County*, 302 F.3d 567, 575 (5th Cir. 2002) (municipalities liable under ADA for "vicarious acts of any of its employees").

10.4 Plaintiff requested: (i) advance notice and scheduled appointments for enforcement due to neurological disabilities; (ii) written email communications for processing needs; (iii) reasonable response time given medical conditions and recent eye surgery.

10.5 Rather than accommodating disabilities, Defendants excluded Plaintiff entirely through Abide's directive prohibiting staff contact. Despite his non-employee status (¶2.8), Abide controls City legal matters under Resolution 327-17. As detailed in ¶¶ 2.7-2.8 and 8.9, Abide/Currie Johnson acted under color of state law pursuant to their appointment in Resolution 327-17.

10.6 The armed police confrontation (Section IV) violated every accommodation. Despite knowing Plaintiff's disabilities through ADA requests, medical documentation, and litigation filings, Defendants chose unscheduled tactical enforcement, causing the trauma described in ¶9.5.

10.7 Deliberate indifference pattern: (i) ignored multiple written accommodation requests; (ii) chose armed confrontation when accommodations required less intrusive methods; (iii) conducted Sunday business (July 20 engineer contact) knowing processing limitations; (iv) excluded Plaintiff, sending requirements only to engineer.

10.8 Refusal to accommodate caused additional stress, medical complications, project delays, and economic losses beyond constitutional injuries. Armed confrontation exacerbated neurological condition—sleep disruption, increased narcoleptic episodes, additional treatment needed. Harassment pattern interfered with essential contractor and engineer relationships. To recover compensatory damages, plaintiff must show intentional discrimination. *Delano-Pyle*. 302 F.3d at 574-75 (officer's continued verbal commands to deaf person despite knowing ineffectiveness constituted intentional discrimination supporting $230,000 award).

## COUNT IV - CONSPIRACY TO DEPRIVE CIVIL RIGHTS

### 42 U.S.C. § 1983 & § 1985(3)

11.1 Plaintiff re-alleges and incorporates all preceding paragraphs.

11.2 Agreement among defendants. Defendants Creel, Harbor, Polk, Busby, Abide, and City of Biloxi reached an understanding to deprive Plaintiff of constitutional rights through coordinated action.

11.3 Overt acts in furtherance of conspiracy:

a) May 2024-January 2025: Imposed then withdrew pretextual requirements (industrial sign, painting) to delay and harass;

b) June 2025: Polk claimed plans were "lost" while Creel simultaneously claimed "never submitted";

c) June 13, 2025: Court ordered exhaustion of administrative remedies;

d) June 17, 2025: Abide ordered communication ban preventing exhaustion;

e) June 30, 2025: Unprecedented armed police delivery following FBI report;

f) July 2, 2025: Settlement offer and invitation to a meeting collectively ignored, no monetary compensation was asked;

g) July 10, 2025: Creel filed false affidavit—eight days after settlement offer;

h) July 2025: Conducted fishing expedition with third-party engineer while maintaining criminal charges;

i) July 20, 2025: Sunday contact with engineer excluding Plaintiff;

j) Ongoing: Abide assumes unauthorized custodian role to block evidence. With City Attorney compensation detailed in ¶13, Defendants had strong financial incentive to manufacture disputes and prolong litigation through obstruction.

11.4 Pattern establishes coordinated action. The pervasive nature of violations across multiple departments—Building (Harbor), Code Enforcement (Busby), Community Development (Creel),

Plans Review (Polk), and City Attorney (Abide)—reveals coordinated effort rather than isolated acts.

11.5 Unconstitutional objective. The conspiracy's objective was to: (i) deny property rights without due process: (ii) retaliate for protected First Amendment activity (federal lawsuit and FBI report): (iii) fabricate criminal charges to harm reputation: (iv) exclude disabled individual from public services.

11.6 Class-based animus. Upon information and belief, Defendants targeted Plaintiff based on his status as a disabled individual who challenged municipal authority, evidencing discriminatory animus. In the alternative. Defendants' concerted conduct constitutes a conspiracy under § 1983, which does not require class-based animus.

11.7 Injury. The conspiracy succeeded in depriving Plaintiff of property rights (CO), liberty interests (false charges), equal protection, and ADA accommodations. The conspiracy caused: complete loss of use of both properties; forced modifications, delays, and financing costs totaling over $300,000 (encompassing redesign fees, construction delays, lost deposits, contract penalties, financing interest, railing modifications, and crew losses); multiple construction delays spanning months: loss of contractor crews who abandoned projects due to Defendants' interference: damaged relationships with engineers, inspectors, and other professionals through Defendants' ex parte communications: financing denials and increased costs; severe emotional distress and health complications for Plaintiff and his family; and reputational harm affecting business opportunities. These injuries represent the damages described in previous counts and continue daily.

