## BEFORE THE MISSISSIPPI ETHICS COMMISSION

YURI PETRINI                                                                    COMPLAINANT

VS.                                                   PUBLIC RECORDS CASE NO. **R-24-038**

CITY OF BILOXI                                                  RESPONDENT

## ORDER OF DISMISSAL

This matter came before the Mississippi Ethics Commission through a Public Records Complaint filed by Yuri Petrini against the City of Biloxi, Mississippi (the "city"). The city filed a response by and through its attorney. The Ethics Commission has jurisdiction over this matter pursuant to Section 25-61-13, Miss. Code of 1972. The hearing officer presented a Recommendation of Dismissal to the Ethics Commission at its regular meeting held on July 11, 2025, at which time the commission approved this Order of Dismissal in accordance with Rule 5.6, Rules of the Mississippi Ethics Commission.

### I. FINDINGS OF FACT

1.1  Yuri Petrini alleges the City of Biloxi violated the Public Records Act by providing "incomplete responses to three separate public records requests submitted on August 19, August 21, and August 27, 2024." Mr. Petrini states, "[a]s the owner of the property where a dangerous cross-boring incident occurred and a state-licensed mechanical professional, I have clear legal rights to these public records under federal and Mississippi state laws. The information is crucial for pursuing legal remedies, ensuring public safety and holding the city accountable." Mr. Petrini filed a rebuttal to the city's response, alleging a broad number of allegations. However, the Mississippi Ethics Commission's authority in this matter is limited to alleged violations of the Public Records Act, so his other allegations are not addressed herein.

1.2  The city denies violating the Public Records Act. The city states that responsive documents were timely provided for each request at no cost. The city explains that Mr. Petrini followed up each public records request with written questions, for example: "Could you please provide the exact date when the work was performed at 929 Division St.?" and "Please confirm if these were performed or not, if they are part of the scope of your office or another department; …" Mr. Petrini also followed up with requests for documents that he believed should exist, asking "Could you provide any inspection reports, notes or communications that took place before the backfilling of cuts or trenches?"

1.3  Specifically, Mr. Petrini filed the first public records request on the city's form on August 19, 2024. The city provided responsive records the same day. Mr. Petrini followed up on August 21 with a series of questions asking the city to confirm if the city performed certain actions, since there were no responsive documents documenting those actions. In the same communication, Mr. Petrini filed his second public records request "addressed directly to the City Engineer." The same day the city responded and notified him that "You received an email from our City Engineer with some records responsive to your request" with an additional document from the city's public works department. Mr. Petrini filed his third public records



request on August 27, 2024. On September 3, 2024 the fifth working day after submitting the third request, he sent an email following up on the status of all three of his requests, believing the city's responses were insufficient. In this communication Mr. Petrini acknowledges "that submitting multiple requests may have caused some confusion, and I take responsibility for that." The next day, September 4, 2024, the city provided additional responsive documents.

1.4     On September 4, 2024, Mr. Petrini again emailed a series of questions seeking confirmation of actions taken by the city, requested additional records in his email not previously requested in the prior three public records requests, noting that "[t]his leads us to believe that either these records do not exist when they should, or there is some obscure reason preventing their release." The city responded to Mr. Petrini with two additional documents and noted that his questions have been forwarded to the city's legal department.

1.5     Prior to filing his public records complaint with the Ethics Commission on September 12, 2024, Mr. Petrini once again emailed the city to point out some discrepancies in the records he requested versus the records he received, stating that he received records that he did not request (e.g., "we did not ask for a report about the incident itself, but instead requested documentation related to the excavation (boring)...that lead to the cross-boring incident."), noting that certain information was not included in the documents received (e.g. "we also require the exact date of the boring operation") and that certain documents were not provided (e.g. "we are still awaiting records of any inspections conducted related to the excavation ...")

## II.     CONCLUSIONS OF LAW

2.1     The Mississippi Public Records Act of 1983 (the "Act") declares that public records shall be available for inspection or copying by any person unless otherwise provided by law. Section 25-61-2, Miss. Code of 1972. "Public records" are defined as all documents or records "having been used, being in use, or prepared, possessed or retained for use in the conduct, transaction or performance of any business, transaction, work, duty or function of any public body." Section 25-61-3(b). A public body must provide access to public records upon request of any person, unless a statute or court decision "specifically declares" a public record to be confidential, privileged, or exempt. Section 25-61-11. Section 25-61-5(1)(a) mandates that "[n]o public body shall adopt procedures which will authorize the public body to produce or deny production of a public record later than seven (7) working days from the date of the receipt of the request for the production of the record."

2.2     Clearly, the city timely responded to all of Mr. Petrini's public records requests with responsive documents. The city "has no obligation under the statute to provide documents that do not exist or to create documents to satisfy a public records request." Scruggs v. Caldwell, 970 So. 2d 1298, 1299 (Miss. App. 2007). The Mississippi Model Public Records Rules further explain:

> A public body is only required to provide access to public records it has in its possession or over which it has control. A public body is not required to create a public record in response to a request. A public body must only provide access to public records in existence at the time of the request. A public body is not obligated to supplement responses.

Comment 4.4(4)(a) to Rule 4, Mississippi Model Public Records Rules. The city is not obligated to create records which were requested but which the city does not possess or control.

    2.3    Additionally, Mr. Petrini's follow-up emails were simply requests for information. A person who requests public records must request an identifiable record or class of records before a public body can comply with the request. An "identifiable record" is one that staff of the public body can reasonably locate. An "identifiable record" is not a request for "information" in general. Public records requests are not interrogatories. The Public Records Act does not obligate public bodies to answer questions. Accordingly, the city is not obligated to respond to Mr. Petrini's requests for information.

    WHEREFORE, the complaint is hereby dismissed this 11th day of July 2025.

    MISSISSIPPI ETHICS COMMISSION

BY: _____
    TOM HOOD, Executive Director