UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

YURI PETRINI et al                                                        PLAINTIFF

VERSUS                              CIVIL ACTION NO. 1:25-CV-178-LG-RPM

CITY OF BILOXI, MISSISSIPPI et al                                    DEFENDANTS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
PROTECTIVE ORDER AND DENYING MOTION TO STRIKE**

Before the Court is the [97] Motion for Protective Order filed by Defendants City of Biloxi, Mississippi; Jerry Creel; Jeff Harbor; Jennifer Polk; and Tara Busby (collectively, "Defendants").[1] Defendants move this Court to enter a protective order directing pro se Plaintiffs Yuri Petrini and Sumire Maeda to halt harassing, threatening, and communicating with represented parties concerning the subject matter of this litigation and to communicate through their counsel only. [98] at 8. Specifically, Defendants ask the Court to prohibit Plaintiffs from directly contacting Defendants and City of Biloxi employees during the pendency of this litigation, unless otherwise given express written authority from their counsel. *Id.* Only Petrini opposes the motion.[2] [100]; [101].

**I. Background**

Petrini initiated this lawsuit on June 6, 2025. [1]. Since then, he has amended his Complaint twice, with the Second Amended Complaint adding Maeda as a plaintiff. [19]; [96]. Petrini also initiated a second lawsuit on July 24, 2025, and a third lawsuit on August 15, 2025. *See Petrini v.*

---

[1] Peter C. Abide and Currie Johnson & Myers, P.A. are also named as defendants. They have not joined in this motion, nor do they take any position regarding the motion.

[2] Maeda did not file a response in opposition. As a practical matter, however, the conduct at issue in the instant motion only concerns Petrini. Defendants have presented no evidence showing that Maeda has engaged in conduct which warrants entry of protective order against her.

*City of Biloxi, Mississippi et al*, Civil Action No. 1:25-CV-233-LG-RPM; *Petrini v. City of Biloxi, Mississippi et al*, Civil Action No. 1:25-CV-254-LG-RPM.  Because these three lawsuits involve common questions of law and fact, they were consolidated by the Court for administrative purposes only.  [32].

## II.  Law & Analysis

### A.  Leniency Toward Pro Se Litigants

Federal courts have a "traditional disposition of leniency toward pro se litigants." *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998) (per curiam).  But this leniency afforded to pro se litigants should not be used as an instrument to harass and badger. *Day v. Allstate Ins. Co.*, 788 F.2d 1110, 111 (5th Cir. 1986).  Pro se litigants do not have a "license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

### B.  Federal Rule of Civil Procedure 26(c)

As an initial matter, Petrini argues that, because discovery has not yet commenced, Defendants' motion is procedurally premature in seeking relief under Federal Rule of Civil Procedure 26(c).  [101] at 2–3.  The Court agrees that Rule 26(c) is not the proper vehicle for entry of a protective order since discovery has not yet commenced. *See Spann v. City of Shreveport*, 2025 WL 2496570, at *14 (W.D. La. Aug. 14, 2025).  Even so, the Court is not powerless under these circumstances.  Defendants also move the Court for entry of a protective order pursuant to the Court's inherent powers.  [98] at 6.  "[E]ven outside of Rule 26(c), 'courts retain the inherent authority to enter protective orders in order to control and preserve the integrity of their judicial proceedings.'" *Jones v. Cooper*, 2021 WL 11457417, at *5 (D.S.C. Oct. 21, 2021) (quoting *In re for Wilson*, 2017 WL 2536913, at *3 (D.S.C. June 12, 2017)).

### C. Mississippi Rule of Professional Conduct 4.2

In their argument, Defendants reference Mississippi Rule of Professional Conduct 4.2. [98] at 5. That Rule provides, "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Miss. R. Prof. Conduct 4.2. Citing to a Mississippi Supreme Court case, Defendants appear to suggest pro se litigants are bound by the Mississippi Rules of Professional Conduct. [98] at 6. The Mississippi Supreme Court has held that, "[w]hile pro se litigants are afforded some leniency, they 'must be held to substantially the same standards of litigation conduct as members of the bar.'" *Sumrell v. State*, 972 So.2d 572, 574 (Miss. 2008) (quoting *Perry v. Andy*, 858 So.2d 143, 146 (Miss. 2003)).

