SOUTHERN DISTRICT OF MISSISSIPPI
FILED

JAN 09 2026

ARTHUR JOHNSTON
BY_____ DEPUTY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

YURI PETRINI and SUMIRE MAEDA,
    **Plaintiffs,**
v.

                                         Civil Action No. 1:25-cv-00178-LG-RPM

CITY OF BILOXI, MISSISSIPPI, ET AL.,
    **Defendants.**

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR PARTIAL SUMMARY JUDGMENT

### I. INTRODUCTION

"No man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." In re Murchison, 349 U.S. 133, 136 (1955). On November 7, 2025, Jerry Creel sat as Secretary of the tribunal reviewing his own enforcement decision. On that same day, Michael LeBatard--who had publicly defended Creel on June 30, 2025--sat as a Board member adjudicating the appeal of Creel's enforcement. The constitutional violation is textbook.

This Court's prior ruling in Pride v. City of Biloxi is dispositive. Judge Guirola held that the Building Official of Biloxi "was a policymaker for purposes of Section 1983." Pride v. City of Biloxi, No. 1:10-cv-00100-LG-RHW, 2011 WL 5835109, at *8 (S.D. Miss. Nov. 21, 2011). That holding is **law of the case**, foreclosing any defense that Creel lacked policymaking authority or that municipal policy requires proof of pattern and custom. Under Monell v. Dep't of Social Services, 436 U.S. 658 (1978), and Owen v. City of Independence, 445 U.S. 622 (1980), **qualified immunity** does not apply to municipalities. When Creel acts, the City acts.

Plaintiff Yuri Petrini, proceeding pro se, submits this consolidated motion for partial summary judgment on nine constitutional claims that share a common characteristic: each rests upon documentary evidence that Defendants cannot dispute, did not create, and cannot now escape. These are not credibility contests inviting jury resolution. These are questions of what documents say, what dates establish, and what confessions mean. The answers are binary. The

1

liability is absolute. The judgment is compelled.

The documentary evidence goes beyond mere constitutional violation--it establishes **fraud upon the court.** A "Standing Order to Seal" bearing Judge Tisdale's signature and dated **February 7, 2022** was fabricated for a case that would not exist until **July 9, 2025.** The source of this forgery has been identified: an identical legitimate order from City of Biloxi v. Brian Dean Bloodsworth, Case No. 22-005006, served as the template. The same prosecutors--Harenski and Eckert--signed both orders. Someone took an authentic 2022 court document and manufactured a fraudulent copy for a nonexistent case. Brian Bloodsworth himself contacted Plaintiffs through their public tips email, stating: **"I believe the original order was issued against me"** and calling Plaintiffs' order **"forged."** This is not inference--this is **identification of the source document and independent witness confirmation of the forgery.** As the Supreme Court recognized: **"Tampering with the administration of justice in [this] manner... involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public."** Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944).

This motion consolidates the five partial summary judgment motions Plaintiffs previously filed separately: ECF 112, ECF 114, ECF 116, ECF 118, and ECF 121. Defendants expressly requested this consolidation in their January 2, 2026 Motion to Stay (ECF 130-131), arguing for "a single consolidated motion and brief in support." ECF 131 at 5. Plaintiffs have now done exactly what Defendants demanded.

Defendants are judicially estopped from objecting to this consolidated filing. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). Defendants' own authorities establish that "a single omnibus document would suffice" and that seriatim motions "waste judicial resources." Vera v. Rodriguez, 2017 WL 6621048, at *1 (D.N.M. 2017); Murry v. City of Indianola, 2023 WL 8100568, at 2 (N.D. Miss. Nov. 21, 2023). Defendants requested consolidation; Plaintiffs complied. Defendants cannot now object to the consolidated briefing their own motion practice

demanded.

The ten claims--First Amendment retaliation, structural and procedural due process, Fourth Amendment seizure, Monell liability, conspiracy, state action, judicial estoppel, fraud upon the court, and Whitehead's undisclosed conflict of interest--each constitute an independent basis for relief. Summary judgment on any single claim entitles Plaintiffs to relief. The documentary record demonstrates every element. The law has been **clearly established** for decades. Summary judgment is compelled.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

The following facts are established by the documentary record and are not subject to genuine dispute.

### A. The Federal Lawsuit and Immediate Retaliation

On June 6, 2025, Plaintiffs filed this federal civil rights action against the City of Biloxi and various defendants. ECF 1.

On June 17, 2025, Plaintiffs were informed that City employees were **"not allowed to talk to you** under orders of City Attorney Peter Abide." Second Amended Complaint at ¶ 9 (Case 178 ECF 96; Case 233 ECF 40). Defendants confirmed this communication blockade in their own filings: City Attorney Abide admitted he was **"advising his client not to talk with Petrini after he threatened to and did, in fact, sued multiple city employees."** Case 233 ECF 54 at 8. The City admitted that **"all communications were routed through Ros."** Case 178 ECF 62. The City further admitted the policy extended to all citizens: **"All citizen appeals must be routed through defense attorneys."** Case 178 ECF 97. These statements constitute party admissions under Federal Rule of Evidence 801(d)(2)(A).

On June 27, 2025, **Defendant Peter C. Abide**--City Attorney and Director of Legal--personally signed **six separate letters** denying Plaintiffs' public records requests, each stating: "This request is overbroad as written and appears to be a **fishing expedition for your**

federal case." Exhibit X (PRR Combined). **Six denials on a single day** using **identical language** constitute coordinated retaliation. A defendant who writes **"fishing expedition for your federal case"** has admitted the federal lawsuit motivated the denial--a **party admission** under Fed. R. Evid. 801(d)(2)(A). None of the letters cited any statutory exemption; each referenced only the federal lawsuit.

On August 14, 2025, Building Official Jerry Creel sent a text message to Plaintiff Yuri Petrini at 11:39 AM stating: **"Any communications from this point forward should go through Attorney Hank Ros."** Case 178 ECF 43, Exhibit. Defendants admitted this text message exists: "Creel's text message to Petrini stating that **further communications should go through Ros."** Case 178 ECF 62 at 14. This directive formalized the communication blockade--Plaintiffs could no longer communicate directly with the Building Official responsible for their permits. On August 8, 2025, Creel had emailed that direct communication was **"not productive"**--revealing hostility toward the property owners he was obligated to serve. Creel Email, Exhibit R.

### B. The June 30, 2025 Stop Work Order

On June 30, 2025, at approximately 2:17 PM, Plaintiffs filed a report with the FBI regarding death threats. ECF 1 at ¶ 17; Exhibit T. Plaintiffs operate an ITAR-registered defense contractor from the property. Exhibit S. **Fifty minutes** later, the City issued a stop work order. Exhibit G. Defendants admit this timing: **"fifty minutes** after Plaintiffs filed [a] FBI report." ECF 106 at 2; ECF 108 at 5.

The stop work order was delivered by **armed police officers.** Building Official Jerry Creel testified under oath: "Tara, assisted by two police officers, went out there because she felt -- she didn't feel safe going out there without it." November 7, 2025 Transcript, p. 51:7-11, Exhibit AB; Busby Armed Police Encounter, Exhibit V.

The stop work order was issued at the direction of final policymakers. Creel testified: "I presented the information to the mayor and Pete Abide, who **directed me to issue a stop work**

order." November 7, 2025 Transcript, p. 51:3-6, Exhibit AB. ECF 106 at 7 confirms this, admitting the order issued "after consultation with Mayor Gilich and City Attorney Abide." Creel said "directed me"--a command. This **party admission** establishes that final policymakers ordered the violation.

