

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
MAR 09 2026
ARTHUR JOHNSTON
BY_____ DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF MISSISSIPPI**

**SOUTHERN DIVISION**

YURI PETRINI
    **Plaintiff,**
v.
CITY OF BILOXI, ET AL.,
    **Defendants.**

Civil Action No. 1:25-cv-00178-LG-RPM

## PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER [DOC. 147]

Pursuant to Fed. R. Civ. P. 72(a) and L.U.Civ.R. 72(a)(1)(A),
or, in the Alternative, Pursuant to Fed. R. Civ. P. 72(b)

**NOTICE OF FILING UNDER STAY — PRESERVATION OF MANDATORY DEADLINE**

On January 13, 2026, the Court entered a sua sponte stay across these consolidated cases. The stay identifies no end date, no triggering condition for modification, and no mechanism by which a party may obtain relief. The Fifth Circuit requires stays not to be immoderate in extent and to rest on a balancing of hardships. *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990). The Supreme Court likewise holds that a stay must be framed with reasonable limits and must not impose undue hardship on the parties subject to it. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).

Magistrate Judge Myers entered the Order now challenged [Doc. 147] on March 6, 2026. Under Fed. R. Civ. P. 72(a) and L.U.Civ.R. 72(a)(1)(A), objections are due within 14 days. That deadline expires on March 20, 2026.

Plaintiff files these objections within that mandatory window solely to preserve review rights. This filing does not concede that the stay authorizes objections notwithstanding its breadth, and it does not waive any argument that a court-ordered stay cannot simultaneously freeze proceedings and run a clock whose expiration forfeits review. If the Court determines that the stay bars this filing, Plaintiff respectfully requests that this document be treated as a timely

1

motion to extend the objection deadline on due process grounds, because a stay cannot extinguish appellate rights without notice or hearing.

## PRELIMINARY STATEMENT

Plaintiff Yuri Petrini respectfully objects to the March 6, 2026 Order [Doc. 147] denying Plaintiff's Motion to Disqualify Counsel [Doc. 38]. The Order rests on two rationales. First, it holds the motion premature because the dismissal of certain individual defendants may have altered the conflict landscape. Doc. 147 at 1 n.2. Second, it identifies citation deficiencies in Plaintiff's supporting memorandum and issues a Rule 11 admonishment. Doc. 147 at 2.

Neither rationale reaches the merits of the conflict actually presented: Currie Johnson & Myers, P.A. remains simultaneously a named defendant and defense counsel in the same litigation. The prematurity rationale applies a doctrine designed for speculative future conflicts to a concurrent dual-role conflict shown by the docket itself. The citation rationale addresses defects in Plaintiff's briefing, not the propriety of the firm's continued representation. No court has yet applied the governing disqualification framework to the surviving conflict.

This objection asks only that the governing legal standard be applied to that conflict. It also presents the issue in the form necessary to preserve review, because arguments not raised below are waived, a litigant must press a point rather than merely hint at it, arguments first raised only in objections to a magistrate judge are forfeited, and issues omitted from an opening brief on appeal are abandoned. *Celanese Corp. v. Martin K. Eby Constr. Co.*, 620 F.3d 529, 531 (5th Cir. 2010); *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994); *Stanley v. Morgan*, 120 F.4th 467, 470 n.2 (5th Cir. 2024); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

2

## FRAMEWORK: WHY A "PREMATURE" DENIAL IS CATEGORICALLY DIFFERENT FROM A MERITS DENIAL

In this circuit, disqualification doctrine is binary. The court applies the governing federal standard and either grants the motion or denies it on the merits. A merits denial at least identifies the rule applied, the reasons for denial, and the legal ruling subject to further review. *See In re Am. Airlines, Inc.*, 972 F.2d 605, 608, 611 (5th Cir. 1992).

A ruling that labels the motion "premature" is categorically different. It applies no conflict standard, resolves no substantive question, and identifies no condition under which the motion becomes ripe. That distinction matters here because disqualification denials are not immediately appealable, and the form of the ruling therefore affects whether any meaningful review path remains available. A merits denial may be wrong, but it is at least correctable. A deferral with no ripening condition is not.

