**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | |
|---|---|
| **YURI PETRINI** | **PLAINTIFF** |
| **VERSUS** | **CAUSE NO. 1:25cv178-LG-RPM** |
| **CITY OF BILOXI, MISSISSIPPI; ET AL.** | **DEFENDANTS** |

**DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO LIFT STAY (Dkt. No. 149)**

COME NOW the City of Biloxi, Mississippi, Peter Abide, Currie Johnson & Myers, P.A., Jerry Creel, Tara Busby, Jeff Harbor, and Jennifer Polk (hereinafter collectively "Defendants") and file their Response in Opposition to Yuri Petrini's ("Petrini") Motion to Lift Stay (Dkt. No. 149) and would respectfully show unto the Court as follows:

**<u>INTRODUCTION</u>**

"[E]veryone f***ing one, no prosecutor, judge, mayor is safe[1]; whether I succed (sic) or not is to be seen, but we all know I will at least give you a great ride for your money." Yuri Petrini, April 9, 2026.[2]

In typical fashion for Petrini, the Motion to Lift Stay and supporting memorandum are riddled with factual inaccuracies and citations to inapplicable cases along with being premised on the idea if Petrini causes enough chaos, he will get his way. In fact, the consolidated motion Petrini wants briefed and heard is not because Petrini believes such motion should be determined. Defendants will quote Petrini on the real reason why these motions were filed, withdrawn, re-filed and now the subject of the Motion to Lift Stay. "Plaintiff was driven to seek partial summary

---

[1] "Safe" is defined as "free from injury or risk." Webster's Desk Dictionary, pg. 799 (Gramercy Books 1983).
[2] *See* Email attached hereto as Exhibit "3" at p. 2.

judgment before meaningful discovery—not because the record was trial ready, but because no other form of relief had issued from this Court." *See* Draft Memorandum Supporting Motion to Lift Stay from Petrini as Exhibit 8, p. 12. Petrini admits the Motion to Lift Stay was filed not because there is no genuine issue of material fact but because he is dissatisfied with the Court's prior rulings. *Id*. Defendants will certainly request the Court for time to conduct discovery if a response becomes necessary but in the interim Defendants assert their pending motions may well obviate any need to lift the stay and address the five motions consolidated into one.

While the Court has those motions under consideration, Petrini has certainly not been silenced. Rather, Petrini has filed a new lawsuit, authored numerous articles, and continued to threaten and harass defense counsel along with anyone who dares disagree with his skewed viewpoint. Apart from the ability to file more motions in the three cases, Petrini has not slowed down one bit. For the reasons set forth below, Petrini's Motion to Lift Stay should be denied.

**1. A BRIEF LOOK AT PETRINI'S ABUSE OF THE LITIGATION PROCESS AND MOTION PRACTICE**

The Court has consolidated, for administrative purposes only, three Petrini lawsuits: (1) 25-CV-178; (2) 25-CV-233; and (3) 25-CV-254. In the short time between the filing of these three lawsuits and the Court's stay order entered January 13, 2026, Petrini filed twenty (20) motions in CV-178, three (3) motions in CV-233 and eleven (11) motions in CV-254 for a total of thirty-four (34) motions between three cases. Petrini's stated goal is to cause Defendants and anyone who has any involvement with him who does not accede to his point of view to incur as much suffering and expense as possible. In fact, Petrini has filed two more cases since the entry of the Court's stay order. *See Petrini v. Apryl Ready, Individually,* Civil Action No. 26-cv-028*,* In the Circuit Court of Harrison County, Mississippi, First Judicial District, removed to the United States District Court for the Southern District of Mississippi, Civil Action No. 1:26-cv-069-LG-RPM*,* and *Yuri Petrini*

*and Jarrod Lewis Fusco v. Kenny Glavan, et al,* Civil Action No. 1:26-cv-094-LG-BWR, in the United States District Court for the Southern District of Mississippi.

