## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF MISSISSIPPI

## SOUTHERN DIVISION

YURI PETRINI,
    **Plaintiff,**
**v.**                                            Civil Action No. 1:25-cv-00178-LG-RPM
CITY OF BILOXI, MISSISSIPPI, ET AL.,
    **Defendants.**

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO LIFT STAY</u>

*I. INTRODUCTION*

On January 6, 2026, Magistrate Judge Myers stayed briefing on Plaintiff's five partial summary judgment motions. Three days later, Plaintiff consolidated those five motions into a single filing -- eliminating the very redundancy the stay addressed. Yet rather than dissolve, the stay expanded. On January 13, the Court entered a broader Order Staying Filings (ECF 138), and on January 22, a Supplemental Order (ECF 142) froze all new filings indefinitely.

More than one hundred days later, the stay persists without endpoint, without findings, and without any mechanism for its own dissolution. The Consolidated Motion for Partial Summary Judgment sits in what the Fifth Circuit has termed "suspended animation." *Hines v. D'Artois*, 531 F.2d 726, 730 (5th Cir. 1976). The circumstances that warranted the stay have materially changed: the consolidation is complete, the Case Management Conference that occasioned the stay has concluded, and Defendants have litigated freely on their own motions throughout the freeze. Meanwhile, the Consolidated Motion -- which presents ten grounds for summary judgment, including documented evidence of what appears to be a forged municipal court order -- has received no briefing, no schedule, and no judicial attention.

EXHIBIT 8

1

## II. STATEMENT OF FACTS

On December 22, 2025, Defendants filed motions to dismiss the Second Amended Complaint. ECF 105-109. The motions challenged the sufficiency of Plaintiff's claims across multiple grounds. Defendants served Plaintiff by mail.

One day later, on December 23, 2025, Plaintiff filed five separate motions for partial summary judgment. ECF 112, 114, 116, 118, and 121 (with supporting memoranda at ECF 113, 115, 117, 119, and 122). These motions addressed discrete constitutional violations: Fourth Amendment seizure of property without warrant or exigent circumstances, procedural and structural due process deprivations, municipal liability under *Monell v. Department of Social Services*, conspiracy under 42 U.S.C. § 1985, and fraud upon the court. The fraud claim centered on a municipal court order bearing a date more than forty months before the underlying enforcement case existed -- a document whose facial impossibility required no discovery to establish.

On December 29, 2025, Defendants moved to strike the five separate partial summary judgment motions. ECF 127-128. On December 30, 2025, Magistrate Judge Myers entered an Order (ECF 129) granting in part and denying in part a motion for protective order. That Order included, at footnote 6, an observation that Plaintiff's practice of filing the five motions separately "appears to violate -- or comes perilously close to violating -- Rule 11(b)(1)." ECF 129 at 9 n.6. The Court made no finding of a Rule 11 violation.

On January 2, 2026, Defendants filed an omnibus motion requesting three forms of relief: a stay of all responses to the partial summary judgment motions pending resolution of the motions to dismiss, enforcement of Local Uniform Civil Rule 7(b)(5) requiring consolidation of the five motions into a single filing, and a prefiling injunction restricting Plaintiff's future access to the Court. ECF 130-131.

On January 6, 2026, Magistrate Judge Myers entered a Text Order granting ECF 130 in part. The Order stayed briefing on the five partial summary judgment motions (ECF 112, 114,

116, 118, 121) "pending further order of the Court."

On January 7, 2026, the Court entered a Rule 16(a) Initial Order setting an in-person Case Management Conference for January 22, 2026. ECF 132. The Order presupposed active litigation and set the case on a standard pretrial track.

Two days later, on January 9, 2026, Plaintiff filed a Notice voluntarily withdrawing the five separate partial summary judgment motions. ECF 133. The Notice expressly acknowledged the Court's footnote 6 concerns and noted that the Court had made no finding of a Rule 11 violation. Simultaneously, Plaintiff filed a single Consolidated Motion for Partial Summary Judgment with a supporting memorandum of law. ECF 134-135. The consolidation directly addressed the procedural objection raised in Defendants' omnibus motion and the Court's footnote 6 concern. The five motions became one. The stated basis for the requested stay -- the burden of responding to five separate filings -- dissolved.

On January 13, 2026, four days after Plaintiff mooted Defendants' consolidation objection, Judge Guirola entered an Order Staying Filings sua sponte. ECF 138. Where Magistrate Judge Myers's January 6 Text Order had stayed only PSJ briefing, ECF 138 expanded the scope of the freeze beyond PSJ briefing. No party had requested this broader relief. No findings of fact appear on the record. No legal standard was articulated. The Order did not acknowledge that Plaintiff had already consolidated the motions or that the concern expressed in footnote 6 had been addressed.

Seven days into the stay, on January 20, 2026, Defendants Abide and Currie Johnson filed a new Motion to Dismiss with supporting memorandum. ECF 139 (motion), ECF 140 (memorandum). The Court permitted this filing. The stay, by its operation, barred Plaintiff from filing while permitting Defendants to augment their own motions practice.

On January 22, 2026, the Court convened the Case Management Conference for which ECF 132 had been issued. That same day, Plaintiff Sumire Maeda filed a Notice of Voluntary Dismissal. ECF 141. The Court then entered a Supplemental Order Extending Stay. ECF 142. The Order prohibited all new filings except court-ordered responses and voluntary dismissals. It

threatened sanctions for noncompliance and warned of the Court's authority to dismiss under Federal Rule of Civil Procedure 41(b). The Order cited *Clinton v. Jones*, 520 U.S. 681 (1997), *Landis*, *Langiano*, *Woodson v. Surgitek*, and *Link v. Wabash R.R. Co.* as authority, but contained no particularized findings of hardship, no balancing of interests, and no temporal limitation.

Between February 6 and February 12, 2026, full briefing proceeded on Defendants' motion to dismiss. Plaintiff filed a response in opposition with supporting memorandum (ECF 144-145). Defendants filed a rebuttal (ECF 146). The Court accepted and docketed each filing. Litigation on the motion to dismiss continued without interruption throughout the period the stay purported to freeze proceedings.

