**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**YURI PETRINI**                                                               **PLAINTIFF**

**v.**                                                  **CAUSE NO. 1:25-cv-178-LG-RPM**

**CITY OF BILOXI, MISSISSIPPI, et al.**                              **DEFENDANTS**

**ORDER GRANTING [105] MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

Defendant City of Biloxi, Mississippi ("the City") seeks dismissal of Plaintiff

Yuri Petrini's [96] Second Amended Complaint.  The City argues that the Court

lacks subject matter jurisdiction and that Petrini fails to state a claim upon which

relief may be granted.  The Court has made an independent determination that it

has subject matter jurisdiction over all claims except Count V.[1]  The Court finds

Petrini fails to state a claim on all other counts against the City and the claims are

dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

Given the voluminous facts in this action, the Court restricts its recitation of

the facts to those involving the City.  The Court reads this [96] Second Amended

Complaint liberally, as Petrini proceeds pro se.

**BEACH PROPERTY CERTIFICATE OF OCCUPANCY AND STOP WORK ORDER**

---

[1] A federal court must always satisfy itself that it has jurisdiction. See *United States v. Kwai Fun Wong*, 575 U.S. 402, 408–409, 135 S.Ct. 1625, 191 L.Ed.2d 533 (2015). Thus, even if the parties fail to spot a jurisdictional issue or agree that the court has jurisdiction, the court cannot proceed unless it makes an independent determination that it has jurisdiction. *Riley v. Bondi*, 606 U.S. 259, 273, 145 S. Ct. 2190, 2201, 222 L. Ed. 2d 497 (2025).

Petrini seeks a Certificate of Occupancy for his property at 1606 Beach Boulevard, Biloxi, Mississippi ("Beach property").  In May 2025, the City and other defendants denied his Certificate of Occupancy because a swimming pool violated the building code, along with other cited code violations.  The proposed swimming pool is a 1,700-pound fiberglass pool shell placed on an above-ground pool deck attached to the house.  Petrini alleges that he previously submitted building plans to the City and that any onsite adjustments made were within the permit's scope. Petrini alleges that the proper authorities had approved the building plans with the pool and that the project passed all inspections.  The City denies that any plans were submitted with the pool and maintains that the building structure is not up to code.

In June 2025, Petrini filed this lawsuit and sought a temporary restraining order from the Court mandating that the City issue a Certificate of Occupancy.  The Court denied his motion.  *See* Order [5].  After filing this action, Petrini then sought to communicate with the City; the City's employees refused to communicate with him "under orders of City Attorney Peter Abide."  2d Am. Compl. [96] at 4.

In late June, police officers accompanied a city official to issue a stop work order on the Beach property, citing International Residential Code ("IRC") R114.2.

Petrini alleges this stop work order[2] did not satisfy the IRC requirements. *Id.* at 5.[3]

The June 30, 2025, stop work order states:

> To Whom it May Concern:
>
> The purpose of this letter is to inform you that a Stop Work Order (IRC R114.2) is being issued today for the residential structure located at [the Beach property].
>
> This action is deemed necessary for the following reasons:
>
> 1. It has been reported that you are occupying the house without an approved Certificate of Occupancy (IRC R110.1).
> 2. The unfinished deck structure was not built according to the engineered drawings that were reviewed and approved for a building permit (IRC R105.1)[.]
> 3. The swimming pool is being installed without a permit being issued (IRC R105.1).
>
> All unpermitted work is to cease immediately until the violations have been resolved. Please call [Jerry Creel] to discuss a resolution to resume construction.

Pl.'s Mem. Ex. [135-8].[4]  Creel allegedly refused to communicate with Petrini due to

Abide's orders.  Petrini alleges the City's use of police officers violates the IRC, and

---

[2] The City allegedly issued other improper stop work orders on the Beach property without notice and hearing in December 2024 and March 2025.  These stop work orders do not appear connected to the present claims raised.  Reading the [96] Second Amended Complaint liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court construes these stop work orders as connecting to the alleged *Monell* policy or custom, which the Court does not reach.  *See infra.*

[3] Creel is a defendant in this case and serves as the City's Building Official and Director of Community Development.

[4] As discussed *infra*, the Court considers "documents incorporated into the complaint by reference" without converting the Rule 12(b)(6) motion into one for summary judgment.  *See Jackson v. City of Hearne*, 959 F.3d 194, 204–05 (5th Cir. 2020) (citation modified); *see also Verastique v. City of Dallas*, 106 F.4th 427, 430 n.4 (5th Cir. 2024).

the City used armed officers in retaliation for Petrini filing FBI reports earlier that day.

Further, Petrini alleges this stop work order incident violated his rights for reasonable accommodations for disabilities.  Petrini alleges he has narcolepsy and a recent eye surgery, which substantially limit his major life activities.  Petrini submitted the following accommodations requests to the City: advance notice and scheduled appointments for enforcement actions, written email communications instead of phone calls, and "reasonable response time given medical conditions affecting information processing[.]"  2d Am. Compl. [96] at 10.  Petrini alleges that the City ignored his accommodations requests for the stop work order incident and other encounters.  *See id.*

In July 2025, Petrini alleges the City escalated its retaliation for Petrini filing this lawsuit.  The City filed a criminal action (CC-51719) in municipal court alleging Petrini continued installing the pool despite the stop work order.  Petrini alleges Creel, a city employee, provided affidavits to the municipal court with false information.  During the municipal court arraignment, Creel allegedly stated Petrini "bypassed [the City] and filed [a] federal lawsuit" and "flooded [the City] with public records requests."  2d Am. Compl. [96] at 7.  Petrini alleges these false statements are admissions of retaliation.  The municipal court dismissed the criminal action without prejudice in September 2025.  The municipal court also:

> ORDERED, ADJUDGED, AND DECREED, that the Stop Work Order shall remain in full force and effect until either: (1) Yuri Petrini and the City of Biloxi's Community Development Department reach an agreement as to how the building will continue so that all safety

concerns are addressed, or (2) A Court of competent jurisdiction makes a final determination as to whether Yuri Petrini can continue building. It is further,

ORDERED, ADJUDGED, AND DECREED, the Parties agree that neither Party is admitting to or accepting liability and agrees that each party reserves any and all rights provided for under law.

Pl.'s Resp. Ex. [68-1] at 1.[5]

On November 7, 2025, the City's Building and Housing Board of Adjustment and Appeals ("Building Board of Appeals") held a meeting where it heard Petrini's appeal of the stop work order.[6]  The Building Board of Appeals unanimously denied the appeal.  *See* Def.'s Mot. Ex. [105-2] at 75; Def.'s Mot. Ex. [105-3].  Further, the Building Board of Appeals upheld the stop work order "for reasons of non-compliance in construction, non-compliance with the building codes, non-compliant with the construction documents and failure to allow building inspectors on the property to provide adequate inspections."  Def.'s Mot. Ex. [105-2] at 79–80.

Petrini alleges that because he has not received a Certificate of Occupancy, the Beach property remains uninsurable and unusable.  Further, the denial strained his finances and family stability.  Petrini says the denial affects his ability

---

[5] The Court may take judicial notice of Court orders under Rule of Evidence 201, "but a court cannot take judicial notice of the factual findings of another court."  *See PNC Bank, Nat'l Ass'n v. 2013 Travis Oak Creek, L.P.*, 136 F.4th 568, 574 (5th Cir. 2025).