11.8 Municipal liability. The City is liable as the conspiracy involved final policymakers and was facilitated through municipal resources, policies, and customs. Resolution No. 327-17 confirms Currie Johnson & Myers, P.A. serves as "City Attorney and Director of the Legal Department," making Abide's actions as primary contact official City policy.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks:

a) Declaratory judgment that Defendants violated his constitutional and statutory rights;

b) Preliminary and permanent injunctive relief requiring issuance of the Certificate of Occupancy or written statement of specific reasons for denial within 10 days. Plaintiff satisfies all requirements for injunctive relief under Fed. R. Civ. P. 65: - **Irreparable harm**: Without the CO, Plaintiff's $1.2 million property remains uninsurable during hurricane season; - **No adequate remedy at law**: Money damages cannot compensate for ongoing constitutional violations, continuing property deterioration, and daily deprivation of property use; - **Balance of hardships**: Defendants suffer no harm from issuing a CO or temporary CO which is revocable for property that passed all inspections, while Plaintiff suffers continuing daily losses; - **Public interest**: The public interest favors protecting constitutional rights and preventing arbitrary government action;

c) Injunctive relief prohibiting ex parte contact with Plaintiff's engineers or other professionals instead of Plaintiff;

d) Dismissal of criminal charges in Case No. CC-617-19 as based on fabricated evidence;

e) Compensatory damages for lost property value, lost business opportunities, and ongoing daily losses;

f) Damages for lost use of the properties at 1606 Beach Boulevard and 929 Division Street;

g) Damages for losses incurred through unnecessary modifications and construction delays forced by Defendants' shifting requirements;

h) Damages for lost financing opportunities and increased financing costs;

i) Damages for interference with business operations and relationships and third-party contracts, including relationships with contractors, engineers, and other professionals;

j) Damages for emotional distress, pain and suffering;

k) Damages for health complications and exacerbation of existing medical conditions arising from Defendants' conduct;

l) Punitive damages against individual Defendants Creel, Harbor, Polk, Busby, and Abide for deliberate fabrication of evidence and systematic denial of rights;

Plaintiff does **not** seek punitive damages from the City of Biloxi.

m) Pre- and post-judgment interest;

n) Trial by jury on all claims so triable;

o) Such other relief as this Court deems just and proper.

[Note: Should counsel later appear in this matter, Plaintiff reserves the right to amend this Complaint to include a request for attorneys' fees under 42 U.S.C. § 1988(b) and applicable ADA provisions.]

Respectfully submitted,

Yuri Petrini
929 Division Street
Biloxi, MS 39530
(305) 504-1323
yuri@megalopolisms.com
Plaintiff Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of July, 2025, I served a true and correct copy of the foregoing First Amended Complaint for Damages and Injunctive Relief upon the following parties or their attorneys of record by the methods indicated:

**City of Biloxi, Mississippi**
c/o Stacy Thacker, City Clerk
City Hall
140 Lameuse Street
Biloxi, MS 39533
Via: [ ] Hand Delivery [ ] Certified Mail

**Peter C. Abide**
c/o Stacy Thacker, City Clerk
City Hall
140 Lameuse Street
Biloxi, MS 39533
Via: [ ] Hand Delivery [ ] Certified Mail

**Currie Johnson**
c/o Stacy Thacker, City Clerk
City Hall
140 Lameuse Street
Biloxi, MS 39533
Via: [ ] Hand Delivery [ ] Certified Mail

**Jerry Creel**
163 Saint Peter Street
Biloxi, MS 39530

and/or
c/o Building Department
676 Dr Martin Luther King Jr Blvd
Biloxi, MS 39530
Via: [X] Hand Delivery [ ] Certified Mail

**Jeff Harbor**
c/o Building Department
City of Biloxi
676 Dr Martin Luther King Jr Blvd
Biloxi, MS 39530
Via: [ ] Hand Delivery [ ] Certified Mail

**Jennifer Polk**
c/o Building Department
City of Biloxi
676 Dr Martin Luther King Jr Blvd
Biloxi, MS 39530
Via: [ ] Hand Delivery [ ] Certified Mail

**Tara Busby**
c/o Building Department
City of Biloxi
676 Dr Martin Luther King Jr Blvd
Biloxi, MS 39530
Via: [ ] Hand Delivery [ ] Certified Mail

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues so triable.

Yuri Petrini
929 Division Street
Biloxi, MS 39530
(305) 504-1323
yuri@megalopolisms.com
Plaintiff Pro Se