Upon review of *Sumrell*'s predecessors, the Mississippi Supreme Court originally held that "[p]ro se parties should be held to the same rules of procedure and substantive law as represented parties." *Dethlefs v. Beau Maison Dev. Corp.*, 511 So.2d 112, 118 (Miss. 1987). Upon further review of *Sumrell*'s progeny, the Mississippi Supreme Court has consistently applied its holding when considering whether an issue is waived or procedurally barred on appeal, such as when a pro se litigant fails to comply with the requirements of Mississippi Rule of Appellate Procedure 28. *See, e.g., Miller v. State*, 412 So.3d 393, 395–96 (Miss. 2024). So, the Court is not convinced *Sumrell* goes so far as to say that pro se litigants are bound by the Mississippi Rules of Professional Conduct.[3] Defendants cite no authority that expressly states pro se litigants are bound by the

---

[3] Nor do Local Rules of this Court suggest that *pro se* litigants are bound by the Mississippi Rule of Professional Conduct. *See* L.U. Civ. R. 83.5 ("An *attorney* who makes an appearance in any case in the district court is bound by the provisions of the Mississippi Rules of Professional Conduct and is subject to discipline for violating them.") (emphasis added).

Mississippi Rules of Professional Conduct.[4]  Therefore, the Court proceeds here solely under its inherent powers.

### D.  Inherent Powers

As stated before, Defendants move the Court for entry of a protective order pursuant to its inherent powers.  [98] at 6.  Petrini argues that the Court is powerless to issue protective orders under the circumstances.  [101] at 9.  The Court disagrees.

The Court's inherent powers should be used to fill the gap "[w]hen rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process." *Human Rights Def. Ctr. v. United States Park Police*, 126 F.4th 708, 718 (D.C. Cir. 2025) (quoting *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995)).  In regard to these inherent powers, the Supreme Court has explained that:

> It has long been understood that [c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others. For this reason, Courts of justice are universally acknowledged to be vested, by their very creation with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates. These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (internal citations and quotation marks omitted).  "Because of their very potency," however, "inherent powers must be exercised with restraint and discretion."  *Id.*

---

[4] However, the Court notes that Petrini should be generally familiar with professional conduct rules.  At the in-person status conference on September 30, 2025, he represented that he has a law degree and that he is licensed to practice in four countries.  He also represented that he had recently joined "Loyola" (presumably, Loyola University New Orleans College of Law) and plans to sit for the bar exam in Louisiana in June 2026.  Under these circumstances, the Court questions whether Petrini may be bound to professional conduct rules if he is licensed in other countries and enrolled in a law school in the United States.

The Court "has no desire to deter any litigant from advancing any claim or defense which is arguably supported by existing law . . . ." *Farguson v. MBank Houston, N.A.*, 808 F.2d at 359. Nevertheless, it has a responsibility to maintain the integrity of its judicial proceedings and is accorded the necessary authority to do so. *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 803 (5th Cir. 2003). "Federal courts have authority to remedy litigation practices that threaten judicial integrity and the adversary processes." *In re Shell Oil Refinery*, 143 F.R.D. 105, 108 (E.D. La. 1992). Additionally, "a court may regulate the conduct of the parties before it[.]" *Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 452 (5th Cir. 2022); *see Lewis v. S. S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976) ("We believe that all courts . . . have inherent power, within certain limits, to control the conduct of the parties who have subjected themselves to the jurisdiction of the courts."). This includes the authority to enter protective orders. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984) ("[W]e have no question as to the court's jurisdiction to [enter protective orders] under the inherent 'equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices.'").

Here, Defendants rely on several cases in support of their motion, one of which is *Palmer v. Milnor*, 2022 WL 407389, at *7 (W.D. Wash. Feb. 10, 2022). In *Palmer*, the Court granted the defendants' motion for a protective order and prohibited the pro se plaintiff from contacting any individual defendant about the case without permission from defense counsel. *Id.* The Court explained as follows:

> A federal court possesses the inherent power to regulate litigants' behavior. In the Court's experience, it is best practice for pro se plaintiffs to communicate directly with opposing counsel rather than with defendants. The practice promotes efficiency, avoids potential annoyance, confusion, undue burden, or harassment toward defendants, and prevents inappropriate communications between the parties.