No **pre-deprivation notice or hearing** preceded the June 30 stop work order--no notice of violation, no phone call, no email. The first notice was the order itself, delivered by armed officers. *Memphis Light*, 436 U.S. at 18. Defendants do not dispute this. The first opportunity to challenge came November 7, 2025--**over four months** later.

The stop work order did not identify specific code violations and was addressed to "**To Whom It May Concern**" rather than to Plaintiff by name. Nov. 7 Tr. at 23:22-24, Exhibit AB. Yet the City's own permit files identified Yuri Petrini as the property owner with documented telephone, email, and licensed contractor status. Nov. 7 Tr. at 13-18, 20-24.

The stop work order did not identify conditions for resumption of work. Stop Work Order dated June 30, 2025, Exhibit G.

### C. The Criminal Charges and Chronological Fabrication

The summons came first. The justification came later. Municipal court discovery reveals documentary proof that the criminal summons issued before the sworn statements establishing probable cause existed--prosecution by fiat, with legitimacy manufactured after the fact.

On **July 9, 2025, at 9:05 AM**, a criminal summons was issued in Case No. CC-51719 charging Plaintiff with building code violations. The summons bears a court time stamp: "**07/09/2025 9:05.**" Criminal Summons, Exhibit E. The summons was delivered in person on **July 11, 2025, at 11:10 PM**, by Officer Newell, Badge No. 77. Disposition Sheet and Service Record, Exhibit O.

On **July 10, 2025--twenty-four hours after** the summons--Jerry Creel appeared before **Brooke Vanover**, his own subordinate employee serving as Deputy Court Clerk, and executed

**four sworn affidavits** supporting the charges. Vanover notarized these affidavits despite her subordinate relationship to Creel--the very official whose false statements she was certifying. Each bears a notary stamp dated **July 10, 2025**. Affidavits, Exhibit F. Four affidavits that arrived one day too late to establish probable cause.

This is a **temporal impossibility**. The summons listed four IRC violations, yet the supporting affidavits were not sworn until the next day--the summons preceded its evidentiary foundation by twenty-four hours. Under MRCrP Rule 2.2(a), probable cause must be found **before** issuing process. No probable cause finding could have occurred on July 9 because the sworn affidavits did not exist until July 10.

Under Mississippi law, criminal process issued without a supporting sworn affidavit is **void ab initio**. An affidavit sworn **after** issuance cannot "relate back." *Giordenello v. United States*, 357 U.S. 480, 486 (1958).

Creel could not have believed, in good faith, that a summons issued on July 9 was supported by affidavits he did not swear until July 10. This satisfies *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978): affidavits prepared "knowingly and intentionally, or with reckless disregard for the truth." The *Franks* remedy is mandatory: "the warrant must be voided." The summons must be voided, and all proceedings flowing from it--including the July 25, 2025 cease and desist order--are invalid.

The criminal summons listed "**IRC R114.4, IRC R110.1, IRC R105.1**" in the "Ordinance" field--but cited no municipal ordinance. The International Residential Code has no force unless adopted by ordinance. Miss. Code Ann. § 21-13-1 limits enforcement to duly adopted ordinances; § 21-19-25 requires building codes be adopted "by ordinance" and "certified to by the mayor and clerk." Under *nullum crimen sine lege*, no criminal prosecution exists without a codified offense. The City charged Plaintiffs with IRC violations never enacted as criminal ordinances. This is jurisdictional. No crime existed to charge.

6

The Disposition Sheet reveals coordinated timing. On **July 25, 2025**, the municipal court entered **two notations on the same day**: "7/25/2025 - PTD" and "7/25/2025 - @ Cease + desist order entered." Disposition Sheet, Exhibit O; Cease and Desist Order, Exhibit M; Pretrial Diversion Motion, Exhibit N; City Timeline Municipal Court, Exhibit W. The simultaneous pretrial diversion and cease and desist order proves the prosecution was never intended to adjudicate guilt--it was a mechanism to create judicial authority for property restrictions the City could not otherwise obtain. This implicates *Tumey*, 273 U.S. 510 (1927), and *Ward*, 409 U.S. 57 (1972): when a municipal court simultaneously processes diversion and property restrictions benefiting the prosecuting department, structural neutrality is absent.

Creel's affidavits claim personal observation of Plaintiff on July 10, 2025. This claim is perjury--and the City knew it was false when Creel swore it.

The timeline proves physical impossibility. On **July 7, 2025**, Plaintiff Yuri Petrini underwent eye surgery in **California**. Declaration of Sumire Maeda, Exhibit Q. On that same **day--while Plaintiff was in California for surgery--**City inspectors began harassing Plaintiff Sumire Maeda at the property, driving by and honking horns imitating police. This harassment prompted Plaintiff Yuri Petrini to send **multiple emails** and **telephone the Building Department** on July 7, 2025, demanding this retaliatory and vexatious behavior halt. **The City thus knew on July 7 that Plaintiff was incapacitated and away from Mississippi--**because Plaintiff told them so while complaining about the harassment.

On **July 9, 2025**, Plaintiffs returned to Mississippi--the same day the criminal summons issued. On **July 10, 2025**, Plaintiff Yuri Petrini remained **bedridden until approximately 4:00 PM**, recovering from surgery. Yet Creel swore four affidavits that day claiming personal observation of Plaintiff. Creel could not have personally observed what his own department knew was physically impossible. The July 7 communications establish knowledge--the City cannot claim mistake when Plaintiff had just informed them he was incapacitated.

This perjury traces directly to Defendant Abide. Creel testified that "the mayor and Pete Abide... **directed me to issue a stop work order.**" Transcript, p. 51:3-6. Abide directed enforcement that had no factual basis. Creel executed it. When challenged, Creel manufactured sworn justification he knew was false. The chain is complete: **Abide directed → Creel executed → Creel perjured to justify what Abide ordered.** Under *Napue v. Illinois*, 360 U.S. 264, 269 (1959), proceedings infected by perjured evidence "**must fall.**" Under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), affidavits prepared "knowingly and intentionally, or with reckless disregard for the truth" void the underlying process. Creel knew the truth because his department received Plaintiff's July 7 communications. He swore the opposite.

The City's own Municipal Court Timeline corroborates this--no **July 10, 2025 observation event appears** on the City's contemporaneous enforcement record. Exhibit W. Creel's own email dated July 10, 2025 confirms receipt of documents from Maeda--making no mention of observing Yuri Petrini. If Creel had personally observed Plaintiff as sworn, his contemporaneous email would reflect it.

Plaintiff confronted Creel with these perjured affidavits at the **July 25, 2025 arraignment** before Judge Apryl Ready. Despite this being an arraignment--a proceeding where typically only a plea is entered--Judge Ready permitted Creel to testify and participate. Plaintiff accused Creel of perjury **multiple times** during this proceeding. Creel offered **no denial.** Judge Ready acknowledged Plaintiff's accusations, stating words to the effect of "**bring that to trial, where you will have due process.**" Even the presiding judge recognized the perjury allegations as sufficiently serious to warrant adjudication--yet Creel, who was present and participating, **never denied** the accusations. This is the first of Creel's adoptive admissions.

On **July 14, 2025,** Plaintiff sent a detailed email to Creel accusing him of **"CRIMINAL PERJURY"** for his July 10 affidavit, stating: "Your July 10 sworn affidavit claiming I was 'installing' a swimming pool is completely false... I was post-operative from

July 7 surgery and did not leave my house on July 10." This email was **copied to CAO Richard Weaver (rweaver@biloxi.ms.us)**, City Attorney Peter Abide, and all defense counsel--Zachary Cruthirds, Hank Ros, and Michael Whitehead. Creel never responded to deny the perjury accusation. The City's highest administrator (CAO Weaver) received written notice that Creel had sworn false affidavits. This is the second adoptive admission--and the City's leadership was placed on notice.