The problem in Doc. 147 is not merely that the motion was denied. It is that the motion was deferred without a merits framework, while the underlying dual-role conflict remains in place.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 72(a) and 28 U.S.C. Section 636(b)(1)(A), this Court must modify or set aside any portion of a magistrate judge's order that is clearly erroneous or contrary to law. A ruling is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure. Because disqualification motions involve the interpretation and application of ethical rules governing professional conduct, and because district courts "enjoy no particular advantage over appellate courts in formulating ethical rules to govern motions to disqualify," review of the legal standard applied is effectively de novo. *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992).

In the alternative, the Fifth Circuit has held that disqualification motions are "substantive motions affecting the rights of the parties" and are determined under federal law. *Id.* If the motion

is dispositive in character, the applicable standard is de novo review under Fed. R. Civ. P. 72(b) and 28 U.S.C. Section 636(b)(1)(B).

If the motion is dispositive, the magistrate judge's role was limited to proposed findings and a recommendation. Because Doc. 147 was entered as a final order, the Court should, at minimum, treat it as a recommendation and review the disqualification issue de novo.

## OBJECTIONS

### I. The Order Fails to Apply the Governing *Woods* Framework to the Surviving Conflict.

Doc. 147 acknowledges that Currie Johnson & Myers, P.A. remains a defendant. Yet it does not analyze whether the firm's simultaneous status as named defendant and defense counsel requires disqualification under *Woods v. Covington Cnty. Bank*, 537 F.2d 804, 810, 812-13 (5th Cir. 1976). The Order applies no *Woods* standard to the surviving conflict. It neither finds the conflict sufficient nor insufficient. It defers.

That omission is legal error. Once the court recognized that the firm remained a defendant, the governing question was whether the dual role created a specifically identifiable impropriety and whether the resulting public suspicion outweighed the social interest in the firm's continued participation. *Id.* at 812-13. Doc. 147 answers neither question. The Fifth Circuit has recognized that concurrent adversity raises serious concerns because counsel's duty of loyalty may be compromised when the firm's own interests are adverse to a current client. *In re Gopman*, 531 F.2d 262, 265-66 (5th Cir. 1976).

The error is compounded by the Fifth Circuit's treatment of concurrent representation as "grossly disfavored" and as the "exception and not the rule." *In re Dresser Indus., Inc.*, 972 F.2d 540, 545 (5th Cir. 1992). That treatment reflects an asymmetry of harm: unnecessary disqualification causes inconvenience, but failure to disqualify risks structural contamination of the proceeding itself. By declining to confront the conflict while permitting the representation to continue, the Order permitted the concurrent adversity to persist despite the Fifth Circuit's strong presumption against it.

4

## II. The Prematurity Doctrine Does Not Apply to a Current Concurrent Conflict.

The Order relies on *Lewis v. La. State Univ.*, No. 21-198-SM-RLB, 2021 WL 4497487 (M.D. La. Sept. 30, 2021), for the proposition that the motion is premature. Doc. 147 at 1-2. But *Lewis* addressed a speculative witness-advocate problem: whether an attorney might later become a necessary witness at trial. That question depended on future factual development.

The conflict here does not. Currie Johnson & Myers, P.A. was already both a defendant and defense counsel when the motion was filed. That dual role was present, concurrent, and fully formed at inception. No discovery was required to determine whether the firm occupied both roles. The adversity inheres in the dual role itself. *See Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807-10 (1987).

The Fifth Circuit's concurrent-conflict cases confirm the point. In *Dresser*, the court addressed a present conflict arising from concurrent adversity and treated the issue as one requiring immediate application of federal disqualification standards. 972 F.2d at 543-45. It did not suggest that a current loyalty conflict should be deferred until later case development.