While this Court has previously ordered Petrini to confine his interactions with Defendants' counsel to a civil and professional manner and "[to] make no abusive, harassing, or disrespectful comments about defendants or their counsel" [129, pg. 10, ¶4], Petrini ignores the same and continues to threaten, intimidate, and harass by: (a) calling counsel for certain Defendants a "mother****er",[3] (2) posting "articles" calling one defendant the "crackhead of Code Enforcement" and one city employee "a literal elephant" [4]; (3) threatened, and did, sue lawyers for representing their clients simply to harass them[5]; (4) threatening to show up at certain defense counsel's homes to "speak directly" about these cases[6]; (5) threatening to destroy certain defense counsel [See Ex. 3]; and (6) assert "everyone f***ing one, no prosecutor, judge, mayor is safe; whether I succed (sic) or not is to be seen, but we all know I will at least give you a great ride for your money." *Id.*

"No one, rich or poor, is entitled to abuse the judicial process." *Tripati v. Beaman*, 878 F.2d 351, 353 (10th Cir. 1989). "[O]ne acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Vinson v. Benson*, 805 So.2d 571, 576 (Miss. Ct. App. 2002) (quoting *Farguson v. MBank Houston, NA,* 808 F.2d 358, 359 (5th Cir. 1986)). Yet, this is Petrini's stated goal, harass, clog, and abuse until he gets his way. If his pleadings were not evidence of this, he instructs other pro se plaintiffs on his website to make litigation as costly as possible and to be as stubborn as possible.[7]

---

[3] See Exhibit "1" attached hereto and incorporated herein.
[4] See Exhibit "2" attached hereto and incorporated herein.
[5] See Exhibit "3" attached hereto and incorporated herein.
[6] See Exhibit "4" attached hereto and incorporated herein.
[7] See Exhibit "5" attached hereto and incorporated herein.

2.    **Over Thirty Motions Did Not Disappear Over Night.**

The Court entered a stay of further filings on January 13, 2026. [Doc. 138]. Petrini asserts on January 9, 2026, shortly after he withdrew five motions for partial summary judgment and then re-filed the same as one motion, the stay's basis no longer existed. Petrini omits any reference to the number of motions he filed prior to that date; 34 in three administratively consolidated cases. In addition to these 34 motions, Defendants have potentially dispositive motions pending before the Court. These motions may well obviate the need to brief and decide Petrini's "omnibus" single motion and Defendants' motions were the first filed compared to Petrini's "omnibus" motion for partial summary judgment. Therefore, the stay on filings is within the Court's inherent power to control its docket.

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Langiano v. City of Fort Worth, Tex.*, 131 F. 4th 285, 290 (5th Cir. 2025) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254, (1936)). In *Hearn v. Board of Supervisors of Hinds County*, 575 Fed. Appx. 239 (5th Cir. 2014), Hearn filed suit against various defendants related to ownership of certain property. The Court directed Hearn to file an amended complaint to correct the proper parties to the litigation. Hearn did not follow the district court's advice. Instead, "Hearn filed more than 50 separate motions, most of which were not truly motions, but instead rehashed or supplemented arguments that she previously made in prior motions." *Id. at 243-44.* Of note for Petrini's current motion is, "The district court noted that it had little opportunity to resolve the issues in the case 'because the briefing never ends,' and ultimately, it had to issue a 'cease fire' order." *Id.* at 244. "Even during the 'cease fire' order Hearn did not comply with the district court and continued to file motions." *Id.* After the district court dismissed

Hearn's case pursuant to Rule 41, Hearn appealed. While the Fifth Circuit's decision ultimately turned on Hearn's refusal to file an amended complaint, the Fifth Circuit tacitly approved the district court's "cease fire" order. Defendants submit the Court's stay on the further filings of motions by any party is therefore appropriate.

While Petrini acknowledges the Court's inherent power to control its docket, Petrini believes he is entitled to continue filing motions when Defendants have motions to dismiss, including qualified immunity motions, that would negate the very same motions he asserts should be briefed and ruled upon. *See L.U. Civ. R. 16(b)(3)(B)*(filing a motion asserting immunity defense stays the attorney conference and disclosure requirements and all discovery, pending the court's ruling on the motion, including any appeal). Petrini wants everything his way, on his timeline, and if that does not happen, Petrini resorts to asserting he is being discriminated against or being treated unfairly. The very standard he recites sets forth the Court's authority to manage the disposition of Petrini's thirty-four (34) motions, along with Defendants' potentially dispositive motions including the immunity motions.

Petrini asserts the Court's stay is improper because the stay does not balance his interests against Defendants' interests. Defendants pose this question, "Why should the Defendants respond to an additional five, or even one consolidated motion, when Defendants' motions may well eliminate the need for briefing?" Petrini also asserts the stay is indefinite and therefore improper. Petrini fails to acknowledge the purpose of the stay is to allow the Court sufficient time to rule upon the 34 motions filed by Petrini and the Defendants' motions. There is a suggested timeline for the Court to rule upon these motions and therefore the stay is not indefinite. *See* 28 U.S.C. § 476.