On March 6, 2026, the Court ruled on a pending motion to disqualify counsel. ECF 147. The ruling required substantive judicial engagement with the record, review of the parties' submissions, and entry of a reasoned order.

As of the date of this filing, more than one hundred days have elapsed since the January 6 Text Order first stayed briefing on the partial summary judgment motions, and more than eighty-five days since the January 22 Supplemental Order froze all filings. The Consolidated Motion for Partial Summary Judgment, ECF 134, has been pending for approximately one hundred days. No Defendant has filed a response. No briefing schedule has been established. No status conference has been convened. No deadline for resolution has been set. The Case Management Conference that occasioned the stay has concluded. The motion exists in a procedural vacuum -- formally filed, docketed, and served, yet subject to no process that would bring it to adjudication. During this same period, every motion filed by Defendants has proceeded through full briefing and received the judicial attention the Rules entitle it to.

### III. LEGAL STANDARD

A district court possesses "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Clinton v. Jones*, 520 U.S. 681, 706

(1997). But that "broad discretion" is bounded by the requirement that the court actually balance the competing interests. As this Court has recognized, "this control is not 'unbounded.'" *McComb Children's Clinic, Ltd. v. Becerra*, No. 5:24CV48-LG-ASH, 2024 WL 4810387, at \1 (S.D. Miss. Sept. 18, 2024) (Guirola, J.) (quoting In re Beebe, 56 F.3d 1384, at \2 (5th Cir. 1995)). "Proper use of this authority calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (quoting *Landis*, 299 U.S. at 254-55). The party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255; *accord McComb*, 2024 WL 4810387, at \*1.

Even when that burden is met, the stay must contain temporal boundaries. "Stay orders will be reversed when they are found to be immoderate or of an indefinite duration." *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982). As the Supreme Court held in *Landis*, "the stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." 299 U.S. at 257 (quoted in *Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir. 1976)). "A stay can be justified only if, based on a balancing of the parties' interests, there is a clear inequity to the suppliant who is required to defend while another action remains unresolved and if the order granting a stay can be framed to contain reasonable limits on its duration." *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985) (as cited in *S. Indus. Contractors, LLC v. Neel-Schaffer, Inc.*, No. 1:17cv255-LG-JCG, 2019 WL 1748531, at \*2 (S.D. Miss. Apr. 18, 2019) (Guirola, J.)). Where no such limits exist, the Fifth Circuit has vacated indefinite stays and ordered defined timelines. *See Occidental Chem. Corp. v. La. Pub. Serv. Comm'n*, 810 F.3d 299, 305-08 (5th Cir. 2016) (vacating indefinite stay and remanding with instructions to impose 180-day deadline).

Before entering a stay, the district court "must make express findings of fact and conclusions of law." *In re Ramu Corp.*, 903 F.2d 312, 319 (5th Cir. 1990). A one-sentence stay

order lacking such findings warrants mandamus relief. *Id.* at 318-19 (granting mandamus in part where district court entered a one-sentence stay with "no written findings" and no hearing). The Fifth Circuit has made clear that a district court is not "limited to a simple choice of either granting an all-inclusive stay or denying" the requested relief altogether; it must weigh the equities and "consider means of ameliorating the stay's severe effects," including alternative measures short of a blanket freeze. *Id.* at 320.

## IV. ARGUMENT

### A. The Stay's Stated Basis No Longer Exists -- And Was Never a Finding of Impropriety

Plaintiff filed five partial summary judgment motions addressing five distinct constitutional claims: Fourth Amendment seizure, procedural due process, structural due process, municipal liability under *Monell*, and conspiracy under 42 U.S.C. § 1985. Federal Rule of Civil Procedure 56(a) permits a party to move for summary judgment "identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought." Filing separate motions on separate claims is what the Rule contemplates. No court has found these filings frivolous, and no Rule 11 sanctions have been imposed. The Court's footnote 6 in ECF 129 observed that Plaintiff's practice of filing five separate PSJ motions "appears to violate -- or comes perilously close to violating -- Rule 11(b)(1)," but expressly made no finding of a violation. ECF 129 at 9 n.6.

Defendants' omnibus motion (ECF 130) complained about the administrative burden of responding to five separate motions and requested, in the alternative, consolidation into a single filing. On January 9, 2026 -- three days after Magistrate Judge Myers stayed PSJ briefing and four days before the broader stay issued -- Plaintiff voluntarily consolidated all five motions into a single filing. ECF 134. The consolidation addressed Defendants' stated concern and the Court's footnote 6 observation. The five motions became one. The administrative burden Defendants identified ceased to exist.

Yet the stay expanded rather than dissolved. The Text Order of January 6 stayed PSJ briefing only. ECF 138 (January 13) froze all filings. ECF 142 (January 22) extended the freeze indefinitely. By the time the all-filings prohibition took effect, the consolidation had been on the docket for thirteen days. The predicate for the stay had been eliminated by Plaintiff's own voluntary action, yet the Court's response was to broaden the freeze rather than narrow or lift it.

The text of ECF 142 confirms the mismatch. The stay order states that it continues "[f]or the reasons stated previously on the record." Those reasons were the existence of multiple pending motions. That condition vanished on January 9. A remedy that persists after the condition it addresses has been cured is not narrowly tailored; it is untethered from any live controversy. *See Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189-90 (5th Cir. 2008) (holding that remedies must be narrowly tailored to the problem actually before the court). Whatever tension may have existed between Rule 56(a)'s permissive posture and Local Uniform Civil Rule 7(b)(5)'s consolidation preference was resolved on January 9, 2026, when Plaintiff voluntarily consolidated. The stay should be lifted because the condition it was designed to address has not existed since that date.