[6] Under Rule of Evidence 201, the Court may take judicial notice of the public record, including the Building Board of Appeal's hearing transcript.  *See Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) ("It is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." (citation modified)).

to seek government contracts and international business operations, and he suffers a myriad of other damages.  *See* 2d Am. Compl. [96] at 11.

Petrini alleges that the City has no reason to deny the Certificate of Occupancy because three professional engineers found the Beach property's structure complies with the City's requirements.  Petrini argues that the continued denial of the Certificate of Occupancy, without a hearing or opportunity to cure, amounts to a deprivation of use of his Beach property without due process.

## THE DIVISION PROPERTY

Petrini alleges the City allowed (and Creel approved) a non-party's unpermitted construction at 283 Bohn Street, Biloxi, Mississippi.  In contrast, 287 Bohn Street ("Division property")[7] received an immediate code violation for building a fence in a historic zone.  It is undisputed that Petrini's Megalopolis MS-Two, LLC ("Megalopolis Two"), owned the Division property at the relevant times.  Petrini argues this selective code enforcement violates equal protection guarantees.

## CLAIMS RAISED

In sum, Petrini claims the City violated 42 U.S.C. § 1983 in the following ways: Fourteenth Amendment procedural due process including the denial of his property right to a Certificate of Occupancy (Count I) and the issuance of a stop work order to the Beach property (Count II); Fourteenth Amendment substantive due process for false criminal prosecution involving the Beach property stop work

---

[7] The property appears to have two separate addresses under Division and Bohn Street.  For purposes of simplicity, the Court will only refer to the Division address.

order (Count III); First Amendment retaliation for filing this lawsuit and for filing an FBI report (Count IV); Fourteenth Amendment Equal Protection class of one for the Division property fence (Count V); and a Conspiracy to deprive civil rights (Count VII).  Petrini argues that the City may be held liable for all of these claims under a *Monell* analysis (Count VIII).  Petrini also claims the City violated 42 U.S.C. § 12132, the Americans with Disabilities Act ("ADA"), for failure to accommodate his disability and discrimination by proxy (Count VI).  Finally, Petrini claims the City violated the Takings Clause (Count IX).

Petrini seeks preliminary and permanent injunctions against the City.  He also seeks compensatory damages, attorney's fees and costs, pre-judgment and post-judgment interest, and any other relief the Court deems just and proper.

The City argues that the claims against it should be dismissed for a variety of reasons in its [105] Motion to Dismiss.  Since the filing of the motion, there have been numerous updates to the case and some of the issues have been resolved. Therefore, the Court will only address the remaining issues.

## SUBJECT MATTER JURISDICTION

The City argues the Court lacks subject matter jurisdiction and must dismiss under Rule 12(b)(1).  "Federal courts are courts of limited jurisdiction.  *We must presume that a suit lies outside this limited jurisdiction*, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 537 (5th Cir. 2017) (citation modified) (emphasis added); *see Lujan v. Defs. of Wildlife*, 504 U.S.

555, 561 (1992).  If there are jurisdictional issues, "the court cannot proceed unless it makes an independent determination that it has jurisdiction."  *Riley v. Bondi*, 606 U.S. 259, 273 (2025).

In this case, Petrini bears the burden of proving subject matter jurisdiction. *See Settlement Funding, L.L.C.*, 851 F.3d at 537.  "The plaintiff must prove by a preponderance of the evidence that the court has jurisdiction based on the complaint and evidence."  *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012) (citation omitted).  In reviewing subject matter jurisdiction, a court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Id.* (citation modified).  Even when reviewing Petrini's pleadings for subject matter jurisdiction, the Court is mindful to read his pleadings liberally as a pro se plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The Court first considers whether Petrini has standing for the claim involving the Division Street property and whether, as the City argues, Petrini's claims are moot.

## I. STANDING

"Article III of the United States Constitution limits the judicial Power to Cases and Controversies.  Because of that limitation, any plaintiff invoking the judicial Power must establish the irreducible constitutional minimum of standing." *Lutostanksi v. Brown*, 88 F.4th 582, 585 (5th Cir. 2023) (citation modified).

Standing to sue requires "(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation modified). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560–61). Courts evaluate standing "on a claim-by-claim basis." *Hotze v. Hudspeth*, 16 F.4th 1121, 1125 (5th Cir. 2021) (citation modified).

Count V appears to arise from the City's alleged mistreatment of the Division Street property. Megalopolis Two owned the Division Street property at the relevant times—not Petrini. "Under Mississippi law, [a] member has no interest in specific limited liability company property." *In re Ochello*, No. 20-00717-KMS, 2022 WL 963755, at *10 (Bankr. S.D. Miss. Mar. 30, 2022) (internal quotation marks omitted) (quoting Miss. Code Ann. § 79-29-701). Because Petrini did not own the property at the relevant times, nor have any interest in it, he did not suffer an injury in fact under Article III standing. *See Spokeo, Inc.*, 578 U.S. at 339; *see also Tu Nguyen v. Bank of Am.*, 728 F. App'x 387, 387–88 (5th Cir. 2018) (per curiam) (Plaintiff lacks standing where Texas law does not allow LLC members an interest in specific LLC property.). Therefore, Petrini necessarily fails his burden to meet

the irreducible minimum of standing.  *See Lutostanksi*, 88 F.4th at 585; *Ballew*, 668 F.3d at 781.  The Court dismisses Count V without prejudice for lack of standing.[8]

## II.  MOOTNESS

Counts I and II are 42 U.S.C. § 1983 procedural due process violations for the denial of the Certificate of Occupancy and a stop work order issued to the Beach property.  The City argues that because the Building Board rendered a final decision, Petrini was afforded procedural due process, and the issues are moot under Article III.

Article III of the federal Constitution limits the jurisdiction of federal courts to live cases and controversies.  U.S. Const. art. III, § 2.  The "actual controversy" must exist throughout "all stages of the litigation."  *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 142 F.4th 819, 824 (5th Cir. 2025) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013)).  An actual controversy that no longer exists, due to a change in circumstances, renders the case moot.  *Id.*  "Mootness occurs only when it is impossible for the court to grant any effectual relief whatever to a prevailing party."  *Id.* (citation modified).  If the complaining party secures "outside of litigation *all* the relief he might have won in the litigation, the case is moot."  *Id.* (citation modified).

---

[8] Petrini references the Beach property within Count V, but it is unclear to the Court if he intends to raise an equal protection claim for this property.  The Court "must presume that a suit lies outside [its] limited jurisdiction[,]" so it cannot reach Count V.  *See Settlement Funding, L.L.C.*, 851 F.3d at 537.

If a party still has a "concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* "Where one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy." *Powell v. McCormack*, 395 U.S. 486, 497 (1969). A district court cannot confuse "mootness with the merits." 142 F.4th at 827 (quoting *Dierlam v. Trump*, 977 F.3d 471, 477 (5th Cir. 2020)). As discussed *infra*, res judicata does not apply and render these due process claims moot. Even if res judicata applied, Petrini has a concrete interest in his other claims. Petrini seeks relief for the alleged First Amendment retaliation, conspiracy to violate civil rights, and ADA claims. Having addressed the Court's subject matter jurisdiction, the Court turns to the sufficiency of the [96] Second Amended Complaint.