*Id.* (internal citation omitted).  Numerous courts, with some invoking their inherent powers, have provided similar relief and/or admonished pro se litigants like the Court in *Palmer*.  *See, e.g., Bisciglia v. Lee*, 370 F. Supp. 2d 874, 879 (D. Minn. 2005); *Pistolis v. Ameren*, 2022 WL 2159291, at *8–9 (S.D. Ill. June 15, 2022); *Yao v. Oakland Univ.*, 2022 WL 187760, at *1 (E.D. Mich. Jan. 20, 2022); *Murphy v. Wilhelm*, 2021 WL 799307, at *4–5 (D. Or. Mar. 2, 2021); *Walker v. Intelli-Heart Servs., Inc.*, 2019 WL 2330883, at *2 (D. Nev. May 30, 2019); *Shim-Larken v. City of New York*, 2017 WL 4862790, at *3 (S.D.N.Y. Oct. 25, 2017); *Hutchens v. Hutchens*, 2006 WL 8440290, at *4 (D. Ari. June 20, 2006).  "[S]ome courts have allowed *pro se* parties to informally contact the opposing party's employees."  *Shim-Larkin*, 2017 WL 4862790, at *3.  Similar to the *Shim-Larkin* case, however, Petrini has not cited, nor has the Court found, "any binding authority *requiring* courts to allow such contact."  *Id.*

**E.  Conduct Warranting Entry of a Protective Order**

Here, the Court finds that Defendants have presented clear evidence of a pattern of inappropriate and harassing behavior by Petrini.  For example, Petrini sent the following text messages to Creel (an individual defendant in this matter) on November 25, 2025:



[97-6] at 11.  He then sent the following text messages to Creel on December 1, 2025, at 6:16 a.m.:



*Id.* at 13.   Later that same morning, Petrini continued to bombard Creel with a series of text

messages, promising to have him arrested:



*Id.* at 14.  Despite the filing of the instant motion, Petrini has not stopped sending text messages to

Creel.  For instance, Petrini recently sent Creel the following text message:

7

> Hey my corrupt trash friend, make sure to read the article about you going live soon; you will love it!! Rise and Shine, #zach_give_me_my_report #whitehead_hello! _did_you_like_the_article? _it_had_28.000_views #stop_crying_to_the_-judge_and_provide_my_re-port_you_damn_dinosaurs_-corupt_fucks Enjoy church and no pervert surveillance after sermon, you damn pervert

[104-1] at 2.  Petrini himself admits these are "hostile texts."  [120-1] at 4.  For what its worth, he also indicates he will no longer contact Creel.  *Id.* at 3.

In addition to his incessant text messages, Petrini sent an email to Creel, Defendants' counsel, and others on November 26, 2025, which states in part: "Mr. Creel's continued warrantless entries onto properties in a Castle Doctrine state create foreseeable risk of tragedy." [97-7] at 2.  He later states, "***Do not let this end in tragedy***.  You are hereby warned.  Do not act surprised later." *Id.* Petrini says that this reference to the Castle Doctrine "was not a threat but a warning about the objective risk created when government officials repeatedly appear at a citizen's residence without consent" and that he "urged caution precisely to *avoid* tragedy, not to threaten it."  [101] at 23. Regardless of whether the reference was a threat or a warning, it is concerning to the Court.

In a separate email to Defendants' counsel on December 1, 2025, Petrini states, "If this continues, there is simply no scenario in which some of your clients avoid arrest.  I do not believe it needs to come to that.  But I will (try my best) to make it happen if forced." [97-9] at 2.  He goes on to say, "I will not let this be a silent battle where I scream into the void, **we can all lose**."

*Id.* at 3. He then referred to another individual defendant in this matter as "that crackhead looking inspector." *Id.* And in a prior email to Defendants' counsel, Petrini said, "If the only possible outcome in this is either one of us getting arrested, let's live this to the fullest." [102-4] at 2.