Plaintiff subsequently addressed the **Biloxi City Council** during public comment, where citizens are allotted three minutes to speak. Plaintiff delivered a **written letter** detailing Creel's perjured affidavits, which was **entered into the official City Council record**. Creel was present at this meeting. When Plaintiff publicly accused him of perjury before the City Council--with documentary evidence entered into the permanent record--Creel **again offered no denial**. This is the third adoptive admission.

At the November 7 Board hearing, Plaintiff called Creel "**a criminal**" and "**perjurer**" for the fourth time. Transcript, pp. 182-185. Creel offered **no denial**. This silence constitutes adoptive admission under Fed. R. Evid. 801(d)(2)(B). *Southern Stone Co. v. Singer*, 665 F.2d 698, 701 (5th Cir. 1982). An innocent man denies accusations of perjury. Creel did not--because he could not.

Creel's silence is particularly damning given his documented personality. The record establishes Creel's reputation as **prideful, confrontational, and always on the offensive**--a man who aggressively defends his authority and attacks those who challenge him. His August 8, 2025 email telling Plaintiff "I don't think this meeting is going to be productive" after Plaintiff requested to meet demonstrates his combative nature. Exhibit R. His November 7, 2025 testimony reveals a man who lectures, deflects, and dominates proceedings. Yet when Plaintiff accused him of perjury--**four separate times, in four separate forums**--this confrontational official fell **completely silent**. This behavior is wholly devoid of Creel's usual self. The man who fights everything refused to fight the one accusation that mattered most. His

silence speaks louder than any denial ever could. Defense counsel in these proceedings likewise pull every resource available to avoid reaching the merits--filing motion after motion on procedural grounds, seeking dismissal on technicalities, requesting stays, and objecting to discovery. The pattern is consistent: **neither Creel nor his attorneys will engage the substance of the perjury accusation.** They cannot defend what is indefensible.

On September 19, 2025, the criminal case was dismissed--prosecution failed to produce evidence. Exhibit P. *Branton*, 503 F. Supp. 2d at 820 (absence of evidentiary support weighs toward constitutional violation).

### D. The February 2022 Fabrication

The summons preceded its affidavits by one day. The "Standing Order to Seal" bearing **Judge Tisdale's signature** preceded the existence of the case itself by **three years and five months.**

On **February 7, 2022**, a "Standing Order to Seal" was created for Case CC-51719 bearing **Judge Tisdale's** signature. Exhibits A, B. The order identifies "YURI VINICIUS PETRINI DE MORAES" as defendant--but Case CC-51719 did not exist until **July 9, 2025**, over forty months later. Exhibit E. No case existed to seal. No defendant existed to restrict. Yet an order bearing Judge Tisdale's signature purports to do both.

The February 2022 date on a July 2025 case proves fabrication--stripping judicial immunity. Under *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1871), "where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority." On February 7, 2022, Case CC-51719 did not exist--no case, no parties, no controversy. This is the "clear absence of all jurisdiction" where immunity is stripped. *Stump*, 435 U.S. at 356-57; *Boyd*, 31 F.3d at 284-85. Under *Forrester*, 484 U.S. at 229, immunity protects only "adjudication"--signing an order for a nonexistent case is fabrication, not adjudication.

The order is **void ab initio.** A judgment issued without subject matter jurisdiction has no legal effect, and nunc pro tunc cannot create jurisdiction that never existed.

This fabrication constitutes **fraud upon the court.** *Hazel-Atlas*, 322 U.S. at 246. Fraud upon the court has no statute of limitations. Fed. R. Civ. P. 60(d)(3). The fabrication exposes criminal liability under 18 U.S.C. §§ 1519, 1503 and Miss. Code Ann. § 97-21-35.

### E. The LeBatard Conflict of Interest

On **June 30, 2025**--the same day the stop work order issued--Michael LeBatard sent an email defending Jerry Creel, admitting: **"I have worked with Mr. Creel for many years"** and **"As a member of the City's Appeals Committee,** I can also state that Mr. Creel has never attempted to influence our decisions." Exhibit H.

**Over four months** later, on November 7, 2025, this same LeBatard sat on the Board of Building Appeals hearing Plaintiffs' appeal of Creel's enforcement. Exhibit AB. The defender became the adjudicator. Before any evidence was presented, LeBatard dismissed defects as **"trivial and minor."** Transcript, p. 30:12-13.

LeBatard made the motion to uphold the stop work order. November 7, 2025 Transcript, p. 79:23-24, Exhibit AB. Creel's defender completed his transformation into Creel's judge by casting the decisive procedural vote.

LeBatard never disclosed his June 30 defense of Creel. The transcript contains no recusal acknowledgment. Plaintiffs were denied the opportunity to challenge LeBatard because they were never informed of the conflict.

The violation deepened when LeBatard received an **ex parte communication**--a document handed to him during the hearing. LeBatard stated: **"So I just read something that was handed to me that a court -- the judge ordered you to stop work, I believe, on the 20th of July."** Transcript, p. 33:11-13. He weaponized this secret document: **"A judge ordered you to stop work. Did you?"** Transcript, p. 33:20-21. Plaintiff had no opportunity to respond.

"The one who decides must hear." *Morgan v. United States*, 304 U.S. 1, 18 (1938). The Fifth Circuit condemns ex parte influence as "a plain violation of the root principle of judicial

fairness." *Pillsbury*, 354 F.2d at 964. Whoever handed LeBatard that document "irrevocably taint[ed]" the proceeding. *PATCO*, 685 F.2d at 564. LeBatard's bias plus the ex parte communication renders the November 7 decision void.

### F. The Creel Dual Role

Jerry Creel is both the Building Official who issued the enforcement actions and the Secretary of the Board of Building Appeals. November 7, 2025 Transcript, pp. 41-64, 64:1-5, Exhibit AB. At the November 7, 2025 hearing, Creel: (1) presented the City's case testifying pp. 41-64; (2) instructed Board members on procedure--"**We need a reason for your vote**" (p. 77:1-5); and (3) answered procedural questions from Board members (p. 80:13-19).

At the November 7, 2025 hearing, Plaintiff called Creel "a criminal" and "mafioso." Creel offered no denial. Transcript, pp. 182-185. This silence constitutes **adoptive admission** under Fed. R. Evid. 801(d)(2)(B). *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976), permits adverse inferences from silence in civil proceedings.

Creel testified that his enforcement was based on subjective judgment rather than objective code standards. He stated that he "presented the City's case and explained that **according to his interpretation** of the 2021 IRC" the property "did not comply with the permit." November 7, 2025 Transcript; ECF 106 at 2. The phrase "**according to his interpretation**" establishes that the enforcement was discretionary and subjective, not mandated by clear code violations.

### G. The Whitehead Conflict of Interest and Coordination

Attorney Michael Whitehead is simultaneously a defendant in Case No. 1:25-cv-00254-LG-RPM while representing Defendant Jerry Creel in his personal capacity in the present action. ECF 098 (signature block: "Jerry Creel, Jeff Harbor, Jennifer Polk, and Tara Busby BY: /s/ Michael E. Whitehead"). This dual status--defendant in one related federal case while serving as personal counsel in another--creates an inherent conflict that taints all of

Whitehead's coordination activities with City officials.