*Lewis* itself shows why Doc. 147 is inapposite. The court there analyzed a Rule 3.7 advocate-witness problem, held the issue premature only because it was still unknown whether counsel would become a necessary witness, noted that no discovery had been exchanged and no trial date was set, and tied any renewed motion practice to later procedural stages. 2021 WL 4497487, at 4-5. The court also allowed counsel to continue in specified pretrial roles because the concern there was trial-facing confusion from a lawyer serving as both advocate and witness. *Id.* at \*5. That logic fits a witness-necessity question that may never mature. It does not fit a dual-role conflict shown by the current docket, where the loyalty problem affects representation itself from the outset.

*Lewis* addressed a conflict that might later arise. *Dresser* addressed one already present. This case is the latter, not the former. The magistrate applied an inapplicable doctrine. That is contrary to law.

5

### III. The Order's Reliance on Voluntary Dismissals Is Internally Contradictory and Was Reached Without Input from Plaintiff.

Doc. 147 reasons that the motion is premature because "several attorneys Plaintiff seeks to disqualify are no longer defendants." Doc. 147 at 1 n.2. That rationale is internally contradictory. If the dismissals materially changed the conflict landscape, the logical consequence would be a merits conclusion that the conflict no longer warranted disqualification. Instead, the Order uses a present procedural development as a reason not to decide the present conflict at all.

The rationale is also procedurally flawed. The inference that the dismissals altered the conflict landscape was drawn without soliciting Plaintiff's position on the significance of those dismissals. Yet "[t]he fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914).

In any event, the dismissals were without prejudice under Fed. R. Civ. P. 41(a)(1)(A)(i). They did not resolve the core problem because Currie Johnson & Myers, P.A. remained a defendant throughout. The firm's dual role persists regardless of which individual attorneys are presently named alongside it.

### IV. Citation Deficiencies in Plaintiff's Briefing Do Not Eliminate the Court's Independent Obligation to Address a Structural Conflict.

Doc. 147 also rests on citation deficiencies in Plaintiff's supporting memorandum and on the Rule 11 admonishment directed to those deficiencies. Doc. 147 at 2. Plaintiff acknowledges that admonishment and does not seek to minimize it. But the adequacy of Plaintiff's citation format is a different question from whether a law firm may continue as both defendant and defense counsel.

Courts possess an independent interest in ensuring that proceedings are conducted within the ethical standards of the profession and appear fair to those who observe them. *Wheat v. United States*, 486 U.S. 153, 160 (1988). Justice must also satisfy the appearance of justice. *In re*

6

*Murchison*, 349 U.S. 133, 136 (1955). That institutional obligation does not disappear because a pro se litigant's brief contains citation defects.

The ethical obligation at issue belongs to the firm, not to Plaintiff. Plaintiff also had standing to raise the issue because parties may seek disqualification to protect the integrity of the proceedings and because courts must supervise the bar appearing before them. *In re Gopman*, 531 F.2d 262, 265-66 (5th Cir. 1976). Nor does Plaintiff's pro se status reduce the court's responsibility to reach the actual ethical issue. Pro se filings remain entitled to liberal construction notwithstanding technical imperfection. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). And federal courts retain inherent authority to regulate attorney conduct appearing before them. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991). The dual role requiring review was visible on the docket itself. The Court was free to admonish the briefing and still decide the conflict. Doc. 147 did the former without doing the latter.

Indeed, *Lewis* itself underscores that courts may reach the ethical issue despite imperfect procedural packaging. There, the court construed an opposition to a pro hac vice motion as a motion to disqualify and addressed the substance of the conflict question. 2021 WL 4497487, at \*1. The precedent cited in Doc. 147 therefore cuts against treating briefing defects or procedural posture as a reason not to confront the ethical issue presented.

## V. The Procedural Posture Operates as a Constructive Denial That Forecloses Meaningful Review.

The combined effect of Doc. 147, the January 13 stay, and the running Rule 72 deadline is to leave the conflict unresolved while preserving no clear route to a merits determination. Disqualification denials are not immediately appealable. *In re Am. Airlines*, 972 F.2d at 608. A merits ruling at least creates an identifiable legal decision that can be challenged. A "premature" ruling that applies no standard and sets no renewal condition does not.