5

The case law asserted by Petrini is also distinguishable. Petrini's recitation of cases relating to stays imposed **pending resolution of other litigation**.  In *McComb Children's Clinic, Ltd. v. Becerra*, 2024 WL 4810387 (S. D. Miss. 2024), defendants asked "the Court to stay proceedings in this case pending resolution of the appeal in the *Tennessee* case because Plaintiff is protected by the nationwide injunction." *Id. at *1.*  In *Southern Industrial Contractors, LLC v. Neel-Shaffer, Inc.*, 2019 WL 1748531 (S.D. Miss. 2019) the issue was a request for stay in favor of a separate arbitration proceeding.  The standard recited in the Court's resolution of the request is, "**before granting a stay pending resolution of another case,** the court must carefully consider the time reasonably expected for resolution of the 'other case' in light of the principle that stay orders will be reversed when they are found to be immoderate or of an indefinite duration." *Id. at *2 (emphasis added).*   In *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541 (5th Cir. 1983), certain asbestos defendants requested a stay of personal injury proceedings while the Johns Manville and UNARCO bankruptcy proceedings were litigated even though those defendants were not debtors entitled to the automatic stay provision of United States bankruptcy laws.  In *Ramu Corporation v. 6600 North Mesa, El Paso, Texas*, 903 F.2d 312 (5th Cir. 1990), a civil forfeiture case, the United States contended the forfeiture action should be stayed "pending the outcome of a drug conspiracy case in California" in which "neither the claimants nor the alleged drug trafficker is named." *Id.* at 314.  In *Gatx Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711 (5th Cir. 1985) certain guarantors requested a stay while separate guarantors' bankruptcy proceedings were litigated. Citing to *Wedgworth*, *supra*, the Fifth Circuit held it was not improper to deny the stay based on the other co-defendants' bankruptcy filings.

The Court has not entered a stay contingent upon the outcome of other litigation. The Court's stay is to manage its docket to determine what claims remain, if any, after ruling upon the

thirty-four motions filed by Petrini and on the Defendants' motions, including immunity motions. The stay does not depend on the outcome of "other litigation", and the stay is appropriate given Petrini's consistent use of AI to generate briefs, the number of motions Petrini filed, and Defendants' interest in not further litigating claims Defendants believe have no merit.

Nor can Petrini assert the stay is a "death knell" for his litigation. In *McKnight v. Blanchard*, 667 F.2d 477 (5th Cir. 1982), the district court entered an order staying McKnight's civil rights lawsuit "until he has been released from incarceration." *Id. at 478.* McKnight had been sentenced to a total of fourteen years and argued such a lengthy stay "will make it impossible to produce the present witnesses in his behalf and will effectively deprive him of his day in court." *Id.* The Fifth Circuit agreed that fourteen years was essentially a death knell for the case. However, this Court has not entered such a stay in this case.

*Hines v. D'Artois*, 531 F.2d 726 (5th Cir. 1976) is a civil rights case involving employment practices at the Shreveport, Louisiana sheriff's office. The district court entered a stay "pending the filing by the plaintiffs of Title VII proceedings before the Equal Employment Opportunity Commission. *Id. at 728.* There was no requirement of Title VII exhaustion prior to filing a 1981 claim. Because of the length of time the EEOC indicated an investigation and the conciliatory process could take, the Fifth Circuit found "[i]f plaintiffs were not to be permitted forthwith to tell their story to the court, the tale might be stale indeed by the time it reached judicial ears." *Id.* at 737. However, Petrini fails to point out the Fifth Circuit decision in *Dresser v. The Ohio Hempery, Inc.*, 122 Fed. Appx. 749 (5th Cir. 2004). "Although *Hines* has never been overturned, subsequent case law has made its precedential value questionable. In coming to its conclusion, this Court in *Hines* relied on the Supreme Court's decisions in *Idlewild* and *Gillespie v. United States Steel Corp.,* two rulings that were narrowed substantially in the years following *Hines*." *Id. at **3.*

7

This Court has not entered an order even remotely similar to *McKnight* or *Hines*. "As the treatise notes, the 'most general cases (under the death knell doctrine) involve orders that formally purport to leave matters open, but that operate in combination with surrounding facts to make it impossible to pursue the matter further." *McKnight,* 667 F.2d 477 at 479. Yet this Court's stay order does not have the effect of a death knell order. Petrini is simply dissatisfied; a common occurrence with Petrini. There is nothing about the Court's stay that will make it impossible for Petrini to present his case and deprive him of his day in court. The stay simply allows the Court to determine what, if any claims, will remain following the Court's decisions on the various pending motions.