## B. The Stay Lacks the Findings, Limits, and Party-Presentation Discipline That Precedent Requires

The Fifth Circuit has articulated a clear framework. A district court's inherent power to stay proceedings "is not unbounded"; a stay that is "immoderate or of an indefinite duration" exceeds its permissible scope. *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983). In *Wedgeworth* itself, the Fifth Circuit vacated stays "hinged on completion of [other] proceedings" and therefore "manifestly indefinite," because the "careful balancing of interests mandated by *Landis*" required vacatur. *Id.* at 545-46. The framework requires three things: particularized findings, a balancing of competing interests, and temporal limitations sufficient to prevent indefinite delay.

ECF 142 satisfies none of these requirements. The order contains no findings. It identifies no competing interests. It imposes no deadline. It states only that the stay continues "[f]or the reasons stated previously on the record" -- a formulation that neither specifies those reasons nor explains why the balance of hardships favors continued suspension of this litigation. Plaintiff cannot identify, from anything on this record, what those reasons are, or what controversy the stay is meant to resolve. The Court's own docket reflects a different pattern: matters have sat for months and then been disposed of by brief text-only orders. Nothing in that practice suggests that ruling on the present motion would create any scheduling difficulty this Court has not routinely absorbed. And if the "reasons stated previously on the record" are, in truth, the documented felony allegations Plaintiff has placed before the Court, the stay is all the more indefensible: a stay cannot be deployed to insulate allegations of forgery from examination without inverting its purpose. **The Court's Docket as Umbrella Against Sunlight.** The same pattern plays out in parallel. Defendants recently removed Plaintiff's state-court action against Judge Apryl Lee Ready from Harrison County Circuit Court to this Court, *Petrini v. Ready*, No. 1:26-cv-00069-LG-RPM. The operative complaint pleads only Mississippi-law causes of action and seeks only state-law remedies -- vacatur of municipal court orders and expungement of state criminal records -- that this Court cannot provide. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Sealed Appellant v. Sealed Appellee*, 130 F.3d 695 (5th Cir. 1997). Plaintiff's Motion to Remand has been pending without ruling notwithstanding 28 U.S.C. § 1447(c)'s mandate to remand promptly where subject-matter jurisdiction is lacking. Defendants thus use this Court's docket to shield themselves from two merits examinations at once: the documented forgery allegations in Ground Nine of the consolidated PSJ here, and the ultra vires cease-and-desist and structural-bias claims -- including the same forged order -- that the Harrison County Circuit Court would reach in *Petrini v. Ready*. The effect is to enlist this Court's docket as an umbrella against the sunlight the Supreme Court has long called "the best of disinfectants." *See Buckley v. Valeo*, 424 U.S. 1, 67 (1976) (quoting Louis D. Brandeis, *Other People's Money* 92 (1914)). Every day the stay continues is a day that documented allegations of felony forgery,

8

perjured affidavits, and structural bias remain shaded from the examination the adversary process and public-record adjudication exist to provide.

**Defendants' Extrajudicial Coercion Parallels the Stay.** The pattern extends beyond the courthouse. Defendants have conditioned the issuance of ministerial municipal services -- a certificate of occupancy and an electrical-power upgrade, neither supported by any documented code deficiency in the record -- on Plaintiff's dismissal of pending lawsuits, with particular emphasis on *Petrini v. Ready*. Conditioning ministerial governmental acts on the surrender of a litigant's right of access to the courts is itself a constitutional injury. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011) (Petition Clause protects pursuit of litigation); *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (right of access). Defendants will, on this record, stop at nothing to avoid adjudication. Plaintiff intends, in equal measure, to obtain it -- in whatever venue, and through whatever forums, the path requires. A judicial stay that coincides with, and effectively rewards, extrajudicial coercion aimed at the same dismissal goal cannot be sustained.

The Fifth Circuit has vacated stays entered with precisely this deficiency. In *McKnight v. Blanchard*, 667 F.2d 477 (5th Cir. 1982), the court reversed an indefinite Section 1983 stay because the district court "gave no reason for such a protracted stay, nor did it weigh competing interests and maintain an even balance." *Id.* at 479. In *In re Ramu Corp.*, 903 F.2d 312 (5th Cir. 1990), the court granted mandamus where the district court "made no findings and held no hearing," directing "express findings" for any future stay. *Id.* at 318-19. And in *Occidental Chem. Corp. v. La. Pub. Serv. Comm'n*, 810 F.3d 299 (5th Cir. 2016), the court vacated an indefinite stay and ordered a 180-day timeline. *Id.* at 305-08.

ECF 142 falls squarely within that line of authority.

Independent of those defects, the stay transgressed the principle of party presentation. "In our adversary system, . . . we follow the principle of party presentation," relying on "the parties to frame the issues for decision and assign[ing] to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). Courts "do not, or should not, sally forth each day looking for wrongs to right." *Id.* at 244. The Supreme Court reaffirmed

the rule in *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020), vacating a decision as a "drastic departure from the principle of party presentation" where the court reached out to decide the case on grounds no party raised.

That principle was transgressed here. Defendants' omnibus motion (ECF 130) sought a stay of PSJ responses, consolidation under L.U. Civ. R. 7(b)(5), and a prefiling injunction -- not a blanket prohibition on all new filings, let alone an indefinite one. ECF 138 and ECF 142 nevertheless extended the freeze far beyond that scope, sua sponte, to reach every form of filing by Plaintiff. The Fifth Circuit has cautioned that this type of stay "will almost never be appropriate when . . . it is not requested by at least one party." *Hines v. D'Artois*, 531 F.2d 726, 736 (5th Cir. 1976). "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (Easterbrook, J.). If that principle forecloses a court from searching a pro se litigant's papers for unrequested relief, it equally forecloses the Court from weaving, sua sponte, a net of unrequested relief around Defendants -- who the record shows are represented by four law firms and more than ten attorneys, each equipped to request whatever relief their clients believe warranted. That is the drastic departure *Sineneng-Smith* condemns.