## DISCUSSION OF PLEADINGS

Under a Rule 12(b)(6) motion to dismiss, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (citation modified). Courts do not have to accept legal conclusions presented as factual allegations. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[T]he factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker*, 938 F.3d at 735; *see Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) ("It is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." (citation modified)). The Court also considers "documents incorporated into the complaint by reference." *See Jackson v. City of Hearne*, 959 F.3d 194, 204–05 (5th Cir. 2020) (citation modified); *see also Verastique v. City of Dallas*, 106 F.4th 427, 430 n.4 (5th Cir. 2024).

The majority of Petrini's purported claims arise under 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003). The statute provides a cause of action against a person who, acting under color of state law, violates an individual's rights secured by the Constitution or federal law. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (citation omitted); 42 U.S.C. § 1983. A plaintiff must have "an underlying constitutional or statutory violation" as a "predicate to liability under § 1983." *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1574 (5th Cir. 1989).

-12-

## I. DUE PROCESS

### A. PROCEDURAL DUE PROCESS

Counts I and II attempt to allege 42 U.S.C. § 1983 procedural due process violations for the denial of the Certificate of Occupancy and a stop work order issued to the Beach property. The City argues that res judicata bars both of these counts. In the alternative, the City argues that Counts I and II must fail because Petrini failed to take advantage of Mississippi's procedural safeguards.

### 1. Res Judicata

The Court must determine whether res judicata applies and if the Building Board of Appeals' decision has a preclusive effect. A court may dismiss a claim under Rule 12(b)(6) "on the grounds of res judicata when the elements of res judicata are apparent on the face of the pleadings." *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 571 (5th Cir. 2021) (citation modified). "A federal court must give state court judgments the same preclusive effect they would have in another court in the same state." *Portillo v. Cunningham*, 872 F.3d 728, 735 (5th Cir. 2017) (citation modified). Federal courts "apply the law of the state from which the judgment emerged." *Bell v. Tallahatchie County*, 440 F. Supp. 3d 569, 573 (N.D. Miss. 2020) (citation modified). The Court thus applies Mississippi law.

Mississippi courts give preclusive effect to administrative decisions. *Cox v. DeSoto County*, 564 F.3d 745, 748 (5th Cir. 2009) (citation omitted). "When an administrative agency is acting in a judicial capacity and resolves the disputed issues of fact properly before it . . . the courts have not hesitated to apply res

judicata[.]" *Gibson v. U.S. Postal Serv.*, 380 F.3d 886, 889 (5th Cir. 2004) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)).  Res judicata "only applies to claims that *could have been brought* in the prior action.  It does not bar claims that could not have been asserted in the prior case because of limits of subject matter jurisdiction." *McCarty v. Wood*, 249 So. 3d 425, 431 (Miss. Ct. App. 2018) (citation modified).

Petrini raises procedural due process violations against the City for the issuance of the stop work order and the denial of the Certificate of Occupancy.  The City has not shown that the Building Board of Appeals has subject matter jurisdiction over procedural due process violations.  *See id.*

The City relies on the Court's prior decision in *Chanek v. City of Biloxi*, Nos. 1:10CV455-LG-RHW, 1:12CV212-LG-RHW, 2013 WL 1136333 (S.D. Miss. Mar. 18, 2013).  The facts in *Chanek* are distinguishable from the present case.  The plaintiff in *Chanek* asked the Court to review the Board of Zoning Adjustment's actions and alleged the City's ordinances violated the United States and Mississippi Constitutions.  Unlike *Chanek*, Petrini does not seek the Court's review over the *substance* of the stop work order, denial of the Certificate of Occupancy, nor the Building Board of Appeals' decision in his procedural due process violation counts.  Instead, Petrini seeks review over the *procedures* the City used.  It is not clear on the face of the pleadings that the City meets the elements of res judicata.  *See Stevens*, 17 F.4th at 571.  The Court cannot dismiss these claims on the grounds of res judicata.

## 2. Sufficient Due Process

The City's alternative argument on adequacy of process is persuasive.  Courts follow a two-part process to analyze Due Process: "(1) whether there exists a liberty or property interest of which a person has been deprived, and if so, (2) whether the procedures followed by the State were constitutionally sufficient."  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citation modified).  For the Certificate of Occupancy, the City argues Petrini does not have a property interest because the City never issued one.

"A protected property interest arises where there is a legitimate claim to entitlement as opposed to a mere subjective expectancy."  *Vineyard Inv., LLC v. City of Madison*, 757 F. Supp. 2d 607, 613 (S.D. Miss. 2010) (citation modified).  "A claim to entitlement arises when a statute or regulation places substantial limits on the government's discretion.  No discretion in the official and a reasonable expectation in the citizen are central elements of a protected property interest."  *Id.* (citation modified).  In essence, the government's discretion "is so narrowly circumscribed that approval of a proper application is virtually assured."  *Brookwood Dev., LLC v. City of Ridgeland*, No. 3:21-CV-219-KHJ-MTP, 2023 WL 9188212, at *4 (S.D. Miss. Dec. 8, 2023) (citation modified), *aff'd sub nom. Brookwood Dev., L.L.C. v. City of Ridgeland*, No. 24-60017, 2024 WL 4835244 (5th Cir. Nov. 20, 2024).  To "determine whether statutes and regulations limit discretion" courts look for "explicitly mandatory language, *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow."

*Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 735–36 (5th Cir. 2008) (citation modified).

The City adopted the IRC as its building code, subject to its ordinances. *See* Code of Ordinances of the City of Biloxi, Miss. § 5-3-1. Petrini argues: "Mississippi's IRC § R114.2 mandates that a Certificate 'shall' issue when all inspections pass." Pl.'s Resp. [110] at 26 (citation omitted). It doesn't.[9] IRC R110 covers Certificates of Occupancy: "After the *building official* inspects the building or structure and does not find violations of the provisions of this code or other laws that are enforced by the department, the *building official* shall issue a certificate of occupancy[.]" IRC R110.2. Further, "[t]he *building official* is authorized to suspend or revoke a certificate of occupancy issued under the provisions of this code, in writing wherever . . . it is determined that the building . . . is in violation of the provisions of this code or other ordinance of the *jurisdiction*." IRC R110.4. While the mandatory "shall" appear, when read in context, the IRC does not substantially limit the building official's discretion to determine if the Beach property follows the City's codes and laws; in fact, the IRC authorizes revocation if the building official determines a violation after the fact. *See Ridgely*, 512 F.3d at 735–36. Therefore, the IRC does not give Petrini a property interest in the denied Certificate of Occupancy.

Petrini argues in the alternative that he has a property interest in the Certificate of Occupancy because certificates "qualify as property interests for

---

[9] IRC R114.2 focuses on the issuance of stop work orders.

purposes of the Due Process Clause." Pl.'s Resp. [110] at 26 (quoting *Bowlby v. City of Aberdeen*, 681 F.3d 215, 220 (5th Cir. 2012)).[10] The facts in *Bowlby* are distinguishable from the present case. In *Bowlby*, the defendant city revoked the plaintiff's permit after issuing it. The Fifth Circuit explained that "once issued, a license or permit may become essential in the pursuit of a livelihood." 681 F.3d at 220 (citation modified). "[O]nce *issued*, a license or permit cannot be taken away by the State without due process." *Id.* (emphasis added) (citation omitted). Here, the City never issued the Certificate of Occupancy, so this case falls outside *Bowlby*'s findings. The Court finds that Petrini does not have a property interest in a nonexistent Certificate of Occupancy.