Lastly, Petrini also has created a website where he has posted articles and AI-generated videos about this litigation or those involved in it. [97-10]. Petrini argues that Defendants seek to censor his speech here, such as the posting of these articles and videos. [101] at 1. This is a mischaracterization. Defendants do not ask this Court to limit Petrini's ability to post his articles and videos. It appears they only intended to make the Court aware of the posts to provide context of Petrini's conduct. While the Court does not approve of the website or address whether this specific conduct by Petrini is actionable, this Order does not grant any relief regarding Petrini's ability to post articles or videos on his website. No such relief was requested.

Instead, this Order is intended to maintain the integrity of the judicial proceedings before this Court.[5] At the in-person status conference on September 30, 2025, the Court ordered Petrini to conduct himself as a gentleman and a professional and to conduct himself appropriately in front of this Court. Clearly, Petrini has not done this.

### III. Conclusion

The Court has considered all arguments. Those not specifically addressed would not have changed the outcome. In light of Petrini's inappropriate and harassing behavior,[6] the Court finds

---

[5] Assuming arguendo that the entry of this protective order under the circumstances may fall within the definition of a prior restraint of free speech, the Court is convinced that the interest in maintaining the integrity of its judicial proceedings is sufficient to meet the heavy burden of justification. *See Seattle Times Co.*, 467 U.S. at 28.

[6] In addition to the behavior already discussed, the Court notes that Petrini has filed five motions for partial summary judgment. [112]; [114]; [116]; [118]; [121]. In an email to counsel for Defendants, Petrini indicated that he intended to file over twenty motions for partial summary judgment in what he characterizes as an "endless conflict" which is "by design" and that he will appeal "every partial motion for summary judgment that [he] lose[s]." [97-9] at 2–3. The Court makes no finding here, but this appears to violate—or comes perilously close to violating—Rule 11(b)(1).

that the entry of a protective order is warranted.  As such, Defendants' motion is granted in part and denied in part.

IT IS THEREFORE ORDERED AND ADJUDGED that Defendants' [97] Motion for Protective Order is GRANTED IN PART AND DENIED IN PART.  The motion for a protective order as to Plaintiff Sumire Maeda is DENIED, but the motion for protective order as to Plaintiff Yuri Petrini is GRANTED as follows:

1. During the pendency of this litigation, Plaintiff Yuri Petrini shall not contact or communicate with Jerry Creel, Jeff Harbor, Jennifer Polk, Tara Busby, or any other employee of the City of Biloxi **about this case or the cases which have been administratively consolidated with this case**, without express written authority from those defendants' counsel.

2. If Plaintiff Yuri Petrini has a legitimate need to contact or communicate with Jerry Creel, Jeff Harbor, Jennifer Polk, Tara Busby, or any employee of the City of Biloxi **about this case or the cases which have been administratively consolidated with this case**, he is ordered to do so through those defendants' counsel.

3. If Plaintiff Yuri Petrini has a legitimate need to contact or communicate with any employee of the City of Biloxi **about anything not related to this case or the cases which have been administratively consolidated with this case**, such as garbage disposal or payment of bills, he may do so without express written authority from the defendants' counsel.

4. When contacting or communicating with any of the defendants' counsel, Plaintiff Yuri Petrini shall do so civilly and professionally and shall make no abusive, harassing, or disrespectful comments about the defendants or their counsel.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff Yuri Petrini's [103] Motion to Strike is DENIED.  In the alternative, Plaintiff asked this Court to grant him leave to file a sur-reply addressing the allegedly new matters raised by Defendants in their rebuttal.  Because Plaintiff addressed these allegedly new matters in his motion, the Court simply construed his motion as a sur-reply, considered his arguments, and found it unnecessary for Plaintiff to file a separate sur-reply.

IT IS FURTHER ORDERED AND ADJUDGED that failure to comply with this Order may be deemed contumacious conduct and/or result in sanctions, including dismissal of this case—and/or the other related cases administratively consolidated with this case—pursuant to Federal Rule of Civil Procedure 41(b).

SO ORDERED AND ADJUDGED, this the 30th day of December 2025.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE

11