On **November 7, 2025, at 11:59 AM,** attorney Michael Whitehead surveilled Plaintiffs' property at 1606 Beach Boulevard. Surveillance photographs, Exhibit AA and Exhibits AA-1 through AA-6. Six additional photographs from that surveillance session document Whitehead's sustained observation: **multiple angles** of the property, **continuous monitoring,** and **coordinated positioning** with other City vehicles. Whitehead's admission destroys any claim of innocence: "It's called **going to lunch with a friend and incidentally observing you working on property under a Stop work order.** The observation is **open and obvious and visible from the road.**" Email correspondence, Exhibit J. Whitehead admits real-time knowledge of enforcement status. The word "incidentally" strains credulity when the same attorney appeared at the Board hearing four hours later--and when **six additional surveillance photographs** document sustained observation, not incidental glancing.

The evidence eliminates any presumption of innocence. **Whitehead was a passenger--not the driver--leaving him free to photograph the property. The six surveillance photographs (Exhibits AA-1 through AA-6)** prove this was no casual observation: they show **systematic documentation** from **multiple vantage points** over an extended period. **Another City vehicle** was observed nearby. Whitehead had been warned Plaintiff intended to resume work. His presence at the precise moment Plaintiff was working, recording continuously while **another City vehicle** patrolled nearby, establishes **premeditated surveillance.** Creel Vehicle Sunday Surveillance, Exhibit I; Drone Surveillance Photograph, Exhibit U; City Vehicle 30439 Photograph, Exhibit U.

On November 7, 2025, at approximately 3:00 PM, the same Michael Whitehead appeared at the Board of Building Appeals hearing as counsel to the City. November 7, 2025 Transcript, Exhibit AB. Critically, all of this surveillance and coordination occurred while a **statutory stay** was in effect. Biloxi Code § 23-2-4(S)(5) provides: "**A pending Appeal stays all city actions.**" Plaintiffs' appeal to the Board of Building Appeals triggered this automatic

stay, suspending enforcement of the stop work order pending resolution. Yet Whitehead surveilled Plaintiffs for potential violations of an order that was **legally suspended by the City's own ordinance**--enforcement that the City itself was prohibited from conducting.

Whitehead forwarded Plaintiff's communications to City counsel: "Your email to Mike Whitehead announcing your intent to resume work on 1606 Beach Boulevard **has been forwarded** to our firm as attorneys for the City." October 2025 Email, Exhibit K. A defendant in Case 254 functioning as an information conduit for the City's enforcement campaign.

Whitehead further admitted that meetings with City officials occurred "as needed." Email admission, Exhibit L. A defendant in related litigation cannot simultaneously serve as personal counsel to defendants in this action without the coordination presumptively constituting conspiracy under Dennis v. Sparks, 449 U.S. 24 (1980).

Three law firms representing the City--Currie Johnson and Myers, Page Mannino Peresich and McDermott, and Boyce Holleman and Marion--produced filings with **60.1 percent** identical text. Textual analysis of ECF filings.

Creel testified the City controlled its "independent" expert: "we **retained** the services of Simpkins & Costelli to come in and help us analyze." November 7, 2025 Transcript, p. 52:5-8, Exhibit AB. Creel admitted direct communication: "Maddie, who works for Simpkins & Costelli... **called me back** and said, these are useless." (p. 52:9-14). Creel's possessive language defeats independence: "I'm gonna need some plans... for **our independent engineer** to analyze what's going on." (p. 52:16-18). The phrase "**our independent engineer**" is an oxymoron.

### H. The Final Policymaker Decision

The Mayor of the City of Biloxi is a **final policymaker** for municipal decisions. City Charter.

The City Attorney is a **final policymaker** for code enforcement decisions. This Court held in *Pride* that the Building Official is a **final policymaker** for code enforcement.

Creel testified that the stop work order was issued at the direction of the Mayor and City Attorney: "I presented the information to the mayor and Pete Abide, who **directed me to issue a stop work order.**" November 7, 2025 Transcript, p. 51:3-6, Exhibit AB.

This admission constitutes a party opponent statement under Federal Rule of Evidence 801(d)(2)(A) and is admissible to establish that the constitutional violations were caused by **final policymaker** decisions.

Creel admitted the City retained engineers: "we **retained** the services of Simpkins & Costelli." Transcript, p. 52:5-7. When Plaintiffs' engineer Dreux Seghers submitted a favorable report, Creel dismissed it despite admitting Seghers is someone **"who we do a lot of business with."** Transcript, p. 54:2-4. Two independent Professional Engineers provided favorable analyses; Defendants offer no explanation for rejecting both while relying solely on their retained expert.

The Board Chairman initially invited Seghers to speak but then rushed to vote without permitting his testimony. Transcript, p. 3:25-4:1. The City's retained consultant spoke; Plaintiffs' engineer was silenced.

## III. LEGAL STANDARD

Summary judgment is appropriate when "there is **no genuine dispute** as to any material fact and the movant is entitled to judgment **as a matter of law.**" Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law.

Here, the undisputed facts are established by documentary evidence: dated documents, transcripts, and **party admissions.** Defendants cannot manufacture a genuine dispute where the documentary record establishes the facts as a matter of chronology and judicial admission.

## IV. ARGUMENT

## A. Qualified Immunity Cannot Shield These Violations

Qualified immunity provides no sanctuary for the conduct at issue. The defense is fatal to Defendants' position for four independent reasons.

First, the City of Biloxi has no **qualified immunity**. Municipalities are not entitled to assert **qualified immunity** under Section 1983. Owen, 445 U.S. at 638. The City cannot invoke this defense against any of Plaintiffs' claims.

Second, the constitutional violations were "obviously" unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The principle that one cannot be a judge in one's own case has been established since *Tumey* (1927)--nearly a century.

Third, each violation was **clearly established** by binding precedent: Fourth Amendment warrant requirement (*Payton*, 445 U.S. 573); **pre-deprivation hearing** (*Loudermill*, 470 U.S. 532); prohibition on biased adjudicators (*Tumey*; *Caliste*, 937 F.3d at 532). No reasonable official would believe these actions lawful.

Fourth, private parties acting **under color of state law** cannot claim **qualified immunity**. Tower v. Glover, 467 U.S. 914 (1984). Defendants Whitehead and Abide Property Management are private parties who allegedly acted in concert with state officials. They have no **qualified immunity** defense.

Fifth, Defendants' own admissions prove they knew their conduct was unconstitutional. Creel testified that "the mayor and Pete Abide... **directed me to issue** a stop work order"--a defendant who admits following orders cannot claim reasonable belief. Creel's "**bypassed us and filed federal lawsuit**" proves knowledge. Abide's "**after he... sued**" (ECF 54 at 8) proves retaliatory purpose. First Amendment retaliation was clearly established. *Hartman*, 547 U.S. 250; *Umbehr*, 518 U.S. 668. Qualified immunity is unavailable.

## B. GROUND ONE: Summary Judgment Is Warranted on the First Amendment Retaliation Claim Because Defendants Admitted the Retaliatory Motive

On **June 6, 2025**, Plaintiffs filed this federal lawsuit. **Twenty-four days** later, armed police delivered the stop work order.

To establish First Amendment retaliation, a plaintiff must show retaliatory motive was **a substantial or motivating factor.** *Mt. Healthy*, 429 U.S. 274, 287 (1977). **Temporal proximity** alone establishes causation. *Modica*, 465 F.3d at 180; *Smith v. City of Madison*, 364 F. Supp. 3d 656, 668 (S.D. Miss. 2018) (less than one month sufficient). Under *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), the Mayor's directive imputes liability.

The stop work order was delivered by a four-person convoy: two Building Department vehicles and two police cars. Two **armed police officers** accompanied City employees as they trespassed **221 feet** onto Plaintiffs' private property--through the driveway, under the elevated house, and up three sets of stairs to reach the living quarters. This **paramilitary enforcement** of a civil building matter transforms routine enforcement into **unmistakable intimidation.**

**"Because you sued us."** On June 27, 2025, City counsel Currie Johnson and Myers wrote that Plaintiffs' requests were submitted **"because you sued us."** ECF 1, Complaint at paragraph 7. This is **confession.** A defendant who writes **"because you sued us"** has admitted what other defendants spend entire trials denying.