The practical effect of Doc. 147 is indistinguishable from a denial. The Order resolves nothing, sets no condition for renewal, and provides no mechanism for a merits determination,

while the 14-day objection clock runs. A ruling that defers indefinitely without identifying what will make the motion ripe operates as a constructive denial because it forecloses the only available path to review.

That omission is especially revealing because *Lewis*, the very case Doc. 147 invoked, did provide one. The *Lewis* court denied without prejudice, allowed counsel to continue in specified pretrial roles, and identified concrete future stages for renewed disqualification motions before depositions and again before trial. 2021 WL 4497487, at \*5. Doc. 147 supplied no comparable roadmap.

Post-judgment review is likewise impaired by the form of the ruling. If the conflict is never assessed under the governing standard, the record reaches final judgment without any tribunal ever deciding whether the dual-role representation was permissible in the first place. The absence of a merits baseline is part of the prejudice created by deferral.

This is why the problem is not merely one of scheduling. A motion cannot be meaningfully "premature" unless the order identifies what later development will make it ripe. Doc. 147 identifies none. *Christopher v. Harbury*, 536 U.S. 403, 412-13 (2002), requires access to courts that is "adequate, effective, and meaningful." A process that defers a current conflict, leaves the stay in place, and allows the Rule 72 clock to expire without a merits determination does not provide meaningful access to review of that conflict.

The same conclusion follows under *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). The private interest is the timely adjudication of a structural conflict affecting the integrity of the proceedings and Plaintiff's ability to preserve review before the 14-day deadline expires. The risk of erroneous deprivation is substantial because the Order identifies no ripening condition and no path to a merits ruling while the conflict continues. The government's interests in party autonomy and docket management do not justify indefinite maintenance of an unassessed concurrent conflict. Resolving the conflict now serves judicial economy better than allowing it to persist unresolved. The Federal Rules exist to allow litigants to have their cases heard on the merits. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966).

8

**CONCLUSION**

Plaintiff respectfully requests a ruling on the legal question actually presented: whether a law firm may simultaneously remain a named defendant and serve as defense counsel in the same litigation without application of the governing disqualification framework. Doc. 147 does not answer that question. It defers it.

If this Court concludes that the objections should not be sustained under Rule 72(a), Plaintiff respectfully requests, in the alternative, that the Court treat the filing as a timely objection under Rule 72(b), conduct de novo review, and explain with particularity why the *Woods* framework and governing conflict standards do not require a merits determination as to the surviving dual-role conflict. If the conflict does not warrant disqualification, Plaintiff is entitled to know why.

9

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an order that:

(a) **sustains** these objections and **sets aside** the March 6, 2026 Order [Doc. 147] as contrary to law;

(b) **directs** that Plaintiff's Motion to Disqualify Counsel [Doc. 38] be adjudicated on its merits under *Woods v. Covington Cnty. Bank* and the governing federal disqualification standards;

(c) **orders** supplemental briefing, if necessary, on any developments relevant to the disqualification issue;

(d) **in the alternative**, treats these objections as timely under Fed. R. Civ. P. 72(b) and conducts de novo review; and

(e) **grants** such other and further relief as the Court deems just and proper.

**YURI PETRINI**
*Plaintiff, Pro Se*
929 Division Street
Biloxi, Mississippi 39530
Telephone: (305) 504-1323
Email: contact@peoplevsbiloxi.com
Email: ypetrin@my.loyno.edu

/s/ Yuri Petrini

**CERTIFICATE OF SERVICE**
*(Pursuant to Local Rule 5.1)*

I hereby certify that on March 20, 2026, I personally filed the foregoing document with the Clerk of Court, and service upon all counsel of record will be accomplished through the CM/ECF system.

YURI PETRINI
Plaintiff, Pro Se

/s/ Yuri Petrini

10