Petrini asserts the reason(s) for the stay order somehow miraculously vanished on January 9, 2026. [Dkt. No. 150,pg. 4-5.]. It did not. Defendants' motions remained pending before the Court and those motions may well decide if any briefing is necessary on Petrini's "consolidated" motion for partial summary judgment. Nor has the Court allowed one-sided filings by Defendants while precluding Petrini from filing motions. Petrini asserts Defendants continued to file motions subsequent to the stay. Petrini ignores the Court allowed Currie Johnson and Peter Abide to re-file their Motion to Dismiss prior to the entry of the stay. Those Defendants simply followed the Court's order. Nothing about their filing violated the stay and their filing did nothing to resolve Defendants' outstanding motions. Petrini could examine the docket and plainly see his assertion the stay is "one way" is completely inaccurate. Defendants have not filed a single motion since the Court entered its stay that was not already previously ordered by the Court.

Petrini asserts "the stay transgressed the principle of party presentation." [Dkt. No. 150. pg. 5-6]. Once again Petrini's AI does not support this proposition. Petrini relies upon *Greenlaw v. United States*, 554 U.S. 237 (2008). *Greenlaw* involves a criminal defendant sentenced to 442

8

months for drug and firearms charges.  The district court imposed a ten-year sentence on a count carrying a 25-year mandatory minimum.  Greenlaw appealed but the United States did not cross appeal.  On appeal the Eighth Circuit increased Greenlaw's sentence by 15 years asserting the "plain error" doctrine. "The cross appeal rule" was "pivotal in this case" and "illustrative of, the party presentation principle.  Under that unwritten but longstanding rule, an appellate court may not alter a judgment to benefit a nonappealing party.  This Court, from its earliest years, has recognized that it takes a cross appeal to justify a remedy in favor of an appellee." *Id. at 244.*

*Greenlaw* has nothing to do with stays entered to control the court's docket.  While Petrini asserts Defendants did not ask for a stay, Petrini ignores *U.L. Civ. R. 16(b)(3)(B)*.  Petrini also ignores the Court's **inherent** authority to control its own docket.  He further ignores Defendants' motions may obviate the parties need to brief his so called "omnibus" motion for partial summary judgment.

Petrini next asserts the stay creates a paradox whereby his consolidated motion for partial summary judgment will never be heard.  Petrini creates a strawman argument by ignoring his consolidated motion for partial summary judgment may be obviated by the Court's ruling(s) upon Defendants' motions.

Petrini asserts "[t]he stay has operated not as a mutual pause but as a one-sided advantage." Petrini asserts the stay has allowed Defendants to partake discovery, while he has not.  Yet, Petrini has continued to use his website to solicit "tips" to gather additional documents, file new complaints, FBI reports, and bar complaints.  He certainly has not been silenced. Petrini also alleges Defendants have filed a new motion that was fully briefed and while the Court ruled on his disqualification motion, his motions languish.  This is a misrepresentation.  The Court allowed Peter Abide and Currie Johnson to re-file their motion to dismiss.  The briefing was not completed

9

until after the stay had been issued.  Defendants have not filed any motions since the Court's directive.  *See* docket.

Petrini laments the "equities" of his choices to: (a) construct a deck that deviates from approved plans; (b) install an elevated pool without permits; and (c) continue to work on a property in defiance of a stop work order. Petrini's view is the land development ordinance or adopted building codes have no application to him.  Petrini admits his violations but contends the Stop Work Order, delivered into his own hands, was addressed to "To Whom it may Concern." As to 929 Division Street, Petrini never mentions he filed suit and did not own the property at the time of filing.  Nor does he mention his threats of bodily harm, deliveries of hate mail on Christmas Eve, his continued "publishing" of defamatory statements against municipal employees, intimidation of witnesses, repeated vile emails or his complete disregard for the Court's order regarding his conduct.  It's worth noting as well that Petrini claims that the property at 1606 Beach Boulevard remains without a Certificate of Occupancy despite "three engineers' reports".  [*See* Dkt. No. 150 at p. 9].  Petrini's second amended Complaint also states it was validated by three professional engineers.  [*See* Dkt. No. 96 at p. 4, 8].  However, when pressed, Petrini has to acknowledge none of these engineers will certify the 1606 structure meets the International Residential Code because they did not "design, build, or construct the structure."   Yet, Petrini wants the City to take potential liability for the structure when his own engineers will not.