The consequence is structural. By granting Defendants a benefit they did not request -- insulation from Plaintiff's motion practice -- the Court has advanced relief favorable to one side that the adversary process never produced. That strains the neutrality the Due Process Clause demands of adjudicative proceedings. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).

This Court has articulated the governing standard in unambiguous terms. A stay "can be justified only if, based on a balancing of the parties' interests, there is a clear inequity to the suppliant . . . *and if the order granting a stay can be framed to contain reasonable limits on its duration.*" *S. Indus. Contractors, LLC v. Neel-Schaffer, Inc.*, No. 1:17cv255-LG-JCG, 2019 WL 1748531, at \2 (S.D. Miss. Apr. 18, 2019) (Guirola, J.) (quoting GATX Aircraft Corp. v. M/V Courtney Leigh, 768 F.2d 711, 716 (5th Cir. 1985)) (emphasis added). Courts must "carefully consider the time reasonably expected for resolution of the 'other case,' in light of the principle that stay orders will be reversed when they are found to be immoderate or of an indefinite*

10

*duration." Id. (quoting In re Beebe, 56 F.3d 1384, at \3 (5th Cir. 1995)). In McComb Children's Clinic, Ltd. v. Becerra*, No. 5:24CV48-LG-ASH, 2024 WL 4810387, at \*1 (S.D. Miss. Sept. 18, 2024) (Guirola, J.), this Court denied a stay motion and instead entered a briefing schedule, reaffirming that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* (quoting *Landis*, 299 U.S. at 255). These rulings rest on the "virtually unflagging obligation" to exercise jurisdiction. *Aptim Corp. v. McCall*, 888 F.3d 129, 135 (5th Cir. 2018). ECF 142 satisfies neither requirement: it contains no finding of clear inequity as to any movant (having issued sua sponte) and is framed without any limits on its duration. Applying this Court's own standard to this Court's own case, the stay cannot stand.

ECF 142 cites *Clinton v. Jones*, 520 U.S. 681 (1997), for the proposition that district courts possess broad discretion in managing their dockets. But the Supreme Court in *Clinton* ultimately rejected the stay for inadequate balancing below. *Id.* at 706-08. A stay sought by a sitting President after adversarial proceedings did not survive without balancing; the stay here, entered without adversarial briefing on its scope and without particularized findings, cannot either.

Even assuming that an oral colloquy accompanied the entry of ECF 142, no transcript contains the particularized findings that Fifth Circuit precedent requires. *Ramu*, 903 F.2d at 318-19.

### C. The Consolidated Summary Judgment Motion Cannot Be Resolved Under the Stay's Own Terms

The stay creates a paradox. ECF 142 states the stay continues until the Court rules on pending motions. The consolidated PSJ (ECF 134) is such a motion; it cannot be ruled upon until Defendants respond; the stay prevents that response. The stay therefore cannot dissolve under its own terms. The lifting condition requires judicial action; judicial action requires briefing; briefing requires the stay lifted. The sequence closes on itself.

The Fifth Circuit has rejected this kind of self-defeating mechanism, requiring that a stay not be "all-inclusive" and that courts give "consideration of alternative means" before a blanket freeze. *Ramu*, 903 F.2d at 320. The alternative here -- a briefing schedule for the PSJ while managing other pretrial activity -- is the course this Court followed in *McComb* and is the course ECF 142 forecloses.

The Supreme Court has underscored why this matters. Summary judgment is "integral to the Federal Rules as a whole" and "not a disfavored procedural shortcut." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 327 (1986). The non-movant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 256 (1986). This Court has itself applied *Anderson* in its own prior summary-judgment rulings. Here, ECF 142 has blocked the very briefing through which *Anderson* operates.

ECF 142's own citation reinforces the point. *Langiano v. City of Fort Worth*, 131 F.4th 285 (5th Cir. 2025), which ECF 142 cites for inherent docket-control power, actually denied the stay at issue: the case was "ripe for resolution" and "[d]elaying that resolution for an indeterminate amount of time would adversely affect not only the defendants' rights but the public's interest in having this lawsuit resolved expeditiously." *Id.* at 290-91.

To the extent the consolidated PSJ may be viewed as premature, Rule 56(d) provides the remedy: the nonmovant may show by affidavit that it cannot present facts essential to its opposition. *Celotex*, 477 U.S. at 326. Defendants never invoked Rule 56(d). The remedy for premature summary judgment is a Rule 56(d) continuance, not an indefinite all-filings ban that prevents both briefing and ruling.

The procedural disadvantage compounds the substantive one. Plaintiff was driven to seek partial summary judgment before meaningful discovery -- not because the record was trial-ready, but because no other form of relief had issued from this Court. Summary judgment must, by its own terms, be evaluated in the light most favorable to the non-movant. *Anderson*, 477 U.S. at 255. For a pro se plaintiff to move for summary judgment before discovery, against represented defendants armed with every evidentiary presumption the Rule affords and a framework that tilts

every contested inference in their favor, is to assume a burden already nearly impossible. That is the burden Plaintiff chose when the Court's denial of any other relief -- including denial of even routine public-records production -- left him with no alternative avenue to place the record before a tribunal. And the record Plaintiff can tender, for all his efforts, consists largely of this Court's text-only denials, public-record requests Defendants have refused, and a collection of Rule 11 admonishments directed at him. Even that record is now placed under an indefinite stay, and the brief is not decided but deferred.

**D. Defendants Have Litigated Freely While Plaintiff's Claims Remain Frozen**

The stay has operated not as a mutual pause but as a one-sided advantage. Defendants have since filed new motions, briefed them fully, and advanced their positions without interruption -- while Plaintiff's consolidated PSJ has received no briefing and no resolution for approximately one hundred days. On January 20, 2026, one week after the stay issued, Defendants filed a new Motion to Dismiss (ECF 139-140); that motion was fully briefed (ECF 144-146); and on March 6, 2026, the Court ruled on the pending disqualification motion (ECF 147). Throughout, the consolidated PSJ -- addressing documented claims of fraud upon the court -- sat untouched.