Even if the Certificate of Occupancy was a property interest, the Court determines that the City's Certificate of Occupancy and stop work order procedures are constitutionally sufficient. *See Swarthout*, 562 U.S. at 219. Petrini argues that the Building Board of Appeals acted *ultra vires*, so its decision is void *ab initio*. *See* Pl.'s Resp. [110] at 12. The Court disagrees. To the extent Petrini offers specific quotes, *see id.* at 14, such quotes do not appear in the Building Board of Appeals hearing record. Therefore, these alleged quotes fall outside judicial notice and the facts the Court may consider during a motion to dismiss. *See Walker*, 938 F.3d at

---

[10] To the extent Petrini argues he also has a property interest in professional licenses, this argument is not well taken with the Court. The [96] Second Amended Complaint did not rely on professional licenses as a property interest, and it is inappropriate to edit a complaint in response to a motion to dismiss. *See Lee v. Jackson County*, No. 1:13cv441-HSO-RHW, 2015 WL 11117900, at *3 n.3 (S.D. Miss. Sep. 25, 2015).

735.[11]  Petrini did not argue that he appealed the Building Board of Appeals'

decision to the State court, so the Court deems the argument abandoned.  *See Terry*

*Black's Barbecue, L.L.C. v. State Farm Auto. Mut. Ins.*, 22 F.4th 450, 459 (5th Cir.

2022) (Failure to oppose constitutes abandonment.); *Black v. N. Panola Sch. Dist.*,

461 F.3d 584, 588 n.1 (5th Cir. 2006).

"The Supreme Court has described the root requirement of the Due Process

Clause as being that an individual be given an opportunity for a hearing before he

is deprived of any significant property interest."  *Harmony Behav. Health Servs.,*

*LLC v. Kent*, 750 F. Supp. 3d 665, 687–88 (M.D. La. 2024) (citation modified)

(quoting *Cleveland Bd of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).  Courts

have found that "due to the nature of stop work orders and the government interest

involved, due process protections are satisfied where a hearing was not held until

after the issuance of such an order."  *Petroplex Int'l LLC v. St. James Par.*, No. 15–

140, 2015 WL 6134097, at *8 (E.D. La. Oct. 19, 2015) (citation modified) (citing *3883*

*Conn., LLC v. District of Columbia*, 336 F.3d 1068, 1074 (D.C. Cir. 2003)); *Harmony*

*Behav. Health Servs.*, 750 F. Supp. 3d at 688.  Thus, failure to appeal the Building

Board of Appeals' decision is "fatal to his procedural due process claim."  *See Felder*

*v. Hobby*, No. 99–20111, 1999 WL 1067892, at *7 (5th Cir. Oct. 20, 1999) (citation

---

[11] As stated *supra*, the Court may rely on the Building Board of Appeals' decision without converting the motion to dismiss.  But in doing so, the Court does not consider the *factual* findings of the Building Board of Appeals.  *See PNC Bank, Nat'l Ass'n*, 136 F.4th at 575 (declining judicial notice for disputed factual findings within a record).  Here, the Court merely recognizes that the Building Board of Appeals denied Petrini's appeal.  The Court does not determine whether that decision was correct.

modified).  The Fifth Circuit "has consistently held that one who fails to take advantage of procedural safeguards available to him cannot later claim that he was denied due process."  *Parks v. Terrebonne Par. Consol. Gov't*, 759 F. App'x 220, 226 (5th Cir. 2019) (quoting *Browning v. City of Odessa*, 990 F.2d 842, 845 n.7 (5th Cir. 1993)).

Because Petrini failed to appeal the Building Board of Appeals' decisions regarding the Certificate of Occupancy and stop work order, Petrini has failed to state procedural due process claims.  The City's motion to dismiss pursuant to Rule 12(b)(6) is granted for Counts I and II.

## B. SUBSTANTIVE DUE PROCESS CLAIM

Count III alleges a Fourteenth Amendment substantive due process violation for false criminal prosecution.  The City returns to its res judicata argument that the Building Board of Appeals' decision is final and that this Court cannot disturb it.  Count III appears to focus on Creel's allegedly false criminal affidavits in the municipal court proceedings, rather than the stop work order or Certificate of Occupancy.  *See* 2d Am. Compl. [96] at 17; Pl.'s Resp. [110] at 17.  Therefore, the Court finds the Building Board of Appeals' decision inapplicable to Petrini's claim; res judicata does not apply.  The Court turns to the substantive due process claim itself.

"The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty."  *Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017) (citation

omitted).  Petrini argues that he has a protected liberty interest from criminal prosecutions derived from Creel's alleged false and fabricated affidavits.  Petrini relies on Supreme Court precedent that "established that a *conviction* obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment[.]"  *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (citations omitted) (emphasis added).

Because there was no conviction from the municipal court proceedings, this case falls outside *Napue*.  *See Glossip v. Oklahoma*, 604 U.S. 226, 246 (2025) (establishing a *Napue* violation requires showing "that the prosecution knowingly solicited false testimony or knowingly allowed it to go uncorrected when it appeared" and "if the defendant makes that showing, a new trial is warranted so long as the false testimony may have had an effect on the outcome of the trial" (citation modified)).  The municipal court dismissed the criminal action without prejudice in September 2025.  The municipal court also "ordered, adjudged, and decreed, the Parties agree that neither Party is admitting to or accepting liability and agrees that each party reserves any and all rights provided for under law."  Pl.'s Resp. Ex. [68-1] at 1 (emphasis omitted).[12]

---

[12] Petrini alleges "[t]he municipal court dismissed Case CC-617-19 on September 19, 2025, after prosecution failed to produce evidence."  *See* Pl.'s Resp. [110] at 28.  The Court <u>strongly cautions</u> Petrini to not misrepresent the municipal court's order of dismissal.  *See* Fed. R. Civ. P. 11(b).  This is not the first time the Court has cautioned Petrini against misrepresenting a court order, nor is this the first time the Court has cautioned Petrini regarding Rule 11.  *See* Order [9] at 2; Order [129] at 9 n.6 (Petrini "comes perilously close to violating" Rule 11.).  The Court reserves judgment as to whether these actions violate Rule 11.

Under Supreme Court and Fifth Circuit precedent, Petrini's claims must arise under the Fourth Amendment and not the Fourteenth Amendment's Due Process Clause. *See Manuel v. City of Joliet*, 580 U.S. 357, 367–69 (2017) (A criminal proceeding or arrest "predicated solely on . . . false statements" violates the Fourth Amendment.); *Cuadra v. Hou. Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010) (Substantive due process claim based on prosecutions fails because "there is no Fourteenth Amendment liberty interest or substantive due process right to be free from criminal prosecution unsupported by probable cause." (citation modified)); *see also Albright v. Oliver*, 510 U.S. 266, 274 (1994) (plurality opinion) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it."); *Armstrong v. Ashley*, 60 F.4th 262, 278–79 (5th Cir. 2023) (describing Fourth Amendment malicious prosecution claim). Petrini alleges that the criminal prosecutions, dismissed without prejudice, derived from Creel's alleged false and fabricated affidavits. Such allegations fall squarely under *Manuel* and the Fourth Amendment.