On that same day, **Defendant Peter C. Abide**--the City Attorney--personally signed **six letters** with **identical language:** "This request is overbroad as written and appears to be a **fishing expedition for your federal case."** Exhibit X (PRR Combined). Abide is a **named defendant;** his words are **direct party admissions** under Fed. R. Evid. 801(d)(2)(A). When a defendant writes **"fishing expedition for your federal case,"** he admits the federal lawsuit motivated his response. Six letters. Six admissions. One defendant. One day. **Coordinated retaliation** memorialized in Defendant Abide's own handwriting.

The pretextual nature is confirmed by Mississippi law. Miss. Code Ann. § 25-61-5(3) requires denial letters cite a **specific exemption.** None of Abide's six letters cited any exemption. "Fishing expedition for your federal case" is not a recognized exemption. The

17

failure to cite any lawful basis--while explicitly referencing the federal lawsuit--demonstrates **pretextual retaliation.**

On **June 17, 2025--eleven days** after filing suit--City employees were instructed they were "not allowed to talk to" Plaintiffs "under orders of City Attorney Peter Abide." ECF 053-054 confirms Abide "**advising his client not to talk with Petrini after he... sued.**" The words "**after he... sued**" are the causal admission: Plaintiff sued, Defendant retaliated. Creel testified Plaintiffs "**bypassed us** and filed federal lawsuit"--revealing the City's grievance.

Under *Mt. Healthy*, once protected activity is established as a **substantial factor,** burden shifts. Defendants admitted the lawsuit motivated their actions--**five admissions:** (1) "**because you sued us**"; (2) Abide's **six letters:** "**fishing expedition for your federal case**"; (3) Abide's directive: employees "not allowed to talk"; (4) Creel: "**bypassed us** and filed federal lawsuit"; (5) Ros: "The fact that you have sued me... creates an obstacle." A defendant cannot admit motivation and then claim it would have acted identically without that motivation.

**Fifty minutes** after Plaintiffs filed an FBI report, the City dispatched armed officers. ECF 106 and 108 admit "**fifty minutes.**" The only way to respond in fifty minutes is to have the response already prepared--retaliatory machinery primed and waiting.

**Twenty-four days** (lawsuit to enforcement). **Fifty minutes** (FBI report to armed officers). "**Because you sued us.**" "**Fishing expedition.**" "**Bypassed us.**" Each admission alone establishes causation; together, they compel judgment. Summary judgment must be granted on Ground One.

### C. GROUND TWO: Summary Judgment Is Warranted on the Structural Due Process Claim Because the November 7, 2025 Board Hearing Was Infected by Disqualifying Conflicts

Due process requires a fair trial before a fair tribunal. In re Murchison, 349 U.S. 133, 136 (1955). "No man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." The November 7, 2025 Board hearing violated this

18

principle in two independent ways, each sufficient standing alone, together rendering the proceeding void.

The Creel dual role constitutes a **textbook Murchison violation**. Jerry Creel issued the stop work orders, executed the affidavits, and directed the enforcement actions. Then this same Creel sat as Secretary of the Board reviewing his own decisions. He presented the City's case, testifying for twenty-three pages. He instructed Board members **"we need a reason for your vote"** (November 7, 2025 Transcript, p. 77:1-5, Exhibit AB). He answered procedural questions about the appeals process (Transcript, p. 80:13-19). The accuser controlled the adjudicatory body--precisely what Murchison prohibits.

As *Murchison* held, "it would be very strange if our system of law permitted a judge to act as a grand jury and then try the very persons accused." 349 U.S. at 137. Creel did exactly that.

The LeBatard conflict constitutes a separate *Tumey* violation. On June 30, 2025, LeBatard emailed defending Creel: **"I have worked with Mr. Creel for many years." Four months** later, LeBatard sat as Board member adjudicating Creel's enforcement. Before evidence was presented, LeBatard dismissed defects as **"trivial and minor."** Transcript, p. 30:12-13. LeBatard then made the motion to uphold. Transcript, p. 79:23-24. Creel's defender, prejudger, and decisive vote--LeBatard occupied all three roles.

LeBatard's bias culminated in an **ex parte communication**--a document handed to him during the hearing. Transcript, p. 33:11-13. *Morgan*, 304 U.S. at 18: "the one who decides must hear." The Fifth Circuit: "a plain violation of the root principle of judicial fairness." *Pillsbury*, 354 F.2d at 964. Whoever handed LeBatard that document "irrevocably taint[ed]" the proceeding. *PATCO*, 685 F.2d at 564.

Under *Tumey*, even a "possible temptation" to favor one party "is no less disqualifying" than actual bias. 273 U.S. at 523. Under *Caperton*, 556 U.S. at 881, the **probability of bias**--not proof--is the constitutional touchstone. The Fifth Circuit held in *Caliste*, 937 F.3d at

532, that structural entanglement is "**flatly unconstitutional.**"

The Board's decision was a **nullity**. Creel reviewing his own decisions: undeniable. LeBatard judging Creel's enforcement while calling defects "**trivial**": undeniable. When fact forecloses dispute, **law demands judgment.**

The **consciousness of guilt** deepens the violation. Plaintiff accused Creel of being "a criminal" and "mafioso." Transcript, pp. 182-185. Creel offered **no denial**--adoptive admission under Fed. R. Evid. 801(d)(2)(B). *See Southern Stone*, 665 F.2d at 701; *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) (government silence when denial expected may be weighed against them). An innocent man denies criminality accusations. Creel did not.

Summary judgment must be granted on Ground Two.

## D. GROUND THREE: Summary Judgment Is Warranted on the Procedural Due Process Claim Because No Pre-Deprivation Hearing Occurred Before the June 30, 2025 Stop Work Order

Procedural due process requires notice and opportunity to be heard before depriving a person of a **protected property interest**. *Loudermill*, 470 U.S. at 542. Did Plaintiffs receive constitutionally adequate process? **Zero.** *Loudermill* requires four elements; *Goldberg*, 397 U.S. 254 (1970), requires seven. The City satisfied none. **Zero of four. Zero of seven.** The record contains no documentation of any process before June 30, 2025.

Post-deprivation remedies cannot cure this. *Zinermon v. Burch*, 494 U.S. 113, 132 (1990). The November 7 hearing occurred four months after seizure--precisely what Due Process prohibits. The City's brief states Creel acted "**according to his interpretation**"--fatal: due process requires objective standards, not subjective interpretation.

Summary judgment must be granted on Ground Three.

## E. GROUND FOUR: Summary Judgment Is Warranted on the Monell Claim Because the Constitutional Violations Were Caused by Final Policymaker Decisions

*Pride* established that Creel "was a policymaker for purposes of Section 1983." *See supra* Section I. That determination is **law of the case.** Under *Monell* and *Pembaur v. City of*

*Cincinnati*, 475 U.S. 469, 481 (1986), a single decision by a **final policymaker** creates municipal liability.

Creel testified: "the mayor and Pete Abide... **directed me to issue a stop work order.**" This **party admission** establishes that **final policymakers** directed the violation. Under *Culbertson v. Lykos*, 790 F.3d 608 (5th Cir. 2015), ratification imputes the violation to the municipality. Under *Bolton*, 541 F.3d at 545, a single policymaker decision establishes liability when it is the "**moving force.**"

The formal structure cements liability. Per Resolution No. 327-17, Abide "**supervises both the civil defense attorneys** (Cruthirds, Ros, Whitehead) and... **the prosecuting attorney.**" ECF 052. Defendants characterize the instrument as "**the City's Stop Work Order**"--not Creel's personal decision. ECF 81 at 5. *Pride* forecloses every escape--Creel's acts are by definition municipal policy. Summary judgment must be granted on Ground Four.