Petrini states three "structural facts" in support of his need to file a motion for civil contempt against Tara Busby, file Rule 11 sanctions and disqualify defense counsel, supplement his pleadings, and enforce the Court's own "protective architecture".  The Court should abstain from the ongoing criminal proceedings in Biloxi's Municipal Court.  "***Younger*** abstention is required when: (1) there is an ongoing state proceeding that is judicial in nature; (2) the state has

10

an important interest in regulating the subject matter of the claim; and (3) there is an adequate opportunity in the state proceeding to raise the constitutional challenges." *Rickhoff v. Willing*, 457 Fed. Appx. 355, 358 (5th Cir. 2012) (citing *Wightman v. Texas Supreme Court*, 84 F.3d 188, 189 (5th Cir.1996)).  That case addresses alleged violations of **state law** that are currently pending, the state has a strong interest in enforcing its criminal laws, and Petrini has an adequate opportunity to raise his constitutional challenges in the municipal court.

Further, the Protective Order that was directed against him, not Busby. Petrini argues that because the Protective Order did not forbid Petrini from posting on his website, that it somehow protected and condoned his conduct.  The Protective Order states, "While the Court does not approve of the website or address whether this specific conduct by Petrini is actionable, this Order does not grant any relief regarding Petrini's ability to post articles or videos on his website." [See Dkt. No. 129 at p. 9].  Petrini follows his normal pattern of equating silence with explicit approval. The Court made no ruling on his website because no relief was requested.  It did not create a right under its order by which Petrini can now claim a motion is necessary to enforce that right.

Additionally, Petrini's second and third facts are simply another case of his apophenia running rampant that has no logical connection to his accusations.  These are not "facts", but wild accusations drawn up in his conspiratorial mind that do not justify sanctions against defense counsel or lifting the stay.  Further, Michael Whitehead did not author the CIU Bulletin.  By Petrini's own pleading and allegations, it was the Biloxi Police Department that authored it.  [*See Petrini et al v. Glavan et al*, 1:26-cv-94, Dkt. No. 1 at p. 10, ¶39].

Petrini next asserts there has been some "fraud upon the Court" relating to a "Standing Order to Seal" in a municipal court case mutually dismissed with Petrini agreeing to maintain the stop work order in place.  *See* Order of Dismissal without Prejudice attached hereto as Exhibit 6.

Petrini relies upon *Hazel-Atlas Glass Co v. Hartford-Empire Co.*, 322 U.S. 238 (1944). *Hazel-Atlas* is a pre-Federal Rules of Civil Procedure case wherein enforcement of a patent was at issue. Years after trial, it was learned an article that influenced the Court's decision was actually authored by an attorney for Hartford. Hazel-Atlas sought relief from the judgment on the basis of fraud upon the Court. In the absence of *Fed. R. Civ. P. 60(b)*, Hazel-Atlas filed an action for relief from the judgment. The Supreme Court found an equitable manner for Hazel Atlas to bring a new action to challenge the judgment.[8]

Here, there is no judgment issued by this Court, or any other court, based upon fraud. Petrini simply invites the Court to sally forth looking for wrongs to right. If Petrini was so concerned with a standing order issued by the municipal court, then he could have appealed the decision to the County Court of Harrison County, Mississippi, Second Judicial District. *See generally* Miss. Code Ann. §99-35-1.

Petrini asserts various false allegations against Defendants and that if his assertions are false then the assertions warrant "the severest of sanctions available against Plaintiff." [Dkt. No. 150 at, pg. 13]. Defendants agree in part. Petrini should be sanctioned for his litigation conduct and his assertions. The sanction should be in the form of *Fed. R. Civ. P.* 41(b) dismissal. In *Petito v. Brewster*, 562 F.3d 761 (5th Cir. 2009) Petito used vulgar and abusive language to refer to judicial officers, and he sent threatening emails to opposing counsel. *Id. at 763.* The Fifth Circuit found this pro se plaintiff's conduct so "inexcusable" as to warrant a Rule 41(b) dismissal with prejudice.