The Supreme Court requires that any stay rest on a balance of hardships under a four-factor framework (likelihood of success, irreparable injury, substantial harm, public interest). *Nken v. Holder*, 556 U.S. 418, 426, 433 (2009). ECF 142 applied none of those factors. The result: Defendants exercise all the rights of active litigants while Plaintiff's affirmative claims remain indefinitely shelved.

The Fifth Circuit has warned against precisely this kind of delay. In *Hines v. D'Artois*, 531 F.2d 726 (5th Cir. 1976), the court observed that "[i]f plaintiffs were not to be permitted forthwith to tell their story to the court, the tale might be stale indeed by the time it reached judicial ears." *Id.* at 736.

13

The asymmetry here is not merely temporal. Because ECF 129 prohibits Plaintiff from contacting any employee of the City of Biloxi about this case, the individuals most likely to possess exculpatory knowledge -- municipal employees, potential whistleblowers, non-party fact witnesses -- remain accessible to Defendants and their counsel but unreachable to Plaintiff. The Court has thereby created an extended interval in which Defendants may marshal, coordinate, and shape their response to documented forgery allegations, while Plaintiff is foreclosed from the factual development that would ordinarily test such marshaling.

The asymmetry has produced documented substantive consequences. Since this lawsuit was filed, Defendants and their agents have initiated criminal charges supported by affidavits Plaintiff has demonstrated to be perjured, deployed police officers to Plaintiff's residence, issued a law-enforcement intelligence bulletin concerning him, subjected him to documented threats, denied him basic municipal services, and contributed to the dissolution of his marriage. Defense counsel was filmed conducting surveillance of Plaintiff's residence during a statutory stay, and the footage was submitted to this Court. The parallel municipal proceeding adds a prosecutor's settlement letter, a municipal judge's order, and a secret ex parte filing -- together supporting an inference of an intent to manufacture criminal liability. These are the conditions under which this Court has acted sua sponte to restrain Plaintiff's motion practice; no sua sponte action has addressed the conduct above.

Nor does Plaintiff's pro se status justify the disparity. In *McKnight*, the Fifth Circuit expressly rejected the suggestion that the difficulties of "handling pro se ... litigation" justified an indefinite stay -- reasoning that "pro se prisoner suits cannot be dismissed summarily for purposes of docket control." 667 F.2d at 479 n.2.

The consolidated PSJ addresses the "Standing Order to Seal" bearing a retired judge's purported signature and a date more than forty months before the underlying case existed, perjured testimony, contradictions between sworn statements and the physical record, and admissions by Defendants' own counsel. These allegations go to the integrity of the proceedings themselves.

14

The pattern this record documents is of a disposition directed toward non-adjudication. The initial denial of Plaintiff's first TRO stood on substantive evidentiary reasoning -- faulting Plaintiff for conflating mandatory with prohibitory injunctive relief, for pressing what the Court characterized as mandamus-style relief against a municipality, for combining motion and brief, for formatting deficiencies, and for omitting the *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), four-factor analysis. Plaintiff treated that reasoning as educative and reverse-engineered every identified deficiency: every subsequent filing has separated motion from memorandum, applied *Winter* explicitly, complied with local-rule formatting, and supplied a Table of Authorities where appropriate. Precision has not produced engagement. Subsequent rulings have consisted of text-only denials or "premature" dispositions -- a word this Court has deployed to resolve merits-adjacent motions in Case 254 (ECF 69), in ECF 138 here, in *Petrini v. Ready* (1:26-cv-00069-LG-RPM), and in the Pettry and disqualification dispositions -- none of which identify what a corrected filing would look like, and several of which are accompanied by Rule 11 admonishments.

The cumulative effect is that Plaintiff cannot discern whether any given filing has been rejected for want of pleading, of merit, of vehicle, or of this Court's willingness to reach it. The only inference available is uncertainty and doubt -- which, paired with the Rule 11 threats catalogued above, yields no reading except an unwillingness to reach the merits. Yet every applicable federal rule, every Fifth Circuit and Supreme Court precedent governing docket management, and every prior decision this Court has authored in *S. Indus.*, *McComb*, and *Pride* point the opposite direction. The Court has, in prior orders, considered treating this pro se litigant as though he were counsel -- for purposes of sanctioning, and for the procedural perfectionism demanded of his filings (separated motion and memorandum, compliant page count and font, proper rule vehicle, exhaustive point-by-point response). Notwithstanding the "less stringent standard" to which pro se papers are entitled, *Haines*, 404 U.S. at 520, perfection has been required in form while adjudication has been withheld in substance. The reward for achieving perfection in form, on this record, is an indefinite stay.

The balance of equities this Court must strike weighs decisively against continued suspension. Plaintiff cannot utilize, sell, or improve commercial and residential real property he owns in fee simple in his personal capacity -- capital stalled in the millions of dollars -- while the same stay that freezes his motion practice leaves in place the municipal conduct preventing that use. His professional licenses before the State of Mississippi stand exposed to the fabricated charges and intelligence-bulletin regime the record documents. Police resources have been deployed at his residence; his speech, in his capacities as a licensed contractor, working journalist, and federal litigant, has been restrained by the one-directional protective order this Court entered (ECF 129) and by Defendants' parallel conduct. And the public fisc, municipal and federal, has been and continues to be drawn down funding the coercion campaign the record catalogues. On the other side of the ledger sit only the interests the stay actually serves: the Court's understandable fatigue with a complex pro se docket, and the City's predictable reluctance to interact with the evidence of its own conduct. Neither equals, much less outweighs, the harms above. Even if the balance were somehow reversed, the stay would still fail the separate requirement that any stay "can be justified only if . . . the order granting a stay can be framed to contain reasonable limits on its duration," *S. Indus. Contractors*, 2019 WL 1748531, at \*2 (emphasis added), and that courts give "consideration of alternative means" before entering an all-inclusive freeze. *Ramu*, 903 F.2d at 320. ECF 142 satisfies neither prong.