The correct constitutional avenue is the Fourth Amendment and not the Fourteenth Amendment. The Court will not analyze whether this claim survives under a Fourth Amendment analysis because neither party addressed the issue. The Court dismisses this substantive due process claim against the City without prejudice.

## II.  FIRST AMENDMENT RETALIATION

The City argues that Petrini failed to state a First Amendment retaliation claim in Count IV.  To state a First Amendment retaliation claim, a plaintiff must show the following elements:

> (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct.

*Reitz v. Woods*, 85 F.4th 780, 789 (5th Cir. 2023) (citation modified).  The Fifth Circuit "further requires plaintiffs in the prosecution context to establish each of the common law malicious prosecution elements in addition to those three derived from the First Amendment."  *Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir. 2005) (citation omitted).

The second element "requires some showing that the plaintiff's exercise of free speech has been curtailed."  *Reitz*, 85 F.4th at 789 (citation modified).  In other words, Petrini must "plead that the [City's] retaliatory conduct actually curtailed his speech."  *See McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017).  Actual curtailment of speech "does not necessarily mean that plaintiffs must cease criticizing the government officials altogether in order to have a claim for retaliation."  *Keenan v. Tejeda*, 290 F.3d 252, 260 (5th Cir. 2002).  But being "the victim of criticism, an investigation (or an attempt to start one), and false accusations," and "being subjected to and defending oneself from an investigation

-22-

while suffering its concomitant stress, do not satisfy the injury requirement." *Reitz*, 85 F.4th at 790 (citation modified).

Petrini alleges that the following would chill an ordinary person from exercising his rights: the delivery of a stop work order through armed police, filing false criminal affidavits, bans from communicating with the City except through the attorneys, and the municipal court keeping the stop work order in effect. *See* 2d Am. Compl. [96] at 18. Missing from these allegations is an indication that the City's alleged actions "curtailed" *Petrini's* speech. *See Reitz*, 85 F.4th at 790. Without an allegation that the City's conduct curtailed *his* speech, Petrini fails to allege the second element of a First Amendment retaliation claim. *See McLin*, 866 F.3d at 697 (rejecting conclusory allegations of chilled speech and affirming dismissal where Plaintiff never alleged "that the Defendants' conduct stopped him from speaking further"); *see also Lousteau v. City of Canton*, No. 3:11cv676-DPJ-FKB, 2013 WL 5755243, at *5–6 (S.D. Miss. Oct. 23, 2013) (granting summary judgment where Plaintiff did "not let Defendants' actions deter him").[13] Petrini failed to allege the second element of a First Amendment retaliation claim.

At this juncture, the Court cannot "draw the reasonable inference" that the City is liable for the alleged First Amendment retaliation claim. *See Iqbal*, 556 U.S. at 678; *Martin K. Eby Constr. Co.*, 369 F.3d at 467. The Court dismisses Count IV.

---

[13] *Cf. Hemphill v. City of Monahans*, No. PE:18-CV-44-DC-DF, 2020 WL 13836397, at *4 (W.D. Tex. Feb. 14, 2020) (Plaintiff alleging that he "retreated heavily from public forums such as Facebook" satisfies injury of curtailed speech.).

### III.  AMERICANS WITH DISABILITIES ACT

Count VI of the [96] Second Amended Complaint alleges the City violated the ADA by not accommodating Petrini's narcolepsy and committed discrimination by proxy.  Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  "Public entities" includes local governments.  § 12131(1)(A).

The City argues that Petrini does not have a qualifying disability.  An ADA claim requires a plaintiff alleging a disability within the meaning of the Act.  *Hughes v. Terminix Pest Control, Inc.*, No. 23-30617, 2024 WL 3440465, at *1 (5th Cir. July 17, 2024).  A disability exists under the ADA in "one of three conditions: 'a physical or mental impairment that substantially limits one or more major life activities of such individual' (actual disability); 'a record of such an impairment' (recorded as disabled); or 'being regarded as having such an impairment' (regarded as disabled)."  *Pietsch v. FMC Techs., Inc.*, No. 24-20514, 2026 WL 561183, at *2 (5th Cir. Feb. 27, 2026) (quoting 42 U.S.C. § 12102(1)(A)–(C)).  Petrini alleges that he has a qualifying disability because of his narcolepsy and eye surgery.

"A[] [diagnosis of the] impairment, standing alone, is not necessarily a disability."  *Alleman v. La. Dep't of Econ. Dev.*, 698 F. Supp. 2d 644, 662 (M.D. La. 2010).  An impairment qualifies as a disability when it "directly limit[s] the life activity at issue."  *Hughes*, 2024 WL 3440465, at *1 (citation omitted).  "[I]ndirect

limitations on a major life activity" do not qualify as a disability.  *Id.*  A major life activity includes seeing, sleeping, "concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).

A person "unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it" qualifies as a substantial limitation.  *Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011) (citation modified).[14]  A plaintiff cannot merely claim that his major life activities are substantially limited; he must allege facts to support a reasonable inference that his impairment substantially limits him.  *See id.* ("The complaint did little to expound on the impact of these conditions on [the plaintiff's] health."); *Luedecke v. Tenet Healthcare Corp.*, No. 3:14-CV–1582-B, 2015 WL 58733, at *6 (N.D. Tex. Jan. 5, 2015) (dismissing where plaintiff failed to present "any facts describing the difficulties he experiences in performing any [major] activities"); *see also Kirk v. Our Cmty. Our Kids*, No. 3:25-CV-0066-D, 2025 WL 2432614, at *7 (N.D. Tex. Aug. 22, 2025) (collecting cases).

Petrini alleges he has narcolepsy, and he had an eye surgery that substantially limit his major life activities.  2d Am. Compl. [96] at 10.  Assuming that both are impairments, Petrini has not alleged how they substantially limit him apart from a vague reference to "information processing" and "recovery from eye

---

[14] Courts generally consider: "(i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment."  *Id.* (citation modified).

surgery." *Id.*; *see Hale,* 642 F.3d at 500 (failing to provide facts on impact of impairments is grounds for dismissal).  Because Petrini did not allege how narcolepsy or the eye surgery substantially limit his major life activities, he does not qualify as disabled under the ADA.  *See Pietsch*, 2026 WL 561183, at *2. Therefore, he cannot state a claim under the ADA, and Count VI must be dismissed.

## IV.  CONSPIRACY TO DEPRIVE CIVIL RIGHTS

The City argues that Count VII, conspiracy to deprive civil rights, fails to state a claim.  Petrini raised conspiracy to deprive civil rights under § 1985 and § 1983.  The Court addresses both statutes separately.