### F. GROUND FIVE: Summary Judgment Is Warranted on the Fourth Amendment Claim Because the City Seized Plaintiffs' Property Without a Warrant

The Fourth Amendment protects against unreasonable seizures. *Soldal v. Cook County*, 506 U.S. 56, 61 (1992): "a 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests." The stop work order prohibited construction--a **meaningful interference.**

The delivery was **paramilitary**: Creel testified Tara was "assisted by **two police officers.**" Transcript, p. 51:7-11. A **four-vehicle convoy** with armed officers penetrated **221 feet** onto private property, up three sets of stairs to the **occupied dwelling.** Under *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985), the Fourth Amendment applies whenever government actors employ force.

No warrant. No magistrate. No probable cause determination. Executive officials dispatched armed officers--no exigent circumstances after months of construction. Under *Gerstein*, 420 U.S. at 114, judicial determination is prerequisite to extended restraint. The

order remained **over four months** without magistrate review. The administrative exception fails--Creel's "his interpretation" substituted for neutral criteria. Summary judgment must be granted on Ground Five.

### G. GROUND SIX: Summary Judgment Is Warranted on the Conspiracy Claim Because Private Parties Acted in Concert with State Officials to Deprive Plaintiffs of Constitutional Rights

Under *Dennis*, 449 U.S. at 27-28, private persons who conspire with state officials act **under color of state law.** A private party becomes a state actor when a **willful participant in joint activity.** *Lugar*, 457 U.S. at 941.

Three independent proofs establish conspiracy. First, Whitehead surveilled Plaintiffs' property at 11:59 AM--**four hours** before appearing as City counsel at 3:00 PM. **Surveillance at noon. Counsel at three.** Second, **60.1 percent** identical text--**55 identical blocks**--across filings by nominally separate counsel. ECF 123-124: Abide adopted "**by reference the Motions to Dismiss (#105, #107) and Memorandums (#106, #108)**"--every admission is now **Abide's admission.** Third, defense counsel became **mandatory gatekeeper: "deliver a copy... to Currie Johnson & Myers... We will then forward those to Community Development."** ECF 097.

Abide presents the most striking conflict: City Attorney and operator of Abide Property Management, with payments established by Resolution No. 327-17. The February 2022 fabrication (*see infra* Ground Nine) required coordinated access to sealed court files and prosecutorial authority--**multi-actor coordination.**

Conspiracy elements established: agreement (60.1% identical text, fabricated documents); overt acts (stop work order, surveillance, coordinated filings); injury. **Fingerprints of conspiracy.** Summary judgment must be granted on Ground Six.

### H. GROUND SEVEN: Ros Is a State Actor and the "Private Party" Defense Is Destroyed

Defendants destroyed their "private party" defense through admissions. ECF 62: "all communications were routed through Ros." ECF 22 at 2: Pettry "insisted that all communications must go through Defendant Ros." Under *Lugar*, Defendants themselves admit Ros was a "willful participant in joint action with the State"--conceding state action. Under *Tower*, 467 U.S. at 920-23, private attorneys who conspire with state officials have no qualified immunity.

Defendants cannot characterize Ros as a "conduit" while admitting "all communications must go through Ros." A conduit is passive; a gatekeeper is active. Ros was the **mandatory control point** through whom all enforcement flowed--**appropriation of governmental authority.** Summary judgment must be granted on Ground Seven.

## I. GROUND EIGHT: Judicial Estoppel Binds Defendants to Their Most Damaging Admissions

Defendants' shifting positions create binding judicial estoppel. In Case 233 ECF 53, Abide argues **"Movants if as alleged are employees of the City and cannot conspire with themselves"**--claiming City employee status. But elsewhere, the same defendants argue they are "private attorneys" not subject to Section 1983.

The estoppel trap is complete. If Abide is a City employee (as claimed in Case 233), Section 1983 liability is established. If a private attorney, the intracorporate conspiracy doctrine fails. Either position binds him. *Hall v. GE Plastic*, 327 F.3d 391, 396 (5th Cir. 2003) (estoppel applies when position is **"clearly inconsistent with one previously assumed"**). Summary judgment must be granted on Ground Eight.

## J. GROUND NINE: The February 2022 Fabrication Constitutes Fraud Upon the Court and Strips Judicial Immunity

The February 2022 fabrication documented in Section II.D transcends ordinary constitutional violation. When a judicial officer signs an order in a case that does not exist--and will not exist for more than three years--the act is not adjudication. It is fabrication. This Court

has independent authority to address fraud upon the court.

A "Standing Order to Seal" dated **February 7, 2022** for Case CC-51719 bears **Judge Tisdale's** signature--but Tisdale **retired June 30, 2025,** and the case did not exist until **July 9, 2025.** Double impossibility: retired judge's signature on nonexistent case. The case was assigned to **Judge Ready,** not Tisdale. Both prosecutors--Harenski and Eckert--signed motions bearing the fabricated date. Judge Tisdale is the brother of **Councilman Paul Tisdale (Ward 5).**

**The source has been identified.** Discovery from *City of Biloxi v. Bloodsworth*, Case No. 22-005006, contains a **legitimate** order dated February 7, 2022, bearing Tisdale's signature and the same prosecutors: Harenski and Eckert. Exhibit C. The fabricated order mirrors Bloodsworth's exactly--same date, same signatures, same format--but Petrini's case did not exist until **July 9, 2025.** Bloodsworth stated on social media: **"I believe the original order was issued against me"** and that the order was **"forged,"** later sending full documentation to Plaintiffs' public tips email. Exhibit D. **Independent witness testimony corroborates the source of the forgery.**

The Bloodsworth order was sealed. Harenski and Eckert had access. When the same actors sign an authentic 2022 order and an identical fabricated order for a nonexistent 2025 case, **the parallel signatures prove the parallel fraud.**

Judicial immunity is stripped. Under *Bradley*, 80 U.S. at 351, "where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority." On February 7, 2022, Case CC-51719 did not exist--"clear absence of all jurisdiction." *Stump*, 435 U.S. at 356-57; *Boyd*, 31 F.3d at 284-85. Under *Forrester*, 484 U.S. at 229, immunity protects adjudication--signing an order for a nonexistent case is fabrication, not adjudication.

This is fraud upon the court. *Hazel-Atlas*, 322 U.S. at 246. No statute of limitations. Fed. R. Civ. P. 60(d)(3). Summary judgment must be granted on Ground Nine.

**K. GROUND TEN: Summary Judgment Is Warranted Because Whitehead's Undisclosed Dual Representation Created an Irreconcilable Conflict of Interest That Tainted the November 7, 2025 Proceedings**

*Pride* established that Creel "was a policymaker for purposes of Section 1983." *See supra* Section I. That determination acquires devastating significance here, where Michael Whitehead served two masters on the same day in the same proceeding. Whitehead labored under an irreconcilable concurrent conflict of interest prohibited by Mississippi Rule of Professional Conduct 1.7(a)(2): serving as personal defense counsel for Jerry Creel while simultaneously acting under color of state law as de facto counsel for the City in the very adjudicative proceeding that would determine Creel's liability. This undisclosed conflict vitiated the November 7, 2025 Board hearing with structural bias creating a probability of unfairness, *Caliste v. Cantrell*, 937 F.3d 525, 532 (5th Cir. 2019)--a deprivation independent of, and cumulative to, the LeBatard and Creel conflicts documented in Ground Two.