The record before this Court, including the attachments to this Response, demonstrate Petrini has:

(a) Promised to appeal any ruling against him;

---

[8] *Hazel-Atlas's* continued precedential value is doubtful in light of the advent of *Fed. R. Civ. P.* 60. *See Standard Oil Co. v. United States,* 429 U.S. 17 (1976).

(b) Has sent vulgar text messages to City employees;

(c) Emailed the Biloxi City Council invoking the "Castle Doctrine" and foreseeable risk of harm;

(d) Emailed counsel for Defendants calling one a mother*****, threatening to ruin the careers of three lawyers, and show up at their homes to "speak directly" about these cases;

(e) Published "articles" calling one city employee Defendant a crackhead and another City employee an elephant;

(f) Emailed a Bar Complaint Notification to defense counsel,[9] and

(g) Stated "everyone f***ing one, no prosecutor, judge, mayor is safe; whether I succed (sic) or not is to be seen, but we all know I will at least give you a great ride for your money."

It is true, no prosecutor, judge or mayor is safe from Petrini's vendettas. He will harass and attack anyone who does not agree with his position. Petrini has proven how vulgar and abusive he is, and his actions warrant a Rule 41 dismissal.

## CONCLUSION

Thirteen pages of inaccurate arguments, 34 motions filed by Petrini across three cases, more cases filed by Petrini since the stay order has been in place and Petrini asserts the stay should be lifted so he can file more motions. The Court correctly entered a stay on filing more motions while it determines the outcome of the pending motions. Otherwise, the motion practice in these cases would be endless. This Court has the right to control its own docket and Petrini should not be allowed to continue to threaten Defendants, Defendants' counsel, and others to bully his way

---

[9] See Bar Complaint Notification attached hereto as Exhibit 7.

into a ruling. Petrini's motion to lift stay should not only be denied but this action, and the others should be dismissed for Petrini's inexcusable conduct.

This the 11th day of May 2026.

Respectfully submitted,

*City of Biloxi, Mississippi*

BY:    */s/ Zachary Cruthirds*
       J. Henry Ros (MSB 5668)
       Zachary Cruthirds (MSB 106279)
       *Currie Johnson & Myers, P.A.*
       2355 Pass Road
       Biloxi, Mississippi 39531
       T: (228) 385-1010 | F: (228) 385-1011
       Email: hros@curriejohnson.com
                  zcruthirds@curriejohnson.com

*Jerry Creel, Jennifer Polk, Jeff Harbor and Tara Busby*

BY:    */s/ Michael E. Whitehead*
       Michael E. Whitehead (MSB 8891)
       *Page Mannino Peresich & McDermott, PLLC*
       759 Howard Avenue (39530)
       Post Office Box 289
       Biloxi, Mississippi 39533
       T: (228) 374-2100 | F: (228) 432-5539
       Email:  michael.whitehead@pmp.org

*Peter Abide and Currie Johnson & Myers, P.A.*

BY:    */s/ Tim C. Holleman*
       Tim C. Holleman (MSB 2526)
       Patrick T. Guild (MSB 103739)
       *Boyce Holleman & Associates*
       1720 23rd Avenue/Boyce Holleman Blvd.
       Gulfport, Mississippi 39501
       T: (228) 3863-3142 | F: (228) 863-9829
       Email:  tim@boyceholleman.com
                  patrick@boyceholleman.com

14

## **CERTIFICATE OF SERVICE**

I, Zachary Cruthirds, do hereby certify that I have filed the above and foregoing pleading utilizing the ECF system a true and correct copy of the foregoing document and have mailed by United States Mail, postage prepaid, a true and correct copy of the above and foregoing pleading to the Pro Se Plaintiff at his mailing address as follows:

Yuri Petrini
929 Division Street
Biloxi, MS 39530

THIS the 11th day of May, 2026.

*/s/ Zachary Cruthirds*

J. Henry Ros (MSB 5668)
Zachary Cruthirds (MSB 106279)
*Currie Johnson & Myers, P.A.*
2355 Pass Road
Biloxi, Mississippi 39531
T: (228) 385-1010 | F: (228) 385-1011
Email: hros@curriejohnson.com
        zcruthirds@curriejohnson.com