Compounding the balance, the record reflects that this Court has granted no form of temporary relief to Plaintiff, regardless of the evidence placed before it, while granting each form of relief Defendants have sought. Plaintiff's Consolidated Motion for Partial Summary Judgment was his effort to bring that evidence to adjudication on the merits; the stay blocks even that. A stay is, in this posture, worse than a denial: a denial is appealable and produces a reviewable record; a stay produces neither, and leaves a litigant in indefinite limbo with no appellate instrument to test the ruling's correctness. Plaintiff therefore respectfully requests that, whatever this Court's position on his motions may be, that position be stated clearly and on the record, so that the ordinary mechanisms by which a federal litigant tests the correctness of adverse rulings --

16

appeal, mandamus, or Rule 72 objection -- become available to him.

### E. The Court Has an Independent Duty to Examine Fraud Upon the Court That a Discretionary Stay Cannot Suspend

Fraud upon the court is categorically different from ordinary litigation concerns. The Supreme Court has long recognized that such fraud "is a wrong against the institutions set up to protect and safeguard the public," and that federal courts possess inherent authority -- and a correlative duty -- to address it. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). "The power to unearth such a fraud is the power to unearth it effectively." *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946). The Fifth Circuit has adopted the traditional definition: fraud upon the court reaches conduct that "does or attempts to defile the court itself" or prevents "the judicial machinery" from performing "its impartial task of adjudging cases that are presented for adjudication." *Browning v. Navarro*, 826 F.2d 335, 344 n.12 (5th Cir. 1987). Federal Rule of Civil Procedure 60(d)(3) confirms the point: no rule "limit[s] a court's power to ... set aside a judgment for fraud on the court."

That authority carries a correlative duty. When documented allegations of fraud upon the court are placed before a federal court, the obligation to examine them is not discretionary and does not bend to the ordinary calculus of docket management. A discretionary stay entered under *Landis* -- itself grounded in "the power inherent in every court to control the disposition of the causes on its docket," 299 U.S. at 254 -- cannot extinguish the court's own inherent obligation to safeguard the integrity of its proceedings.

That obligation is directly implicated here. Ground Nine of the consolidated PSJ presents a documented anomaly: a "Standing Order to Seal" in Case CC-51719, bearing Judge Tisdale's purported signature -- a judge who retired in June 2025 -- dated February 7, 2022. That case did not come into existence until July 9, 2025, more than forty months after the date on the order. An order cannot predate the case it purports to govern by three years and five months.

17

The implications are severe. If the order is genuine, it was issued in a case that did not yet exist, which renders it void. If it is not, its creation and use implicate federal obstruction statutes, 18 U.S.C. §§ 1503 and 1519, and Mississippi forgery statutes, Miss. Code Ann. §§ 97-21-35, 97-21-59. Plaintiff introduced the document into this federal proceeding as evidence of fraud upon the court. *See Hines*, 531 F.2d at 736 ("ossification of rights which attends inordinate delay").

The fourth *Nken* factor -- the public interest -- reinforces the same result: the Court's independent duty to examine documented allegations of forgery weighs decisively against continued suspension. *See Itel Corp. v. M/V Victoria U*, 710 F.2d 199, 202 (5th Cir. 1983) ("Federal courts exist to decide controversy. Those who have . . . a 'federal case' deserve its prompt adjudication.").

This case sits at the extreme of several axes simultaneously, and Plaintiff places that posture on the record candidly. *Petrini v. City of Biloxi* -- the earliest of six civil actions Plaintiff has filed arising from the same municipal controversy, five of which are now pending before this Court -- appears, on the available record, to be among the most aggressive pro se civil-rights campaigns brought against a Mississippi municipality in this District's history -- and, on Plaintiff's diligent but necessarily incomplete survey, in any federal district in the country. It presents questions of first impression on both sides of the caption. Its record contains allegations of municipal conduct that, if substantially true, are unprecedented in their reach: a forged court order, perjured affidavits, filmed surveillance of a pro se litigant's residence, coordinated inter-agency intelligence concerning him, and a pattern of coercion extending beyond the courthouse into the ministerial operations of municipal government. Plaintiff places on this record his recognition that the Court occupies a position of singular difficulty -- it must balance interests this pro se litigant cannot fully anticipate, much less articulate in the register of Rule 7 practice -- and he does not presume to counsel the Court in that balancing. The underlying stakes, however, do not bend to the posture of the case. Defendants have expended, on the record available to Plaintiff, in excess of $300,000 in defense costs and have extended sixteen separate

18

documented settlement overtures, not one of which has offered pecuniary compensation. Nor is further settlement in prospect: Plaintiff's most recent overture produced not negotiation but retaliation -- defense counsel Michael Whitehead weaponized the settlement communications to initiate a law-enforcement intelligence product against Plaintiff, from which fabricated criminal charges followed, precipitating the sixth pending action, *Fusco and Petrini v. Glavan*. Defendants thus find themselves in the unprecedented procedural posture of a municipality unable to buy, settle, intimidate, or outlast a pro se litigant they have faced across six venues for more than a year of documented conduct. The rhetorical structure of this record therefore admits of no middle course. If Plaintiff's documented allegations are substantially true -- that Defendants have forged court orders, relied on perjured affidavits, coordinated surveillance and threats against a federal litigant, weaponized municipal prosecution against him, and executed the foregoing through a pattern spanning multiple proceedings -- the conduct alleged supplies predicates for criminal referral under, *inter alia*, 18 U.S.C. §§ 1503, 1512, 1519, and 1962(c). If, on the other hand, those allegations are knowingly false -- fabricated and propagated across multiple federal actions to manufacture litigation advantage -- the conduct supplies Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 predicates warranting the severest sanctions available against Plaintiff, including potential referral under 18 U.S.C. § 1621. These two possibilities are mutually exclusive. Both are intolerable, and this Court should take the most extreme action within its authority to see the record resolved on the merits. The pattern, moreover, is clear and accelerating. Plaintiff's causes of action have multiplied because Defendants have met each effort at redress with retaliation; the original controversy has spawned five additional lawsuits, with more foreseeable on the present trajectory. Plaintiff intends, on this record, not to reduce but to intensify his pursuit of redress across every venue and every legal theory the record will support -- and the pattern of retaliatory escalation, if the first six actions are any guide, will continue to generate further causes of action in response.