### A.  42 U.S.C. § 1985 CONSPIRACY TO DEPRIVE CIVIL RIGHTS

The City argues the § 1985 claim must fail because the intra-corporate doctrine applies.  A plaintiff must allege the following under a 42 U.S.C. § 1985(3) claim:

> (1) a conspiracy involving two or more persons;
> (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and
> (3) an act in furtherance of the conspiracy;
> (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Tex. Democratic Party v. Abbott*, 961 F.3d 389, 410 (5th Cir. 2020) (citation modified).  "In the Fifth Circuit, the only conspiracies actionable under section 1985(3) are those motivated by racial animus."  *Cantú v. Moody*, 933 F.3d 414, 419–20 (5th Cir. 2019) (citation modified); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

The City maintains that the intracorporate-conspiracy doctrine applies, so there cannot be a conspiracy. The "intracorporate-conspiracy doctrine precludes a plaintiff from bringing conspiracy claims against multiple defendants employed by the same governmental entity." *Konan v. U.S. Postal Serv.*, 96 F.4th 799, 805 (5th Cir. 2024), *vacated and remanded on other grounds by* 607 U.S. ----, 146 S.Ct. 736 (2026) (citation modified). The Fifth Circuit has "consistently held that a [government] and its employees are a single legal entity which is incapable of conspiring with itself." *See id.* (citation modified); *Thompson v. City of Galveston*, 979 F. Supp. 504, 511 (S.D. Tex. 1997) (collecting cases). The doctrine includes those who are agents to the entity. *See Bright v. City of Killeen*, 532 F. Supp. 3d 389, 398 (W.D. Tex. 2021) (citing *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994)).

Petrini argues that Currie Johnson is a private law firm and that Henry Ros and Zachary Cruthirds are private attorneys retained by the City, so they are not City employees. Petrini argues because they are outside actors, and not employees, the intracorporate-conspiracy doctrine does not apply. The Court takes judicial notice that Currie Johnson is the City Attorney. *See* Fed. R. Evid. 201(b). [15] As the City of Biloxi City Attorney, Currie Johnson is "the director of the legal

---

[15] The City's official website describes Peter Abide and Currie Johnson as the City Attorney. *City Attorney / Legal Department*, Biloxi, https://biloxi.ms.us/departments/legaleconomic-development-initiatives/ (last visited June 2, 2026). According to the City's resolution appointing the City Attorney, only Currie Johnson is the City Attorney. *See* City of Biloxi, Miss. Res. No. 434-25 (2025).

department . . . and shall also be *the chief legal officer of the city.*"  *See* Code of

Ordinances of the City of Biloxi, Miss. § 2-1-2(a) (citation modified); City of Biloxi,

Miss. Res. No. 434-25 (2025) (same).  The Court finds that, because Currie Johnson

is the City Attorney, it is part of the same legal entity as the City in this context.

*See Hilliard*, 30 F.3d at 653 (applying doctrine to school board of individual

members).  Petrini does not allege that Currie Johnson acted outside of its role for

the City.  Therefore, Currie Johnson was not an outside actor to the City.[16]  The

Court finds that the intracorporate conspiracy doctrine applies, so there cannot be a

conspiracy under Count VII.

Even if these defendants were outside actors, the City argues the [96] Second

Amended Complaint failed to allege racial or discriminatory animus.  *See* Def.'s

Mot. Mem. [106] at 22 (citing *Griffin*, 403 U.S. at 102).  Looking at the [96] Second

Amended Complaint liberally and with all facts construed in favor of Petrini, *see*

*Erickson*, 551 U.S. at 94, *Martin K. Eby Constr. Co.*, 369 F.3d at 467, no facts

suggest that the City acted with racial animus.  Therefore, this claim is not

actionable under Fifth Circuit caselaw.  *See Cantú*, 933 F.3d at 419–20.  Further,

Petrini failed to contest this argument, so the Court deems it abandoned.  *See Terry*

*Black's Barbecue, L.L.C.*, 22 F.4th at 459 (Failure to oppose constitutes

---

[16] Ros and Cruthirds are not named defendants in the [96] Second Amended
Complaint; the Court will not indulge the argument that they are outside actors.  It
is inappropriate to edit a complaint in response to a motion to dismiss.  *See Lee*,
2015 WL 11117900, at *3 n.3.  Further, they are both attorneys *employed* by Currie
Johnson, and there are no arguments made that these attorneys fall under an
exception to the intracorporate-conspiracy doctrine.

abandonment.); *Black*, 461 F.3d at 588 n.1.  Petrini fails to state a claim under

§ 1985(3) because the intracorporate conspiracy doctrine applies and there is no

alleged racial intent.  The Court dismisses this claim against the City.

**B.  42 U.S.C. § 1983 CONSPIRACY TO DEPRIVE CIVIL RIGHTS**

Part of Petrini's Count VII arises under § 1983.  The City did not raise the

theory of intracorporate-conspiracy doctrine until its [137] Reply, so the Court will

not consider the argument.  *See Bryant v. Bogalusa Bayou R.R. LLC/Watco*, No.

2:21-cv-75-HSO-BWR, 2022 WL 3354068, at *1 (S.D. Miss. Aug. 12, 2022) (Courts

"need not consider arguments raised for the first time in a reply brief[.]" (citation

omitted)).  Therefore, the Court will not dismiss the § 1983 conspiracy claim under

the intracorporate-conspiracy doctrine.

But, "to state a § 1983 conspiracy claim, a plaintiff must allege: (1) an

agreement between a defendant and others, involving at least one person acting

under color of state law to commit an illegal act; and (2) an actual deprivation of the

plaintiff's rights in furtherance of that agreement."  *Bright*, 532 F. Supp. 3d at 397–

98 (citation modified).  "A conspiracy claim is not actionable if there is no

deprivation of the asserted civil right."  *Bevill v. Wheeler*, 103 F.4th 363, 374 (5th

Cir. 2024) (citation modified); *see Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir.

2019) ("No deprivation, no § 1983 conspiracy.").

Petrini alleges that the City conspired to deprive his property rights without

due process, violate his Fourteenth Amendment right to substantive due process

through false criminal prosecution, retaliate against his First Amendment activity,

and violate the ADA by excluding him from public services.  Because the Court finds

none of Petrini's alleged deprivations of civil rights survive a Rule 12(b)(6) analysis,

as discussed above, his claim of a § 1983 conspiracy must fail.  *See Bevill*, 103 F.4th

at 374.  The Court dismisses this § 1983 conspiracy claim.  Therefore, the Court

dismisses Count VII for failure to allege a conspiracy under either statute.

## V.  FIFTH AMENDMENT TAKINGS CLAUSE

Count IX arises under the Fifth Amendment and alleges that the City's

conduct constitutes a regulatory taking.  2d Am. Compl. [96] at 21.  To state a claim

under the Fifth Amendment's Takings Clause, Petrini must show that the City took

his property "for public use, without just compensation."  *See Knick v. Township of

Scott*, 588 U.S. 180, 189 (2019).  Courts "reconcile" two competing interests in

regulatory takings: the "right to retain the interests and exercise the freedoms at

the core of private property ownership," and the "government's well-established

power to adjust rights for the public good."  *Murr v. Wisconsin*, 582 U.S. 383, 394

(2017) (citation modified).

Regulatory takings exist in two forms: *per se* (or categorical) taking, and

takings under the *Penn Central* test.  *DM Arbor Ct., Ltd. v. City of Houston*, 150

F.4th 418, 423 (5th Cir. 2025) (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003

(1992); *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104 (1978)).  The City

argues Petrini fails to allege a regulatory taking under either test because Petrini

does not plead facts and makes conclusory allegations.  Petrini does not contest the

City's argument that he cannot satisfy a *per se* taking under *Lucas*.[17]  Instead,

Petrini maintains that he satisfies the *Penn Central* test.  Assuming Petrini has a

property interest in the beneficial use of his Beach property, he does not state a

claim under *Penn Central.*

If the "government imposes regulations that restrict an owner's ability to *use*

his own property, the flexible test developed in *Penn Central* applies."  *Golden Glow*

*Tanning Salon, Inc. v. City of Columbus*, 52 F.4th 974, 980 (5th Cir. 2022) (citation

modified).  The *Penn Central* "balancing test weighs factors such as: the economic

impact of the regulation, its interference with reasonable investment-backed

expectations, and the character of the government action."  *Id.* (citation modified).