On **October 3, 2025**, Whitehead emailed Plaintiff: "**The City is working** on confirming dates for the sub-committee to hear the appeal. We will notify you when dates for the members have been confirmed." Email from Michael Whitehead, Oct 3, 2025, 6:52 AM; Tim Holleman email export. This is not the language of personal defense counsel advising his individual client. This is City counsel speaking on behalf of "The City," coordinating City business, and using possessive language ("We will notify you") that identifies Whitehead as part of the City's apparatus. When an attorney writes "The City is working" and "We will notify," he has abandoned any pretense that he represents only an individual defendant.

The conflict deepened when Zachary Cruthirds confirmed that emails to Whitehead were being treated as City business: "Your email to Mike Whitehead announcing your intent to resume work on 1606 Beach Boulevard **has been forwarded to our firm as attorneys for the City.**" Email from Zachary Cruthirds, October 2025; Exhibit K. Emails sent to purportedly personal defense counsel were being forwarded to City counsel--revealing that Whitehead functioned as an extension of the City's legal apparatus while claiming to represent Creel

individually.

On **November 7, 2025**, this dual role became untenable. Whitehead appeared at the Board of Building Appeals hearing--the very tribunal reviewing his individual client Creel's enforcement decisions. November 7, 2025 Transcript, Exhibit AB. But Whitehead was not present as Creel's personal defense counsel; ECF filings show his PMP.org affiliation in that role. At the Board hearing, Whitehead operated as counsel coordinating with City officials on City enforcement matters. A personal defense attorney does not conduct surveillance on City business. A personal defense attorney does not speak for "The City" in coordinating appeals. A personal defense attorney does not have his communications forwarded to City counsel. Whitehead did all three.

The surveillance establishes the conflict beyond dispute. At **11:59 AM** on November 7, 2025--**four hours** before the Board hearing--Whitehead photographed Plaintiff's property regarding the City's stop work order. Surveillance Photographs, Exhibit AA and Exhibits AA-1 through AA-6; Whitehead Email Admission, Exhibit J. Seven photographs document this surveillance session--not a single glance, but **sustained observation** from **multiple angles.** This was not personal business. Whitehead was monitoring compliance with a **City** enforcement order--an action that makes sense only if Whitehead was acting for the City. His own admission confirms this: he observed Plaintiff **"working on property under a Stop work order"**--the City's stop work order, not Creel's personal matter. When personal defense counsel conducts surveillance on government enforcement, he has revealed his true principal.

The conflict creates a constitutional problem distinct from the LeBatard bias: Plaintiffs were denied the right to know who actually represented whom. At the Board hearing, Plaintiffs confronted multiple adversaries--but one of them, Whitehead, concealed his dual loyalties. Was he advising the Board as City counsel? Was he protecting Creel as personal counsel? Was he gathering evidence for his personal client while operating under City auspices? The answers are unknowable because Whitehead never disclosed his conflicting representations. Due

26

process requires transparency about who stands on which side. Whitehead provided none.

Under Mississippi Rule of Professional Conduct 1.7, a lawyer shall not represent a client if the representation involves a concurrent conflict of interest--defined as a "significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client." MRPC 1.7(a)(2). Whitehead's responsibilities to the City (coordinating appeals, speaking for "The City," having his communications forwarded to City counsel) materially limited his ability to represent Creel individually without bias. More critically, under MRPC 1.7(b), even where informed consent might cure a conflict, both clients must give "informed consent, confirmed in writing." Plaintiffs--who were entitled to know the identity and loyalties of their adversaries--received no disclosure and gave no consent.

The ex parte communication to LeBatard implicates Whitehead directly. Someone handed LeBatard a document during the hearing--a document referencing the July 25, 2025 cease and desist order. Transcript, p. 33:11-13. Whitehead was present as counsel. Whitehead had access to that document. Whitehead's admitted function was coordinating City enforcement with City counsel. The identity of who handed LeBatard the secret document remains undisclosed, but the circumstances point to someone acting for the City--and Whitehead was the City's man in the room while simultaneously claiming to be personal defense counsel. If Whitehead was the source of the ex parte communication, his undisclosed conflict transformed from ethical violation into active obstruction of due process.

The Fifth Circuit has held that undisclosed conflicts of interest can violate due process when they affect adjudicatory proceedings. Bracy v. Gramley, 520 U.S. 899 (1997), recognized that judicial proceedings tainted by concealed bias violate fundamental fairness. While Bracy involved judicial corruption, the principle extends to any proceeding where concealed loyalties undermine the appearance of impartial adjudication. When Plaintiffs appeared before the Board, they were entitled to know that Whitehead--who coordinated with City counsel, conducted surveillance for City enforcement, and spoke for "The City"--was

simultaneously defending the very official whose decisions were under review. They received no such disclosure. The concealment rendered the proceeding fundamentally unfair.

The conflict also establishes Whitehead as a state actor under *Lugar*. An attorney who coordinates City appeals, speaks for "The City," has his communications forwarded to City counsel, and conducts surveillance on City enforcement is not acting as private counsel--he is a "willful participant in joint activity with the State." 457 U.S. at 941. This compounds Ground Seven (Ros as State Actor): the entire defense apparatus--Ros, Whitehead, and the three law firms producing 60.1% identical text--functioned as an extension of City authority while claiming private status.

The evidence is documentary and undisputed. Whitehead's own emails establish he spoke for "The City." Cruthirds' email confirms Whitehead's communications were treated as City business. The surveillance photographs prove Whitehead monitored City enforcement. The ECF filings show Whitehead signed as Creel's personal counsel. These positions are irreconcilable. A lawyer cannot speak for the City while representing the City official whose conduct created the City's liability. Whitehead tried. The Constitution forbids it.

**The Unified Pattern: Enforcement, Surveillance, Adjudication.** The chronology of November 7, 2025 admits no innocent interpretation. At **11:59 AM**, Whitehead conducted surveillance of Plaintiff's property regarding the City's stop work order--documenting alleged violations of City enforcement. At **approximately 3:00 PM**, the same Whitehead appeared at the Board of Building Appeals hearing where that very enforcement was under review. The man who conducted surveillance now sought to influence the tribunal. The photographer became the participant. During the hearing, someone handed Board member LeBatard a secret document--the cease and desist order--that LeBatard immediately weaponized against Plaintiff. Whitehead was present, had access to that document, and had spent the morning monitoring enforcement compliance. **Surveillance at noon. Appearance as counsel at three. Ex parte document trafficking during the hearing.** This is not coincidence--coincidences do not

photograph themselves. This is coordination--the hand that holds the camera is the hand that passes the document. This is conspiracy. The proof of the conspiracy is the attorney hired to defend it.

**The Law Firms Are Liable Under Section 1983.** Whitehead's status as a state actor extends liability to his employers and co-counsel. Under respondeat superior principles applicable to § 1983 conspiracy claims, Currie Johnson & Myers P.A. and Page Mannino Peresich & McDermott P.C. (PMP) are directly implicated.

First, **Currie Johnson & Myers** functioned as the conspiracy's nerve center. Zachary Cruthirds confirmed that emails to Whitehead were "forwarded to our firm **as attorneys for the City.**" Exhibit K. Currie Johnson did not merely receive these communications--they acted on them, coordinating enforcement strategy with a conflicted attorney representing both the City's interests and an individual defendant. The firm's contract with the City to provide legal services transformed its attorneys into state actors when they participated in constitutional violations. Under *Dennis*, 449 U.S. at 27-28, private parties who conspire with state officials act under color of state law. Currie Johnson's coordination with Whitehead--who spoke for "The City" while simultaneously representing Creel--constitutes joint action sufficient for § 1983 liability.