This proliferation was avoidable. The relief Plaintiff sought by temporary restraining order at the inception of this lawsuit -- issuance of the certificate of occupancy to which Plaintiff

was entitled under Biloxi's own code, protection against the illegal police deployments already documented on the record, and an end to the operational usurpation of municipal services by a private law firm -- would have mooted most of what has since been filed. That relief was denied. Defendants, to this day, cannot articulate a single code deficiency supporting denial of that certificate. What they have produced instead is (i) an expert opinion Plaintiff has placed on the record as fabricated; (ii) a letter from defense counsel Hank Ros, which Plaintiff has placed on the record as fabricated, cataloging nine purported code findings -- each of which Defendants have since abandoned; and (iii) a settlement proposal that conditions issuance of the certificate solely on dismissal of Plaintiff's lawsuits, reserving only "structural issues, if any" -- that is, no articulated deficiency at all. A record in which the ministerial act at the heart of the controversy remains demonstrably unjustified, and in which dismissal of litigation is the only condition Defendants will articulate for performing it, cannot be resolved by continuing to suspend adjudication of that very controversy.

Neither, then, can be resolved by continued suspension. The one outcome this record cannot sustain is the middle path of indefinite non-adjudication -- which leaves this Court a passive witness to whichever of the two wrongs the evidence ultimately proves. The sword of judicial authority must strike -- in one direction or the other -- but it cannot remain sheathed.

## F. Preservation of the Record Under 28 U.S.C. § 455(a)

"To perform its high function in the best way, justice must satisfy the appearance of justice." *In re Murchison*, 349 U.S. 133, 136 (1955) (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)). Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The standard is objective: "the test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *Hall v. Small Bus. Admin.*, 695 F.2d 175, 178 (5th Cir. 1983); *accord Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988). The inquiry is "fact-bound" and "does not require that prior cases be identified on all fours." *United States v.*

20

*Jordan*, 49 F.3d 152, 157 (5th Cir. 1995).

Plaintiff acknowledges that judicial rulings alone "almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). But *Liteky* itself carved out the exception: rulings that "display a deep-seated favoritism or antagonism that would make fair judgment impossible" do warrant inquiry. *Id.* Plaintiff does not assert that this exception has been met. He preserves the record so that a reviewing court may apply the standard to the facts as they develop.

A party who fails to raise § 455(a) concerns "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim" forfeits the objection. *Delesdernier v. Porterie*, 666 F.2d 116, 121 (5th Cir. 1982); *accord Puckett v. United States*, 556 U.S. 129, 134 (2009); *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994). Plaintiff raises these observations now because the cumulative record has reached the point at which the obligation to preserve outweighs the discomfort of preserving.

The circumstances Plaintiff places on the record are these:

First, the Court entered, without findings, an indefinite all-filings prohibition that no party had requested. Defendants sought a stay of PSJ briefing and consolidation of Plaintiff's motions -- not a blanket freeze on all motions, pleadings, and notices. The prohibition that issued froze Plaintiff's Consolidated Motion for Partial Summary Judgment, while Defendants continued to file, brief, and obtain rulings on their own motions during the same period.

Second, Plaintiff's emergency requests for temporary restraining orders, supported by documented death threats, FBI involvement, and armed police deployments at his residence, were denied without written engagement with the supporting evidence. Defendants' protective-order motion was granted -- entered under inherent powers rather than Rule 26(c), restraining Plaintiff's communications with city officials while imposing no reciprocal obligation on Defendants. Plaintiff is a licensed Mississippi contractor and working journalist whose professional obligations require continuing contact with municipal officials. The restraint issued without narrowly tailored carve-outs and without the particularized findings a court must make before

21

restraining speech on matters of public concern. *See Marceaux v. Lafayette City-Parish Consol. Gov't*, 731 F.3d 488, 494-96 (5th Cir. 2013); *Procunier v. Martinez*, 416 U.S. 396, 413 (1974). The issue is preserved for disposition once the stay is lifted. In Civil Action No. 1:25-cv-00254, Magistrate Judge Myers had permitted a similar unilateral defense-counsel contact prohibition concerning Ms. Pettry to remain in effect notwithstanding the absence of any Rule 26 designation and Pettry's own admissions contradicting its premises.

Third, a motion to disqualify counsel -- raising the concurrent conflict of a law firm simultaneously serving as named defendant and defense counsel -- was denied on procedural grounds without engaging the substantive *Dresser* analysis. *In re Dresser Industries, Inc.*, 972 F.2d 540, 545 (5th Cir. 1992) (concurrent representation "incompatible with the professional obligations of loyalty and confidentiality"). The procedural disposition effectively resolved the conflict question sua sponte, without record development of the facts material to it: that the firm has generated internal intelligence bulletins concerning Plaintiff, and that the firm's dual role has in practice operated to block Plaintiff's access to routine municipal services -- both bearing on whether the conflict is structural rather than positional. The same order formally admonished Plaintiff under Rule 11 and warned that future filings may be struck or subjected to monetary penalties, without the show-cause procedure Rule 11(c)(3) requires before sua sponte sanctions. *See Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995); *Mendoza v. Lynaugh*, 989 F.2d 191, 195-96 (5th Cir. 1993).

Fourth, every consequential non-dispositive ruling has been entered by the Magistrate Judge. ECF 129 imposed a one-directional protective order threatening dismissal of all three consolidated cases; the January 6 Text Order stayed PSJ briefing; in Case 254, ECF 69 found that Defendants had not disclosed experts yet denied Plaintiff's corresponding motion as "premature," leaving asserted expert-witness immunity unexamined where no Rule 26(a)(2) designation exists. Plaintiff's Rule 72 objection to the disqualification denial (ECF 148) was struck as a stay violation, blocking the de novo review Rule 72(a) guarantees.