The three factors "aim[] to identify regulatory actions that are functionally

equivalent to the classic taking," so "each of these tests focuses directly upon the

severity of the burden that government imposes upon private property rights."

*Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 539 (2005).  Dismissal under Rule

12(b)(6) is appropriate where all *Penn Central* factors "weigh against the plaintiff."

*See Degan v. Bd. of Trs. of Dall. Police & Fire Pension Sys.*, 956 F.3d 813, 815 (5th

Cir. 2020).

Under the first *Penn Central* factor—economic impact—a court "compares the

value that has been taken from the property with the value that remains in the

property."  *Hackbelt 27 Partners, L.P. v. City of Coppell*, 661 F. App'x 843, 850 (5th

---

[17] *See Terry Black's Barbecue, L.L.C.*, 22 F.4th at 459 (Failure to oppose constitutes abandonment.); *Black*, 461 F.3d at 588 n.1.

Cir. 2016) (citation modified). "When analyzing the economic impact of a regulation, the loss of anticipated gains or potential future profits is typically not considered." *Id.* (citation modified). In other words, courts do not "measure economic impact based on a hypothetical economic result that assumes a state of affairs that did not exist." *Woodward Habor L.L.C. v. City of Mandeville*, No. 23-5824, 2025 WL 959365, at *14 (E.D. La. Mar. 31, 2025) (quoting *Bridge Aina Leʻa, LLC v. Land Use Comm'n*, 950 F.3d 610, 631 (9th Cir. 2020)). A court "properly considers only the *diminution in value that resulted from the government action*[.]" *Id.* (emphasis added).

Petrini argues the City's denial had an economic impact on his property. Petrini alleges the entire structure at the Beach property is complete, but the City refuses to allow him beneficial use. Further, he alleges the property cannot be insured, sold, rented, or financed because it lacks a Certificate of Occupancy. *See* 2d Am. Compl. [96] at 22. However, the property's value did not change at all. Before the denial of the Certificate of Occupancy, Petrini could not occupy, nor use or insure, the Beach property; after the City's denial, the result remains the same. Therefore, the Court "cannot reasonably infer a diminution in the property's value[.]" *See Woodward Harbor L.L.C.*, 2025 WL 959365, at *14 ("After all, according to the complaint, allowable uses of the property have not changed: Before the City Council vote, there were no permitted uses of it without Council approval; after that vote, there remain no permitted uses of it without Council approval."); *Hackbelt 27 Partners, L.P.*, 661 F. App'x at 850 (Courts do not typically consider the

"loss of anticipated gains or potential future profits." (citation modified)).  The first *Penn Central* factor weighs against Petrini.

The second *Penn Central* factor is a "reasonable investment-backed expectation."  *Golden Glow Tanning Salon, Inc.*, 52 F.4th at 980 (citation modified).  This expectation "must be more than a unilateral expectation or an abstract need." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005 (1984) (citation modified).  "The reasonable, investment-backed expectation analysis is designed to account for property owners' expectation that the regulatory regime in existence at the time of their acquisition will remain in place, and that new, more restrictive legislation or regulations will not be adopted."  *Woodward Harbor L.L.C.*, 2025 WL 959365, at *15 (quoting *Love Terminal Partners, L.P. v. United States*, 889 F.3d 1331, 1345 (Fed. Cir. 2018)).

"[W]hat is 'relevant and important in judging reasonable expectations' is 'the regulatory environment at the time of the acquisition of the property.'"  *Love Terminal Partners, L.P.*, 889 F.3d at 1345 (quoting *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1350 n.22 (Fed. Cir. 2001) (en banc)).  It is "quite simply untenable" that parties could "establish a 'taking' simply by showing that they have been denied the ability to exploit a property interest that they heretofore had believed was available for development."  *Penn Cent.*, 438 U.S. at 130.

Petrini alleges that he passed all inspections and met city requirements, so he had a reasonable expectation to receive the Certificate of Occupancy.  Such allegations are legal conclusions that the Court need not assume as fact.  Moreover,

Petrini fails to allege that the City's regulation, requiring approval by the building official to receive a Certificate of Occupancy, changed after he purchased the property and began development. *See Woodward Harbor L.L.C.*, 2025 WL 959365, at \*15 ("[T]he property was acquired with knowledge that any planned development on it would require City Council approval and thus that, absent some change in the regulatory regime, no particular planned development on the property could ever be guaranteed."). "Given the pre-existing requirement of [building official] approval for any [Certificate of Occupancy] on the property, [Petrini] could not reasonably expect that [he] would be able to develop the property in any particular manner [he] wished." *See id.* Because Petrini had no reasonable investment-backed expectation to receive the Certificate of Occupancy, the second *Penn Central* factor weighs against him.

The third *Penn Central* factor is the "character of the government action." *Golden Glow Tanning Salon, Inc.*, 52 F.4th at 980. "Government actions that may be characterized as acquisitions of resources to permit or facilitate uniquely public functions have often been held to constitute takings." *Hackbelt 27 Partners, L.P.*, 661 F. App'x at 850 (citation modified). Courts do not find a taking if a city does not attempt to acquire the property or "impose any new regulation that further restricted an existing use." *Id.* (citation modified). Here, the City "merely denied [Petrini's] request" to issue a Certificate of Occupancy. *See id.*

Petrini alleges that the City's "enforcement is demonstrably pretextual, retaliatory, and revenue-driven[.]" 2d Am. Compl. [96] at 22. He argues "[t]he

-34-

Supreme Court recognized in *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 540

(2005), that the character factor examines whether the government action is

'designed to injure' or 'acquire' rather than regulate." Pl.'s Resp. [110] at 32. The

words "injure" and "acquire" do not appear in *Lingle*. *See generally* 544 U.S. 528.

*Lingle* does not meaningfully discuss a government's intention to injure a plaintiff

by taking property. *See id.* Further, even if these allegations are true, Petrini fails

to show how they equate to the City attempting to acquire the Beach property or

impose a new regulation on the Beach property. *See Hackbelt 27 Partners, L.P.*, 661

F. App'x at 850; *see also Woodward Harbor L.L.C.*, 2025 WL 959365, at *16 (quoting

*Clayland Farm Enters., LLC v. Talbot County*, 987 F.3d 346, 355 (4th Cir. 2021))

(The "regulatory takings doctrine seeks to identify regulatory actions that are

functionally equivalent to the classic taking in which the government directly

appropriates private property or ousts the owner from his domain."). The third

*Penn Central* factor weighs against Petrini.

Because all three *Penn Central* factors weigh against Petrini, the Court

dismisses Count IX. *See Degan*, 956 F.3d at 815.

As an alternative ground for dismissal, the Court deems Count IX a shotgun

pleading, violating Rule 8. Petrini "incorporate[s] by reference paragraphs 1–64

and all allegations in the Preliminary Statement and Statement of Facts." 2d Am.