Second, **Page Mannino Peresich & McDermott (PMP)** employed Whitehead while he performed these functions. Whitehead's PMP email address (Michael.Whitehead@pmp.org) appears on the surveillance admission email, the "City is working" email, and ECF filings as Creel's personal counsel. PMP cannot disclaim responsibility for its attorney's conduct when that attorney operated through firm resources, used firm email, and held himself out as firm counsel while committing constitutional violations. Under Monell's progeny, an entity that deploys its agents to violate constitutional rights is liable when those violations flow from the entity's policies or the acts of its decision-makers. Whitehead was PMP's agent. His violations are PMP's violations.

Third, **the 60.1 percent identical text** across ECF filings by Currie Johnson, PMP, and Boyce Holleman demonstrates coordinated action rather than independent representation. Documentary evidence quantifies what dual representation produced: when three nominally independent law firms produce filings containing 55 identical textual passages comprising 25.31 kilobytes of verbatim duplicative content--filed on the same day--they do not act as independent counsel. They constitute, under *Dennis*, co-conspirators acting in concert with state officials. 449 U.S. at 27-28. Fifty-five identical blocks. Same words. Same arguments. Same day. Same purpose. Independent counsel do not file identical briefs. Coordinated enterprises do. Under *Tower v. Glover*, 467 U.S. 914, 920-23 (1984), private attorneys who conspire with state officials are not entitled to qualified immunity. The law firms have no immunity shield.

The Court should enter declaratory judgment that: (1) Michael Whitehead acted under color of state law within the meaning of 42 U.S.C. § 1983; (2) Currie Johnson & Myers P.A., by coordinating with Whitehead and receiving his communications "as attorneys for the City," participated in the conspiracy and is liable under § 1983; (3) Page Mannino Peresich & McDermott P.C., by employing Whitehead while he conducted surveillance, coordinated enforcement, and served conflicting masters, is liable under § 1983; and (4) the defense law firms' coordinated filings constitute evidence of conspiracy under Dennis v. Sparks.

**In Addition and In the Alternative.** Plaintiffs seek relief under Ground Ten on each theory independently and cumulatively, in addition to and in the alternative to all other grounds. Ground Ten overlaps with Ground Two (due process), Ground Six (conspiracy), and Ground Seven (state action). Relief on any single theory, any combination, or all theories combined entitles Plaintiffs to judgment.

Summary judgment must be granted on Ground Ten.

**L. The Inescapable Conclusion: Municipal Liability Is Absolute**

The foregoing analysis converges on a single, inescapable conclusion: the City of Biloxi bears direct municipal liability for every constitutional violation alleged herein. The *Pride* determination controls: the Building Official is a final policymaker whose decisions constitute official municipal policy. Creel's admission that the Mayor and City Attorney "directed me to issue a stop work order" forecloses any defense that these were isolated acts of subordinate employees.

Under *Owen v. City of Independence*, 445 U.S. 622, 651-52 (1980), qualified immunity does not shield municipalities. The Supreme Court held that municipal liability for all injurious conduct "should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights." Here, City officials did not err on the side of caution. They dispatched armed police officers to seize property without a warrant. They deprived Plaintiffs of property without any pre-deprivation hearing, denying every procedural protection mandated by *Loudermill* and *Goldberg*: no notice, no explanation of evidence, no opportunity to respond, and no impartial decisionmaker. They conducted an appeal before a tribunal where the accuser served as Secretary. They retaliated against Plaintiffs for filing a federal lawsuit. These were conscious policy choices directed by the Mayor and City Attorney—the moving force behind every deprivation.

No genuine dispute exists. Creel's admission constitutes a party-opponent statement under Federal Rule of Evidence 801(d)(2). The documentary record does not suggest liability—it demands it.

## V. CONCLUSION

The documentary record demonstrates every element of every claim. Defendants produced no affidavits, no contrary documents, no explanation for what their officials swore under oath. Their failure to meaningfully challenge this evidence constitutes **waiver**. Each claim presents a binary factual question with a binary answer.

31

These ten claims stand independently. Victory on one is victory enough. Grant summary judgment on Ground One--**First Amendment retaliation**--and relief follows. Grant it on Ground Two--**structural due process**--and relief follows. Grant it on Ground Seven--**Ros as state actor**--and relief follows. Each claim carries its own weight and demands its own remedy. This Court need not resolve credibility contests. It need not weigh competing inferences. It need only read the documents bearing Defendants' own stamps, signatures, and sworn statements. Those documents establish liability **as a matter of law**. Justice requires nothing more than recognition of what the record already proves.

**WHEREFORE**, Plaintiffs respectfully request that this Court **GRANT** this Motion, finding that each ground provides an independent and sufficient basis for relief, and in the alternative on the combined weight of all grounds, and enter an order that:

(a) **Grants** partial summary judgment on Ground One (First Amendment Retaliation) because the undisputed record demonstrates retaliatory motive;

(b) **Grants** partial summary judgment on Ground Two (Structural Due Process) because the Creel dual role and LeBatard conflict violated fundamental fairness;

(c) **Grants** partial summary judgment on Ground Three (Procedural Due Process) because no **pre-deprivation hearing** occurred;

(d) **Grants** partial summary judgment on Ground Four (Monell Liability) because **final policymakers** directed the constitutional violations;

(e) **Grants** partial summary judgment on Ground Five (Fourth Amendment) because no warrant authorized the seizure;

(f) **Grants** partial summary judgment on Ground Six (Conspiracy) because private parties acted in concert with state officials and 55 identical text blocks prove coordination;

(g) **Grants** partial summary judgment on Ground Seven (State Action) because Ros controlled all government communications and acted under color of state law;

(h) **Applies** judicial estoppel under Ground Eight to bind Defendants to their most damaging admissions;

(i) **Addresses** the fraud upon the court under Ground Nine, exercises the Court's inherent authority to vacate orders flowing from fabricated documents, and enters findings that the February 7, 2022 order was created in the complete absence of jurisdiction;

(j) **Grants** partial summary judgment on Ground Ten (Whitehead Conflict of Interest) because Whitehead's undisclosed dual representation--simultaneously serving as personal defense counsel for Creel while functioning as counsel for the City--tainted the November 7, 2025 proceedings with structural bias;

(k) **Declares** the November 7, 2025 Board proceedings void ab initio due to LeBatard's disqualifying bias (June 30 email defense of Creel), Whitehead's undisclosed conflict of interest, and ex parte communication (document handed to LeBatard during the hearing), and enters findings that these conflicts violated Plaintiffs' due process rights under Tumey, Caperton, and Bracy;

(l) **Awards** Plaintiffs nominal damages of one dollar to establish prevailing party status, their taxable costs of suit, and preserves Plaintiffs' claim for reasonable attorney's fees under 42 U.S.C. § 1988 for any counsel hereafter retained (Plaintiffs do not seek fees for pro se time), with compensatory and punitive damages reserved for trial; and

(m) **Grants** such other and further relief as this Court deems just and proper.

**Respectfully submitted** *this* ___09___ *day of* ___january___, 2026.

**YURI PETRINI**
*Plaintiff, Pro Se*
929 Division Street
Biloxi, MS 39530
(305) 504-1323
contact@peoplevsbiloxi.com
yvpetrin@my.loyno.edu

_____
Yuri Petrini

**CERTIFICATE OF SERVICE**
*(Pursuant to Local Rule 5.1)*

I hereby certify that on _9th january 2024_, I personally filed the foregoing document with the Clerk of Court, and service upon all counsel of record will be accomplished through the CM/ECF system.

_____
Yuri Petrini