Fifth, Plaintiff has prevailed on one motion -- an unopposed motion for leave to amend. Every contested motion Plaintiff filed has been denied; Defendants have prevailed on every motion they filed. The outcomes track party identity more closely than any consistent application of the merits.

Sixth, at the first in-person status conference, the Court placed Plaintiff under oath and conducted direct examination concerning his background, representations, and litigation conduct. Tr. of Sept. 30, 2025 Status Conf. at 15:6-8. No counsel for any Defendant, no named individual Defendant, and no representative of the City was similarly sworn or examined. The asymmetry -- one party's statements subjected to sworn testimony under Fed. R. Evid. 603 and the perjury liability of 18 U.S.C. § 1621, while opposing parties' representations proceeded unsworn -- finds no warrant in the governing rules. Rule 16 enumerates the matters a pretrial conference may address; oath administration and direct examination of a party appear nowhere among them. Fed. R. Civ. P. 16(a), (c)(2). Sworn testimony is structurally the province of trial and evidentiary proceedings. *See* Fed. R. Civ. P. 43(a), (c); Fed. R. Evid. 603, 1101(b). A Rule 16 status conference is neither. No theory of acquiescence cures the asymmetry: a pro se litigant cannot meaningfully decline a directive to be sworn without inviting treatment as contumacious refusal. Pro se litigants are entitled to liberal construction of their pleadings and procedural posture, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) — a standard this Court has applied in its own District. *See Pride v. City of Biloxi*, No. 1:10-CV-353-LG-RHW, 2011 WL 5835109, at \*1 (S.D. Miss. Nov. 21, 2011) (Guirola, J.).

The observation does not fall under the *Liteky* limitation on rulings-based partiality concerns. It is in-court treatment of the parties -- the intrajudicial conduct *Liteky* identifies as cognizable when it reveals "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555-56; *id.* at 562-63 (Kennedy, J., concurring) ("the central inquiry under § 455(a) is the appearance of partiality, not its place of origin").

Plaintiff does not at this juncture move for recusal. He makes this preservation in the present motion rather than as a standalone filing because Supplemental Order ECF 142 prohibits

23

independent new motions -- paradoxically foreclosing the ordinary procedural vehicle for raising § 455(a) concerns about the very stay at issue -- and because the issue for which preservation is sought (the Court's handling of the stay and the treatment of motions practice during the stay) is the subject of this motion itself. He preserves the record because the obligation to do so is not discretionary. *Delesdernier*, 666 F.2d at 121.

## V. CONCLUSION

The stay has persisted for more than one hundred days on a justification that ceased to exist before the freeze was entered. The consolidation Defendants demanded was accomplished before the all-filings order issued. ECF 142 contains no findings, no balancing, no temporal limit. It conditions its own termination on rulings it prevents the briefing to produce.

Defendants have meanwhile litigated without constraint. Plaintiff alone bears the stay, unable to prosecute his PSJ, unable to present documented fraud upon the court, unable to vindicate rights that erode each month. The stay burdens more than Plaintiff: it forecloses this Court from exercising the inherent authority and correlative duty to examine documented allegations that a municipal court record was fabricated. *Hazel-Atlas*, 322 U.S. at 246; Fed. R. Civ. P. 60(d)(3). This motion seeks not defiance but the adjudication the stay was meant to facilitate. A plaintiff who moves for permission to adjudicate his claims is not failing to prosecute them under Rule 41(b); he is doing the opposite. Plaintiff has also preserved, in Part IV.F above, observations bearing on 28 U.S.C. § 455(a) that the forfeiture doctrine required him to document. *See Delesdernier v. Porterie*, 666 F.2d 116, 121 (5th Cir. 1982).

**WHEREFORE**, Plaintiff respectfully requests that this Court **GRANT** this Motion and enter an order that:

(a) **lifts** the stay imposed by ECF 138 and ECF 142 in its entirety;

(b) alternatively, sets a **defined briefing schedule** for Defendants to respond to the Consolidated Motion for Partial Summary Judgment (ECF 134) within thirty days, with the Court

ruling within ninety days thereafter;

(c) alternatively, sets a **status conference** to address the continued necessity of the stay;

(d) in the further alternative, establishes a **resolution deadline** consistent with *Occidental Chem. Corp. v. La. Pub. Serv. Comm'n*, 810 F.3d 299, 308 (5th Cir. 2016), requiring disposition of all pending motions within **180 days**;

(e) permits Plaintiff to file motions addressing **fraud upon the court** and other matters of public interest;

(f) **reinstates** the Rule 72(a) objection deadline that was tolled by the stay's operation on ECF 148, so that Plaintiff may obtain the de novo review Rule 72(a) guarantees;

(g) to the extent any disposition is entered short of unconditional lifting of the stay, issues a **written order setting forth findings of fact and conclusions of law** sufficient to permit appellate review, consistent with *In re Ramu Corp.*, 903 F.2d 312, 319 (5th Cir. 1990); and

(h) grants such **other and further relief** as this Court deems just and proper.

Plaintiff expressly reserves all rights, including the right to seek mandamus relief under *In re Ramu Corp.*, 903 F.2d 312 (5th Cir. 1990), and *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc), and all appellate rights from any ruling on this motion.

Respectfully submitted this [DAY] day of [MONTH], [YEAR].

/s/ Yuri Petrini YURI PETRINI Plaintiff, Pro Se 929 Division Street Biloxi, MS 39530 Telephone: (305) 504-1323 Email: contact@peoplevsbiloxi.com Email: yvpetrin@my.loyno.edu

CERTIFICATE OF SERVICE

(Pursuant to Local Rule 5.1)

I hereby certify that on [FILING_DATE], I personally filed the foregoing document with the Clerk of Court, and service upon all counsel of record will be accomplished through the CM/ECF system.

/s/ Yuri Petrini YURI PETRINI Plaintiff, Pro Se