Compl. [96] at 21. Such pleading style commits the "mortal sin of re-alleging all

preceding counts," which "causes each successive count to carry all that came before

and the last count to be a combination of the entire complaint." *Weiland v. Palm*

*Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–22 (11th Cir. 2015) (citation

modified).  While Petrini does not incorporate all preceding counts into Count IX, he

incorporates allegations that clearly do not relate to Count IX and combines these

allegations with prior counts.  Petrini raises facts tying to both the Beach property

and the Division Street property, leaving the Court to guess and decipher what

relevant facts he intends to raise against the City.  *See* 2d Am. Compl. [96] at 22

("Neighbor's unpermitted fence received Creel's personal approval while Plaintiff's

engineered structure denied for five months" incorporates facts from the Division

Street property and the Beach property.).[18]

## VI.  CIVILITY

Finally, the Court notes that there are nonfrivolous claims in this case, and

other pending cases, that Petrini is engaged in malicious or vexatious litigation.

Pro se litigants do not have a "license to harass others, clog the judicial machinery

with meritless litigation, and abuse already overloaded court dockets."  *Farguson v.*

*MBank Hou., N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).  While the Court dismisses

the claims against the City without prejudice, it notes that amending a complaint is

not an automatic right.  *Berry v. LoanCity*, 489 F. Supp. 3d 441, 454 (M.D. La. 2020)

(citation omitted).  Amendments are subject to a court's discretion, and "that

generous standard is tempered by the necessary power of a district court to manage

---

[18] To the extent Petrini attempts to frame the stop work order as a taking, the
Court finds such argument unpersuasive.  For the same reasons the Court has
determined that the denial of the Certificate of Occupancy does not reach a taking,
it would dismiss a takings claim arising under the stop work order.

a case." *Farmers Tex. Cnty. Mut. Ins. Co. v. 1st Choice Accident & Inj., L.L.C.*, 168 F.4th 271, 276 (5th Cir. 2026) (quoting *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)).  A motion to amend a complaint may be properly denied "for a substantial reason."  *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014) (citation modified).  Substantial reasons include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by prior amendments, and futility.  *See id.*; *Matter of Southmark Corp.*, 88 F.3d 311, 314–15 (5th Cir. 1992).  The Court reads Rule 15 in light of Rule 1: "[Rule 15] should be construed, administered, and employed by the court and the parties to secure the *just, speedy, and inexpensive determination* of every action and proceeding."  Fed. R. Civ. P. 1 (emphasis added).

The Fifth Circuit has defined bad faith as an "interested or sinister motive"; it "means more than mere bad judgment or negligence, it implies the conscious doing of a wrong for dishonest or morally questionable motives."  *SMH Enters., L.L.C. v. Krispy Krunchy Foods, L.L.C.*, 340 F.R.D. 554, 561 (E.D. La. 2022) (quoting *Industrias Magromer Cueros y Pieles S.A. v. La. Bayou Furs Inc.*, 293 F.3d 912, 922 (5th Cir. 2002) (interpreting Louisiana law)).  Abusive amendments and seeking tactical advantages also qualify as bad faith.  *Bracamontes v. Geovera Specialty Ins.*, No. 23-1593, 2024 WL 2271667, at *3 (E.D. La. May 20, 2024) (citation omitted).   The docket and record include numerous instances suggesting a bad faith motive.  As an example, the Court highlights Petrini's website, which has been referenced in the record and tends to unveil motives in pursuing this lawsuit.

*See* Pl.'s Mem. [101] at 2, 7–8, 22.[19]  The website boasts the increased costs of

litigation for the defendants.

The Court includes the following examples from his website:

"The undersigned has filed three federal lawsuits, triggered FBI and State

Department investigations, and forced defendants into six-figure legal bills."[20]

Petrini utilizes costs as a litigation strategy:

> Strategy 4: Make It Expensive
>
> They bill by the hour.  Every motion you file, they have to respond.  Every discovery request, they have to produce or object.  Every hearing, their $150/hour attorneys have to show up.
>
> You're pro se.  Your time is free (to them).  Their time costs the city—which means it costs taxpayers, which means it becomes a political issue.
>
> $220,000 to deny a $97 certificate?  That's not sustainable.  That's not defensible at budget meetings.  That's not something elected officials want to explain.

*People vs. Biloxi Academy*, supra note 18.  "It proves every dollar of the $220,000+

in legal fees was wasted defending the indefensible."[21]  "Two-fifty K in fees, mine:

---

[19] The website confirms that he controls the website: "The undersigned publishes under his full name — Yuri Petrini.  His email is on every article . . . . " Yuri Petrini, *The Gillichs: Walls Don't Talk, They Explode*, People vs Biloxi (Feb. 2026), https://www.peoplevsbiloxi.com/the-gillichs-part-01.html.
[20] Yuri Petrini, *People vs Biloxi Academy*, People vs Biloxi (updated Nov. 2025), https://www.peoplevsbiloxi.com/academy.html (last visited Feb. 4, 2026).
[21] Yuri Petrini, *The Billables Strike Back: I Asked for Invoices. They filed a Motion. And Put My Kissing Video in Federal Court. Thanks for the Publicity, Counselors*, People vs Biloxi, (Dec. 2, 2025), https://www.peoplevsbiloxi.com/billables-strike-back.html.

zero 💰 Tell me Jerry, who's the hero? 🤵 🎉CONGRATULATIONS!  YOU FAILED SPECTACULARLY! 🎉 [.]"[22]

In addition, nonfrivolous claims tend to indicate that Petrini has contacted the defendants on numerous occasions in a harassing manner.  *See generally* Order [129].  Courts have made clear that "extrajudicial communications intended to harass or intimidate opposing parties and their counsel constitute abusive conduct." *Pautsch v. 400 W River LLC*, 802 F. Supp. 3d 1120, 1126 (S.D. Iowa 2025) (citation modified).

The Court will not tolerate vexatious litigation or tactics that are intended to harass or intimidate.  Any such conduct may be subject to sanctions, including the award of costs, attorney's fees, prefiling injunctions, and in extreme cases contempt of court.  The Court encourages Petrini to circumspectly review this order and read carefully the many cases within this and other circuits defining vexatious and malicious litigation and the sanctions that may be enforced upon an offending party.

## CONCLUSION

The Court does not address Count VIII's *Monell* liability because no claim survives.  Counts I, II, and III are dismissed for failure to state a claim under § 1983.  Count IV is dismissed because it fails to states a First Amendment

---

[22] Yuri Petrini, 🎵 *Give Me Your Best Shot: How Jerry Creel Tried to Gag This Website—and Failed Spectacularly Plus: The Deputy Clerk Shuffle Exposed*, People vs Biloxi (Dec. 31, 2025), https://www.peoplevsbiloxi.com/give-me-your-best-shot.html.

retaliation claim.  Count V is dismissed for lack of standing.  Count VI, violation of

the ADA, is dismissed for failure to allege facts establishing a disability.  Count VII

is dismissed for failure to allege facts supporting a conspiracy.  Count IX, Fifth

Amendment Takings Clause, is dismissed for failure to state a claim.  To the extent

the parties raise alternative arguments, the Court has considered them and

determines they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Defendant

City of Biloxi, Mississippi's [105] Motion to Dismiss is **GRANTED**.  Plaintiff Yuri

Petrini's claims against the City of Biloxi, Mississippi in the [96] Second Amended

Complaint are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED AND ADJUDGED** this the 5th day of June, 2026.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE